FILED

2017 AUG 24  AM 10: 33

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

IN THE UNITED STATES DISTRICT COURT OF
THE MIDDLE DISTRICT OF FLORIDA
(ORLANDO DIVISION)

ORANGE LAKE COUNTRY CLUB, INC., a Florida corporation, and WILSON RESORT FINANCE, L.L.C., a Florida limited liability company,

CASE NO.: 6:17-CV-1542-DRL-37-KRS

           Plaintiffs,

vs.

REED HEIN & ASSOCIATES, LLC d/b/a TIMESHARE EXIT TEAM; THE LAW OFFICES OF MITCHELL REED SUSSMAN & ASSOCIATES; and SCHROETER GOLDMARK & BENDER, P.S.,

           Defendants.

_____/

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff ORANGE LAKE COUNTRY CLUB, INC., a Florida corporation, and Plaintiff WILSON RESORT FINANCE, L.L.C., a Florida limited liability company, file this Complaint against Defendants REED HEIN & ASSOCIATES, LLC d/b/a TIMESHARE EXIT TEAM, a Washington corporation; THE LAW OFFICES OF MITCHELL REED SUSSMAN & ASSOCIATES, a California professional services corporation; and SCHROETER GOLDMARK & BENDER, P.S., a Washington professional services corporation, and state:

## INTRODUCTION

1.      Timeshares are a popular option for vacationers throughout the world. In 2016, Florida led the United States in timeshare resorts, comprising 24 percent of the

national total of 1,547 resorts.[1]  It should come as no surprise, then, that Florida timeshare companies are often the main targets of schemes by so-called consumer protection firms whose business models profit from disrupting the valid legal contracts between resorts and their owners and diverting owners' money to them instead.  One such target is Plaintiff Orange Lake Country Club, Inc. ("OLCC").

      2.     OLCC is in the business of developing, financing, managing, and selling timeshare resort properties throughout the United States, including in Florida.  OLCC has 13 timeshare resorts totaling approximately 3,395 individual timeshare units and is supported by nearly 3,000 employees.  There are currently over 100,000 OLCC timeshare owners worldwide.  Plaintiff Wilson Resort Finance, L.L.C. ("Wilson Finance") offers financing to purchasers of OLCC timeshare interests and is the holder of promissory notes and mortgages extended to owners (collectively, OLCC and Wilson Finance are "Orange Lake").

      3.     Through the promises on its website and myriad paid celebrity endorsements from the likes of Glenn Beck, Steve Harvey, and Dave Ramsey, Defendant Reed Hein & Associates d/b/a Timeshare Exit Team ("TET") touts itself as a "consumer protection group" offering a "100% guarantee" to relieve timeshare owners of their obligations, including owners of Orange Lake timeshare interests, or these owners will receive their money back from TET.

---

[1] VacationBetter.org, *Timeshare Industry Shows Another Year of Substantial Growth*, http://vacationbetter.org/timeshare-industry-shows-another-year-of-substantial-growth/ (Accessed Aug. 23, 2017).

4.     However, TET – which is not a law firm – is not assisting consumers in situations in which a timeshare company, resort, or developer – such as Orange Lake – has done something illegal. Instead, TET simply wants owners to pay money to TET in lieu of owners paying their annual maintenance, taxes, or mortgage payments to their timeshare company, resort, or developer.

5.     In an interview with the television program New Day Northwest on King 5, a broadcast media company and NBC affiliate based in Seattle, Washington, TET representatives stated TET's business plan in a nutshell:

> As far as we're concerned, the majority of timeshare contracts out there are just unfair contracts. So that's what we do, we're a team of consumer advocates that also have attorneys when we need them. And we break those—we get them out of those contracts.[2]

6.     To accomplish TET's goal to "break" those contracts, TET's representatives instruct owners who retain TET to *stop* making their required payments to their timeshare companies. TET's representatives know that by giving owners this advice, owners will breach their valid and enforceable agreements with their timeshare company, resort, or developer. Identifiable owners of Orange Lake timeshare interests have followed this very advice from TET's representatives and Orange Lake has been damaged as a result.

---

[2]   King5.com, *Warning about scammers targeting time share owners*, http://www.king5.com/entertainment/television/programs/new-day-northwest/warning-about-scammers-targeting-time-share-owners/140109716 (Accessed Aug. 23, 2017).

7.     The instructions from TET's representatives are then furthered by the attorneys that TET – not the owners who have signed up with TET – retains.  In fact, the owners never meet any of these attorneys.

8.     These TET-retained attorneys send boilerplate representation letters to the owners' timeshare companies instructing them to cease communicating with their purported "clients" and either state that their "clients" wish to terminate their timeshare agreements without reference to any legal basis whatsoever, or wish to terminate their obligation on false legal and factual bases.

9.     Defendants The Law Offices of Mitchell Sussman ("Sussman Law") and Schroeter Goldmark & Bender, P.S. ("SGB Law") are retained by TET and send these kinds of boilerplate representation letters to Orange Lake "on behalf of" identifiable owners of Orange Lake timeshare interests. The representation letters are not unique to the situation of any owner of an Orange Lake timeshare interest.

10.     As a result, owners are hamstrung both by TET's advice not to make their payments or to communicate with Orange Lake, and by the attorneys' furtherance of TET's instructions by sending representation letters with baseless claims instructing Orange Lake not to reach out to owners of Orange Lake timeshare interests.  As a result of all of this, Orange Lake is damaged.

11.     In light of this, TET's "100% guarantee" to refund the owners' paid fee if TET fails to "exit" the owners from their timeshares is worthless in the face of having lured and then subjected these owners to the risk of foreclosure actions and does nothing to absolve the Defendants' collective actions of interfering with Orange Lake's valid and

legal contractual and business relationships with owners of Orange Lake timeshare interests for the Defendants' own pecuniary gain.

## PARTIES

12.     Plaintiff Orange Lake Country Club, Inc., is a Florida corporation with its principal place of business at 8505 West Irlo Bronson Memorial Highway, Kissimmee, Osceola County, Florida 34747.

13.     Plaintiff Wilson Resort Finance, L.L.C., is a Florida limited liability company with its principal place of business at 8505 West Irlo Bronson Memorial Highway, Kissimmee, Osceola County, Florida 34747.

a)      Its sole member is Wilson Resort Group, LLC, a Delaware limited liability company, with its principal place of business at 8505 West Irlo Bronson Memorial Highway, Kissimmee, Osceola County, Florida 34747.

b)      Wilson Resort Group, LLC's sole member is Orange Lake Country Club, Inc., a Florida corporation with its principal place of business at 8505 West Irlo Bronson Memorial Highway, Kissimmee, Osceola County, Florida 34747.

14.     Defendant Reed Hein & Associates, LLC, is a Washington limited liability company with its principal place of business at 3400 188th Street SW, Suite 300, Lynnwood, Washington 98037 ("Reed Hein").

a)      Reed Hein's Managing Members are Brandon Reed and Trevor Hein.

     (i)    Brandon Reed is an individual domiciled in Kirkland, King County, Washington, and is a citizen of Washington.

     (ii)    Trevor Hein is an individual domiciled in Surrey, British Columbia, Canada, and is a citizen of Canada.

b)    Makaymax, Inc., is a 60 percent owner of Reed Hein. Makaymax, Inc., is a Washington corporation with its principal place of business at 3400 188th Street SW, Suite 300, Lynnwood, Washington 98037.

c)    Hein & Sons Industries, Inc., is a 40 percent owner of Reed Hein. Hein & Sons Industries, Inc., is a Delaware corporation with its principal place of business at 3400 188th Street SW, Suite 300, Lynnwood, Washington 98037.

d)    "Timeshare Exit Team" is a registered trade name in Washington for Reed Hein (hereafter, Reed Hein will be referred to as "TET").

15.    Defendant The Law Offices of Mitchell Reed Sussman & Associates ("Sussman Law") is a California professional services corporation with its principal place of business at 1053 South Palm Canyon Drive, Palm Springs, California 92264.

16.    Defendant Schroeter Goldmark & Bender, P.S. ("SGB Law") is a Washington professional services corporation with its principal place of business at 810 Third Avenue, Suite 500, Seattle, Washington 98104.

## JURISDICTION

17.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs and all Defendants in this matter and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00.  Additionally, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because a federal question is presented under the Lanham Act, 15 U.S.C. § 1125(a).  Finally, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all other state law claims that are so related that they form a part of the same case or controversy.

18.     This Court may exercise personal jurisdiction over all Defendants because this action arises out of and is related to Defendants' purposeful contacts with the State of Florida.

### *TET*

19.     TET (i) solicits owners of timeshare interests, many of whom reside in Florida and/or whose timeshare interests are located in Florida, through the use of false, misleading, and deceptive advertising, (ii) intentionally interferes with contracts between Orange Lake Country Club, Inc., a Florida corporation, its affiliated companies in Florida, and Wilson Resort Finance, L.L.C., a Florida limited liability corporation (collectively, "Orange Lake"), and owners of Orange Lake timeshare interests, (iii) intentionally interferes with advantageous business and contractual relationships between Orange Lake and owners of Orange Lake timeshare interests, many of whom reside in Florida and/or whose timeshare interests are located in Florida, and (iv) is registered as a

foreign limited liability company with the Florida Department of State in order to conduct business in the state of Florida.

20.     TET's Internet-based operations subject them to personal jurisdiction in the state of Florida.  TET solicits owners of Florida timeshare interests through the use of false, misleading, and deceptive advertising it contains on its website, http://www.timeshareexitteam.com.  This website is not a passive advertising website. TET solicits and receives the contact information of owners of Florida timeshare interests through the website, which involves the repeated transmission of computer files over the internet and allows owners of Florida timeshare interests to exchange their contact information with a host computer.

21.     TET commits tortious acts in the state of Florida, specifically, tortious interference with contractual and business relationships between Orange Lake and owners of Orange Lake timeshare interests.  TET instructs owners of Orange Lake timeshare interests to cease making valid payments of maintenance, taxes, and note and mortgage payments to Orange Lake, which damages Orange Lake.

22.     TET executes agreements with owners of Orange Lake timeshare interests, some of whom own timeshare interests in Florida.  TET is to perform these agreements, in whole or in part, in Florida, in that TET is to negotiate with Orange Lake to secure the release of any future obligations the owners of Orange Lake timeshare interests owe to the Plaintiffs, together with the cancellation of the owners' contracts with Orange Lake. To effect the cancellation, TET instructs its retained attorneys, Sussman Law and SGB Law, to mail letters addressed to Orange Lake in Florida.

*Sussman Law*

23.     Sussman Law commits tortious acts in the state of Florida, specifically, tortious interference with contractual and business relationships between Orange Lake and owners of Orange Lake timeshare interests.

24.     Many of the owners of Orange Lake timeshare interests, who are purportedly represented by Sussman Law, reside in Florida and/or own a timeshare interest located in Florida.

25.     TET retains Sussman Law on behalf of TET's clients in order to effectuate the promised "exit."   After TET representatives instruct owners of Orange Lake timeshare interests to stop making any payments to Orange Lake, TET instructs Sussman Law to contact Orange Lake in Florida in writing, by phone, and by e-mail on behalf of TET in the name of the owners of Orange Lake timeshare interests in order to negotiate settlement and cancellation of the Orange Lake timeshare agreements.

26.     These communications are directed to Orange Lake in Florida and serve to further the interference between the contractual and business relationships between Orange Lake and owners of Orange Lake timeshare interests.

*SGB Law*

27.     SGB Law commits tortious acts in the state of Florida, specifically, tortious interference with contractual and business relationships between Orange Lake and owners of Orange Lake timeshare interests.

28.     Many of the owners of Orange Lake timeshare interests, who are purportedly represented by SGB Law, reside in Florida and/or own a timeshare interest located in Florida.

29.     TET retains SGB Law on behalf of TET's clients in order to effectuate the promised "exit." After TET representatives instruct owners of Orange Lake timeshare interests to stop making any payments to Orange Lake, TET instructs SGB Law to contact Orange Lake in Florida in writing, by phone, and by e-mail on behalf of TET in the name of the owners of Orange Lake timeshare interests in order to negotiate settlement and cancellation of the Orange Lake timeshare agreements.

30.     These communications are directed to Orange Lake in Florida and serve to further the interference between the contractual and business relationships between Orange Lake and owners of Orange Lake timeshare interests.

31.     The Court's exercise of personal jurisdiction over Defendants will not violate traditional notions of fair play and substantial justice.

### VENUE

32.     Pursuant to 28 U.S.C. § 1391, venue is proper in this judicial district because the events or omissions giving rise to the claims asserted in this complaint occurred within this judicial district.

### GENERAL ALLEGATIONS

**A.     The Orange Lake Timeshare Purchase**

33.     At the time of a timeshare purchase from Orange Lake, each purchaser executes a written purchase agreement ("Purchase Agreement"). Pursuant to the terms of

the Purchase Agreement, in addition to purchasing the timeshare interest, each owner understands and agrees to be bound by the Declaration of Condominium ("Declaration") for the resort where the owner purchased the timeshare, and to be responsible for their share of common expenses, assessments, maintenance fees, and any and all other expenses incurred in the operation of their timeshare unit. The Declaration is referenced and incorporated in the Purchase Agreement with the owners.

34.    If a purchaser desires mortgage financing, he or she may complete and submit a mortgage application as part of the Purchase Agreement. Upon approval of financing, a purchaser will execute and deliver a promissory note ("Promissory Note") and mortgage ("Mortgage") in connection with the timeshare purchase. Both the Promissory Note and Mortgage are referenced and incorporated in the Purchase Agreement with the owners. Wilson Finance is the lender and holder of Orange Lake Promissory Notes and Mortgages.

35.    Plaintiffs have heavily invested in the development, evolution, and perpetual improvement of their products and services. They continually add new and improved services to their member menu and are constantly otherwise improving their member experience.

36.    Plaintiffs actively and aggressively protect their proprietary business practices and processes and their brand. They devote substantial resources to advertising and other marketing promotions to increase the visibility and recognitions of their proprietary products and to maintain and enhance the value of their brand. Plaintiffs compete directly with other developers and marketers of vacation and travel products and

services who target similar customers. The goodwill associated with Plaintiffs' brands and their products are essential to Plaintiffs' ability to effectively compete in a highly competitive marketplace.

**B.     Defendants' Scheme**

37.     In order to lure timeshare owners to hire TET, TET makes false and misleading guarantees on its websites and procures celebrity endorsements to sell its services to timeshare owners.

38.     Among the most popular celebrity endorsements is Dave Ramsey, a radio personality who advises listeners on personal and household finances. Identifiable owners of Orange Lake timeshare interests ("Orange Lake Owners") have been lured to TET because of Mr. Ramsey's radio show. In fact, on Mr. Ramsey's own website, he decries timeshares as outright "scams" and provides a link to TET's website.[3]

39.     On its website, TET advertises it will utilize its "process" to "get rid of" owners' timeshare contracts in the following fashion: "Safely. Legitimately. Forever." According to TET's "Frequently Asked Questions" section on its website, TET is for the following types of timeshare owners who are:

- Not using their timeshare as much as they intended to
- Frustrated by unexpected "special assessments" and skyrocketing maintenance fees
- Financially set back by their timeshare maintenance fees and special assessments
- Frustrated by their failure to sell the timeshare through a listing company

---

[3]     DaveRamsey.com, The Truth about Timeshares, https://www.daveramsey.com/blog/the-truth-about-timeshares (Accessed Aug. 23, 2017).

- Concerned about their children inheriting their timeshare and then consequently becoming financially responsible for it
- Bothered they can't vacation where they want, when they want
- Tired of going to the same place every year
- Aggravated with exchange companies
- Realizing that there are more ways to go on vacation for much less
- Widowed or divorced, or are no longer able to travel with their loved ones
- Inheritors of a timeshare they don't want or use
- Part of resort scams

40.     There is nothing "legitimate" about the foregoing advertised reasons.  TET misrepresents to owners that any of the foregoing advertised reasons are legally sufficient reasons to terminate a timeshare contract when, in fact, none of these are legal bases for a timeshare owner to cease making his or her payments under their legally binding contracts with a timeshare company.

41.     It is at this point in TET's advertised "unique strategy" that TET instructs owners who have signed up with them and paid them thousands of dollars in an upfront sign-up fee – upwards of $6,000 – to stop making payments on their timeshare obligations, such as owners' Promissory Note and Mortgage payments as well as maintenance and tax payments.

42.     By doing so, TET misrepresents to the owners, timeshare companies will be more willing to allow the owners to "exit" their timeshare.  TET further misrepresents to owners that their credit scores will not be affected by halting their payments. Identifiable Orange Lake Owners were given these very instructions and assurances.

43.     TET's own agreements with the owners who retain them, however, are designed to protect TET from its own misrepresentations.   Identifiable Orange Lake Owners' retainer documents contain provisions that contradict the verbal instructions TET's representatives give to the owners and the "guarantees" emblazoned across TET's website.   The following disclaimer is from a February 21, 2016, version of a list given to retained Orange Lake Owners titled by TET "Things to Remember":

> RESORT FEES.  You own the Timeshare until the closing of the exit is finalized, thereby relieving you of ownership; you remain responsible for all financial obligations associated with the Timeshare until the exit is complete.  If you have determined of your own accord not to pay the resort ever again, you can expect some consequences that may include negative credit reporting, collection activity and/or legal action.  In the final resolution with the resort, we may be able to request removal of any negative credit reporting with the credit bureaus.  If there is a collection agency involved, we can assist you by requesting that the agency stop contacting you.  However, we cannot control all of the actions by the resort or the collection agency.  We have found that some resorts are quite pleasant to work with on an exit, while others are not.  We can deal with both types for you.  Our goal is to achieve an ultimate positive result for you.

44.     TET's goal to achieve an "ultimate positive result" is nowhere near equivalent to its website's advertised and misleading "personal GUARANTEE to you is that our team of consumer advocates will get you out of your timeshare, period."

45.     In fact, the "guarantee" is defined as *whatever offer* TET can manage to obtain from a timeshare resort.  The following excerpt is from a November 23, 2015, TET retainer agreement:

> FEES AND COSTS.  Under this Agreement there are absolutely no extra service fees or closing costs to be owed

> or paid by the CLIENT to REED HEIN. However, some
> resorts may require a cancellation fee or similar fee to end
> or exit an ownership, and such fee(s) may be required in
> your case. These fees will be no greater than the amount of
> this current year's maintenance fee. If so, the CLIENT will
> be required to pay that fee to the Resort for a successful
> exit. In addition, some resorts require all past maintenance
> fees to be paid upon the completion of an exit. If required,
> these past maintenance fees will be paid by the CLIENT.
> Whether accepted by OWNER or not, an exit agreement
> obtained by REED HEIN from the Resort shall meet REED
> HEIN's Guarantee even though the Resort may require by
> OWNER of an exit fee.

46.     But TET is not even the entity negotiating with timeshare companies – the

TET-retained attorneys are the ones who are supposed to do that. All that TET does is

> hire an attorney on your behalf who will represent you
> with the Resort, pursuant to the limited power of attorney
> which you signed.     REED HEIN will facilitate
> communication and will interface between you and an
> attorney.

47.     Pursuant to master fee agreements between TET and law firms, including

Sussman Law and SGB Law, TET is prohibited from representing to TET customers that

the attorneys hired by TET are the TET client's attorney. In fact, however, TET

representatives have stated to identifiable Orange Lake Owners that the attorneys

working on the Orange Lake Owners' alleged negotiations were "their" attorneys.

48.     As one of the final steps to convince owners to retain them, TET provides

a chart outlining the cost of paying the owner's timeshare company as compared to

paying TET for its services. TET provided an identifiable Orange Lake Owner a chart

that calculated the cost of paying annual maintenance fees plus special assessments in the

amount of $21,579.00 for the next fifteen years, together with total future mortgage

payments in the amount of $14,861.00, for a total of $36,440.00 versus paying $6,395.00. Printed over the final comparison figures, TET asks a simple question:

*Which of these would you rather pay?*

49.     TET seeks out timeshare owners to pay money to them instead of to the owners' timeshare companies. Specifically, TET seeks to divert money that Orange Lake Owners owe to Orange Lake from Orange Lake to TET instead.

50.     After signing TET's retainer documents, owners are then assigned an "Account Coordinator who becomes [their] personal contact during [the owner's] entire exit process. No general 800 phone numbers or endless automated phone systems while trying to reach Customer Service. [The] Account Coordinator will explain how the process works and will provide you with status updates throughout the exit process." In fact, however, the e-mail updates that identifiable Orange Lake Owners have received are scant, non-specific, and designed to string along Orange Lake Owners into believing that actual work is being done on their behalves.

51.     Thereafter, TET begins its "negotiation process" with the owners' timeshare companies. On its website, TET states that the "specifics of the process will depend on your ownership situation and how the resort responds to our requests," but, notwithstanding the fact that TET has "a skilled in-house team," TET "will retain an attorney on your behalf if needed." TET promises "exit" or it will refund the entirety of the fee to the owners.

52.     In fact, TET's "skilled in-house team" is not doing any work to negotiate anything at all and fails to notify owners of this failure until the owners are in arrears.

Instead, TET hires law firms like Sussman Law and SGB Law to handle these "negotiations" pursuant to master fee agreements by which TET agrees to pay these law firms a portion of the fee TET obtains at sign-up in the amount of $1,200.00. TET also promises to send law firms at least 800 files a month, which, at $1,200.00 a file, is a lucrative operation for law firms such as Sussman Law and SGB Law. [4]

53.     Identifiable Orange Lake Owners have been told by TET representatives, almost a year into their retention of TET, that the attorney retained by TET "could not help [them] anymore." Because the owners are purportedly represented by counsel, timeshare companies are forbidden from communicating with them. Accordingly, these owners are completely unaware – until they are served with a copy of a foreclosure lawsuit – that TET, Sussman Law, and SGB Law are accomplishing absolutely *nothing* for them except for interference with the contracts they hold with Orange Lake.

54.     Indeed, Sussman Law in California sends boilerplate representation letters to Orange Lake stating that the reason the purportedly represented timeshare owners wish to terminate their interest is due to "claims of fraud and misrepresentation arising from [Orange Lake's] time-share presentation and sale," when, to the contrary, identifiable Orange Lake Owners have been lured in by TET's false and misleading Internet and radio advertising and, convinced by those, wish to simply stop making their payments for no legitimate reason at all. These letters, which also instruct Orange Lake not to contact the TET clients, together with any subsequent correspondence, telephone calls, and e-

---

[4] In fact, a law firm previously retained by TET has sued TET for breach of one of these exclusive and profitable master fee agreements. *See Ken B. Privett, PLC v. ReedHein & Associates, LLC d/b/a Timeshare Exit Team,* Case No. CJ-17-20 (In the District Court of Pawnee County, Oklahoma).

mails, serve to further TET's interference with the contractual and business relationships between the Orange Lake Owners and Orange Lake.

55.     In fact, Sussman Law sent a representation letter to Orange Lake seeking to terminate a timeshare interest on the basis of fraud and misrepresentation at a timeshare representation for Orange Lake Owners who actually *inherited their timeshare from their parents*. These owners never sat for a presentation. Sussman Law knows the claims made in its letters to be baseless and false because the very Orange Lake Owners that Sussman Law purports to represent have never communicated with that law firm before or after Sussman Law sends these representation letters.

56.     SGB Law in Washington is also retained by TET and sends letters to Orange Lake on an entirely non-legal basis "on behalf" of Orange Lake Owners who have also never met any of the lawyers at SGB Law. SGB Law's letters to Orange Lake simply state, *inter alia*, that their purported clients "are interested in terminating their time share[sic] memberships. With the lone exception of forwarding routine billings to the client via mail, you are hereby notified not to contact our clients in any format." The letters are "one size fits all" correspondence whose purpose is merely to forbid Orange Lake from communicating with Orange Lake Owners. These letters, together with any subsequent correspondence, telephone calls, and e-mails, serve to further TET's interference with the contractual and business relationships between the Orange Lake Owners and Orange Lake.

57.     Upon information and belief, TET pays fees to Sussman Law and to SGB Law for their legal services in furtherance of TET's scheme pursuant to master fee

agreements by which Sussman Law and SGB Law are paid a portion of the TET upfront fee and promised a volume of hundreds of files every month.

### C.    Defendants' Actions Have Damaged Plaintiffs

58.    To date, TET's false, deceptive, and misleading advertising has caused identifiable Orange Lake Owners to retain TET and, at TET's instruction, (1) to stop making payments on their Promissory Notes and Mortgages they signed when they purchased their timeshare interests, and (2) to stop paying maintenance and other fees they contractually committed to pay.  Sussman Law and SGB Law further TET's scheme to damage Orange Lake by sending representation letters rife with false or non-existent legal grounds for termination and by forbidding Orange Lake to communicate with the Orange Lake Owners.  Defendants engaged in this arrangement together for their collective pecuniary benefit.

59.    Altogether, Defendants intentionally and unjustifiably interfered with Plaintiffs' contractual and advantageous business relationships with the Orange Lake Owners by luring them with false, deceptive, and misleading advertising and advising them to breach their contractual relationships without any valid grounds, in exchange for a fee and the false assurance that there will be no harm to their credit scores and that they will be "exited" from their timeshare "Safely. Legitimately. Forever."

60.    Orange Lake has not engaged in any behavior which would justify the cancellation of any of the contractual obligations by Orange Lake Owners.

61.    As a direct and proximate result of Defendants' intentional and unjustified interference with Orange Lake's contractual and business relationships with the Orange Lake Owners, Orange Lake has been damaged.

62.    All conditions precedent to the filing of this action have been satisfied, waived, or have occurred.

63.    Plaintiffs have retained the law firm of Greenspoon Marder, P.A., to represent it in this action and is obligated to pay reasonable attorney's fees and costs incurred herein.

**COUNT I**
**(TORTIOUS INTERFERENCE WITH EXISTING CONTRACTS)**

64.    Plaintiffs reallege and reincorporate the allegations contained in paragraphs 1 through 63 above as if more fully set forth herein.

65.    This is a cause of action for tortious interference with existing contracts and for damages in excess of $75,000.00, exclusive of interest, attorney's fees and costs, and is within this Court's jurisdiction.

66.    Plaintiffs hold valid and legally enforceable contracts with Orange Lake Owners for their timeshare units.

67.    Defendants have knowledge of those relationships. The very fact that the Orange Lake Owners have contracts with Plaintiffs is the basis under which Defendants sought to establish a relationship with the Orange Lake Owners.

68.    Defendants sought to capitalize on Plaintiffs' contractual relationships with the Orange Lake Owners by soliciting the Orange Lake Owners through TET's false and misleading advertising, fraudulently inducing them to pay large upfront fees to TET,

and fraudulently inducing them to stop making payments to Plaintiffs notwithstanding the Orange Lake Owners' legally enforceable contracts with Plaintiffs.

69.     TET's willful and fraudulent actions to induce parties with whom Plaintiffs have valid contractual agreements to breach their agreements constitute intentional interference with existing contracts.

70.     TET has intentionally, and without justification or privilege, interfered with Plaintiffs' existing contracts by inducing Orange Lake Owners to immediately stop making any further payments under their contracts without any legal basis. Sussman Law and SGB Law advance and contribute to TET's interference by sending representation letters to Plaintiffs stating either non-existent or false legal bases for termination of the Orange Lake Owners' contracts.

71.     Collectively, Defendants' actions were not made in good faith, but rather were made with purely selfish and mercenary reasons so as to earn and retain the large pre-paid retainer fee without actually providing any meaningful services to the Orange Lake Owners and were with the knowledge and purpose to injure Plaintiffs or with reckless disregard for the attendant consequences naturally, directly, and proximately resulting from Defendants' actions and without reasonable grounds for Defendants to believe that their actions were justified and proper.

72.     As a direct and proximate result of Defendants' intentional misconduct, Orange Lake Owners have terminated, or have sought to terminate, their contractual relationship with Plaintiffs before the expiration of the terms of those contracts.

73.    Defendants did not have any justification or privilege in procuring the breach of such contracts.

74.    As a direct and proximate result of the foregoing, Plaintiffs suffered damages.

75.    An injunction is a viable form of relief in a suit for tortious interference.

a)    Plaintiffs have a clear legal right or interest in the contracts with the Orange Lake Owners.

b)    Defendants have procured unwarranted and unjustified contract breaches, so Plaintiffs have a substantial likelihood of success on merits.

c)    Defendants continue to solicit timeshare owners, such as Orange Lake Owners, through misleading and deceptively false marketing, which shows a strong likelihood that Plaintiffs will suffer irreparable harm on an ongoing basis because any remedy at law for Defendants' perpetuation of the deceptive, fraudulent, and unfair marketing practices is inadequate.

d)    An injunction serves the public interest.

76.    As a proximate result of Defendants' unlawful conduct, Plaintiffs are being irreparably harmed and are entitled to have Defendants' conduct enjoined and restrained.  Alternatively, Plaintiffs are entitled to damages for interference with contracts and business relationships.

WHEREFORE, Plaintiffs ORANGE LAKE COUNTRY CLUB, INC., and WILSON RESORT FINANCE, L.L.C., respectfully request that this Court:

A.      Enter a preliminary injunction in favor of Plaintiffs and against Defendants REED HEIN & ASSOCIATES, LLC d/b/a TIMESHARE EXIT TEAM; THE LAW OFFICES OF MITCHELL REED SUSSMAN & ASSOCIATES; and SCHROETER GOLDMARK & BENDER, P.S., and their officers, agents, servants, employees, and attorneys and on those persons in active concert or participation with them who receive actual notice of the injunction enjoining them from:

        1)  Engaging in false and misleading advertising; and

        2)  Engaging in deceptive or unfair trade practices.

B.      Enter judgment after trial for a permanent injunction in favor of Plaintiffs and against Defendants REED HEIN & ASSOCIATES, LLC d/b/a TIMESHARE EXIT TEAM; THE LAW OFFICES OF MITCHELL REED SUSSMAN & ASSOCIATES; and SCHROETER GOLDMARK & BENDER, P.S., and their officers, agents, servants, employees, and attorneys and on those persons in active concert or participation with them who receive actual notice of the injunction enjoining them from:

        1)  Engaging in false and misleading advertising; and

        2)  Engaging in deceptive or unfair trade practices.

C.      Enter judgment for damages and lost profits (a natural consequence of Defendants' wrongs) and punitive damages;

D.      Enter judgment in favor of Plaintiffs and against Defendants for costs of suit incurred in this action; and

E.      Award Plaintiffs such other and further relief as the Court may deem proper.

<u>COUNT II</u>
**(TORTIOUS INTERFERENCE WITH ADVANTAGEOUS
BUSINESS RELATIONSHIPS)**

77.     Plaintiffs reallege and reincorporate the allegations contained in paragraphs 1 through 63 above as if more fully set forth herein.

78.     This is a cause of action for tortious interference with advantageous business relationships and for damages in excess of $75,000.00, exclusive of interest, attorney's fees and costs, and is within this Court's jurisdiction.

79.     Plaintiffs not only have advantageous business relationships with the Orange Lake Owners pursuant to their contracts, but Plaintiffs also have real and legitimate business relationships with the Orange Lake Owners for future business. Orange Lake Owners with existing contracts with Plaintiffs have equity interests which may be used as credits towards the purchase of an upgraded timeshare interest. Examples of these upgrades include a larger unit, a more premium season, or a change of resort location, all of which are advantageous business relationships. Many of the Orange Lake Owners take advantage of these equity interests to upgrade their timeshare interests.

80.     Defendants have knowledge of those relationships. The very fact that Plaintiffs' owners have a business relationship is the basis under which Defendants sought to establish a relationship with the Orange Lake Owners.

81.     Defendants sought to capitalize on Plaintiffs' business relationships with the Orange Lake Owners by soliciting Orange Lake Owners through deceptive and misleading advertising, inducing them to pay large upfront fees to the Defendants, and inducing them to stop making payments to Plaintiffs pursuant to legally enforceable

contracts thereby terminating any current and future advantageous business relationships Plaintiffs have with the Orange Lake Owners.

82.    As stated above, TET has intentionally and without justification interfered with Plaintiffs' relationships by convincing Orange Lake Owners to immediately stop making any further payments under their contracts without any legal basis, thereby terminating any current and future advantageous business relationships Plaintiffs have with the Orange Lake Owners.  Sussman Law and SGB Law advance and contribute to TET's interference by sending representation letters to Plaintiffs stating either non-existent or false legal bases as justification for the Orange Lake Owners having stopped their payments under their contracts, thereby terminating any current and future advantageous business relationships Plaintiffs have with the Orange Lake Owners.

83.    Collectively, Defendants' actions were not made in good faith, but were made for purely selfish and mercenary reasons so as to earn and retain the large pre-paid retainer fees without actually providing any meaningful services to the Orange Lake Owners and were made with the knowledge and purpose to injure Plaintiffs or with reckless disregard for the attendant consequences naturally, directly, and proximately resulting from Defendants' actions and without reasonable grounds for Defendants to believe that their actions were justified and proper.

84.    As a direct and proximate result of Defendants' intentional misconduct, the Orange Lake Owners have terminated, or have sought to terminate, their contractual relationship with Plaintiffs and any advantageous business relationships with Plaintiffs and foreclosed on any future advantageous business relationships.

85.     Defendants did not have any justification or privilege in procuring the breach of such business relationships.

86.     As a direct and proximate result of the foregoing, Plaintiffs suffered damages.

87.     An injunction is a viable form of relief in a suit for tortious interference.

a)      Plaintiffs have a clear legal right or interest in their business relationships with the Orange Lake Owners.

b)      Defendants have procured unwarranted and unjustified contract breaches in contravention of the business relationships between Plaintiffs and the Orange Lake Owners, so Plaintiffs have a substantial likelihood of success on merits.

c)      Defendants continue to solicit timeshare owners, such as Orange Lake Owners, through misleading and deceptively false marketing, which shows a strong likelihood that Plaintiffs will suffer irreparable harm on an ongoing basis because any remedy at law for Defendants' perpetuation of the deceptive, fraudulent, and unfair marketing practices is inadequate.

d)      An injunction serves the public interest.

88.     As a proximate result of Defendants' unlawful conduct, Plaintiffs are being irreparably harmed and are entitled to have Defendants' conduct enjoined and restrained. Alternatively, Plaintiffs are entitled to damages for interference with contracts and business relationships.

WHEREFORE, Plaintiffs ORANGE LAKE COUNTRY CLUB, INC., and WILSON RESORT FINANCE, L.L.C., respectfully request that this Court:

A.   Enter a preliminary injunction in favor of Plaintiffs and against Defendants REED HEIN & ASSOCIATES, LLC d/b/a TIMESHARE EXIT TEAM; THE LAW OFFICES OF MITCHELL REED SUSSMAN & ASSOCIATES; and SCHROETER GOLDMARK & BENDER, P.S., and their officers, agents, servants, employees, and attorneys and on those persons in active concert or participation with them who receive actual notice of the injunction enjoining them from:

    1)  Engaging in false and misleading advertising; and

    2)  Engaging in deceptive or unfair trade practices.

B.   Enter judgment after trial for a permanent injunction in favor of Plaintiffs and against Defendants REED HEIN & ASSOCIATES, LLC d/b/a TIMESHARE EXIT TEAM; THE LAW OFFICES OF MITCHELL REED SUSSMAN & ASSOCIATES; and SCHROETER GOLDMARK & BENDER, P.S., and their officers, agents, servants, employees, and attorneys and on those persons in active concert or participation with them who receive actual notice of the injunction enjoining them from:

    1)  Engaging in false and misleading advertising; and

    2)  Engaging in deceptive or unfair trade practices.

C.   Enter judgment for damages and lost profits (a natural consequence of Defendants' wrongs) and punitive damages;

D.   Enter judgment in favor of Plaintiffs and against Defendants for costs of suit incurred in this action; and

E.   Award Plaintiffs such other and further relief as the Court may deem proper.

27

## COUNT III
### (VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. § 501.201, *et seq.*)

89.　　Plaintiffs reallege and reincorporate the allegations contained in paragraphs 1 through 63 above as if more fully set forth herein.

90.　　This is a cause of action for violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* ("FDUTPA"), against TET, including unconscionable acts and practices and unfair and deceptive practices in the conduct of trade or commerce.

91.　　TET is engaged in "trade or commerce" as defined by Fla. Stat. §501.203(8).

92.　　Plaintiffs are "interested part[ies] or person[s]" as defined by Section 501.203(6), Florida Statutes.

93.　　Defendants have engaged in the following unconscionable, unfair, and deceptive acts or practices by:

　　　　a)　　TET soliciting Orange Lake Owners through false and misleading advertising which deceives Orange Lake Owners into believing that they may cancel their timeshare interest without any legal basis or reason whatsoever;

　　　　b)　　TET fraudulently inducing Orange Lake Owners into retaining TET based on TET's advertised "100% guarantees" of "exiting" timeshares when TET cannot actually fulfill the guarantee without detriment to the Orange Lake Owner;

28

c)    TET misrepresenting to Orange Lake Owners that the Orange Lake Owners are retained by attorneys when, in actuality, TET, Sussman Law, and SGB Law are parties to agreements providing that the law firms do not actually represent any of TET's clients;

d)    TET misrepresenting that it will "interface" between the Orange Lake Owners and law firms such as Sussman Law and SGB Law without providing the Orange Lake Owners details about the attorneys or actually facilitating contact between them; and

e)    TET instructing Sussman Law and SGB Law to transmit representation letters to Orange Lake attempting to terminate the Orange Lake Owners' contracts on non-existent legal bases or on bases of "claims of fraud and misrepresentation arising from [Orange Lake's] time-share presentation and sale," when none of the identifiable Orange Lake Owners retained TET for those reasons.

94.    Plaintiffs have a clear legal right or interest in being free from TET's deceptive or unfair advertising, as the false statements and representations set forth above have demonstrated specific past and present grievances, and will result in future grievances, and will result in future grievances if TET is not enjoined.

95.    TET continues to engage in such false and deceptive marketing campaigns and fraudulent representations for the purpose of soliciting the Orange Lake Owners and inducing them to pay large upfront retainer fees with the false representation that the

Orange Lake Owners may unilaterally terminate their obligations with Plaintiffs without any valid legal basis, and therefore, there is a strong likelihood that Plaintiffs will suffer irreparable harm on an ongoing basis and any remedy at law for TET's perpetuation of the deceptive, fraudulent, and unfair marketing practices, is inadequate.

96.     Pursuant to Fla. Stat. §§ 501.211(2) and 501.2105, Plaintiffs are entitled to damages, attorney's fees, and costs.

97.     Pursuant to Fla. Stat. § 501.211(1), declaratory and injunctive relief are viable forms of relief for violation of FDUTPA.

a)     TET's actions, as outlined above, constitute deceptive, misleading, and unfair practices in violation of FDUTPA.

b)     TET has procured unwarranted and unjustified contract breaches due to TET's deceptive, misleading, and unfair practices in violation of FDUTPA, so Plaintiffs have a substantial likelihood of success on merits.

c)     TET continues to solicit timeshare owners, such as Orange Lake Owners, through TET's deceptive, misleading, and unfair practices in violation of FDUTPA, which shows a strong likelihood that Plaintiffs will suffer irreparable harm on an ongoing basis because any remedy at law for TET's perpetuation of TET's deceptive, misleading, and unfair practices in violation of FDUTPA is inadequate.

d)     An injunction serves the public interest.

98.     As a proximate result of TET's unlawful conduct, Plaintiffs are being irreparably harmed and are entitled to have TET's conduct enjoined and restrained.

WHEREFORE, Plaintiffs ORANGE LAKE COUNTRY CLUB, INC., and WILSON RESORT FINANCE, L.L.C., respectfully request that this Court:

A.    Enter a preliminary injunction in favor of Plaintiffs and against Defendant REED HEIN & ASSOCIATES, LLC d/b/a TIMESHARE EXIT TEAM, and its officers, agents, servants, employees, and attorneys and on those persons in active concert or participation with them who receive actual notice of the injunction enjoining them from:

1)  Engaging in false and misleading advertising; and

2)  Engaging in deceptive, misleading, and unfair trade practices.

B.    Enter judgment after trial for a permanent injunction in favor of Plaintiffs and against Defendant REED HEIN & ASSOCIATES, LLC d/b/a TIMESHARE EXIT TEAM, and its officers, agents, servants, employees, and attorneys and on those persons in active concert or participation with them who receive actual notice of the injunction enjoining them from:

1)  Engaging in false and misleading advertising; and

2)  Engaging in deceptive, misleading, and unfair trade practices.

C.    Enter judgment for actual damages;

D.    Enter judgment in favor of Plaintiffs and against TET for costs of suit incurred in this action; and

E.    Award Plaintiffs such other and further relief as the Court may deem proper.

<u>COUNT IV</u>
(CIVIL CONSPIRACY)

99.    Plaintiffs reallege and reincorporate the allegations contained in paragraphs 1 through 63 above as if more fully set forth herein.

100.    This is a cause of action for civil conspiracy to commit tortious interference with existing contracts and tortious interference with advantageous business relationships and for damages in excess of $75,000.00, exclusive of interest, attorney's fees and costs, and is within this Court's jurisdiction.

101.    Defendants are parties to a civil conspiracy.

102.    Defendants conspired to do an unlawful act.

103.    Defendants conspired to interfere with Orange Lake's contractual and advantageous business relationships with the Orange Lake Owners.

104.    Defendants each performed one or more overt actions in furtherance of their conspiracy, including without limitation:

   a)    TET uses misleading advertising to lure Orange Lake Owners to obtain TET's services;

   b)    Once retained, TET encourages Orange Lake Owners to breach their contracts with Orange Lake even though they have no legal basis to do so;

   c)    At TET's direction, Sussman Law sends representation letters purporting to represent Orange Lake Owners which state false legal bases to Orange Lake in furtherance of TET's interference between the Orange Lake Owners and Orange Lake, and, upon

information and belief, TET pays fees to Sussman Law for this; and

d)      At TET's direction, SGB Law sends representation letters purporting to represent Orange Lake Owners which state non-legal bases for termination to Orange Lake in furtherance of TET's interference between the Orange Lake Owners and Orange Lake, and, upon information and belief, TET paid fees to SGB Law for this.

105.    As a direct and proximate result of Defendants' civil conspiracy, the Orange Lake Owners have terminated, or have sought to terminate, their contractual relationship with Plaintiffs before the expiration of the terms of those contracts.

106.    Defendants did not have any justification or privilege in procuring the breach of such business relationships.

107.    As a direct and proximate result of the foregoing, Plaintiffs suffered damages.

108.    An injunction is a viable form of relief for a cause of action for civil conspiracy to commit tortious interference with existing contracts and to commit tortious interference with advantageous business relationships.

a)      Defendants' actions, as outlined above, constitute a civil conspiracy to commit tortious interference with existing contracts and to commit tortious interference with advantageous business relationships.

b)      Defendants have procured unwarranted and unjustified contract breaches due to their civil conspiracy to commit tortious interference with existing contracts and to commit tortious interference with advantageous business relationships, so Plaintiffs have a substantial likelihood of success on merits.

c)      Defendants continue to solicit timeshare owners, such as Orange Lake Owners, through their civil conspiracy to commit tortious interference with existing contracts and to commit tortious interference with advantageous business relationships, which shows a strong likelihood that Plaintiffs will suffer irreparable harm on an ongoing basis because any remedy at law for Defendants' perpetuation of their civil conspiracy to commit tortious interference with existing contracts and to commit tortious interference with advantageous business relationships is inadequate.

d)      An injunction serves the public interest.

109.    As a proximate result of Defendants' unlawful conduct, Plaintiffs are being irreparably harmed and are entitled to have Defendants' conduct enjoined and restrained.

WHEREFORE, Plaintiffs ORANGE LAKE COUNTRY CLUB, INC., and WILSON RESORT FINANCE, L.L.C., respectfully request that this Court:

A.      Enter a preliminary injunction in favor of Plaintiffs and against Defendants REED HEIN & ASSOCIATES, LLC d/b/a TIMESHARE EXIT TEAM; THE LAW OFFICES OF MITCHELL REED SUSSMAN & ASSOCIATES; and SCHROETER GOLDMARK & BENDER, P.S., and their officers, agents, servants,

34

employees, and attorneys and on those persons in active concert or participation with them who receive actual notice of the injunction enjoining them from:

1) Engaging in false and misleading advertising; and

2) Engaging in deceptive, misleading, and unfair trade practices.

B.    Enter judgment after trial for a permanent injunction in favor of Plaintiffs and against Defendants REED HEIN & ASSOCIATES, LLC d/b/a TIMESHARE EXIT TEAM; THE LAW OFFICES OF MITCHELL REED SUSSMAN & ASSOCIATES; and SCHROETER GOLDMARK & BENDER, P.S., and their officers, agents, servants, employees, and attorneys and on those persons in active concert or participation with them who receive actual notice of the injunction enjoining them from:

1) Engaging in false and misleading advertising; and

2) Engaging in deceptive, misleading, and unfair trade practices.

C.    Enter judgment for damages and lost profits (a natural consequence of Defendants' wrongs) and punitive damages;

D.    Enter judgment in favor of Plaintiffs and against Defendants for costs of suit incurred in this action; and

E.    Award Plaintiffs such other and further relief as the Court may deem proper.

## COUNT V
### (MISLEADING ADVERTISING, FLA. STAT. § 817.41)

110.   Plaintiffs reallege and reincorporate the allegations contained in paragraphs 1 through 63 above as if more fully set forth herein.

111.   This is a cause of action for misleading advertising pursuant to Fla. Stat. § 817.41 and for damages in excess of $75,000.00, exclusive of interest, attorney's fees and costs, and is within this Court's jurisdiction.

112.   TET misleadingly advertises on the Internet and radio, on its website and through celebrity endorsements, that it guarantees it will relieve timeshare owners of their timeshare obligations if TET is retained.

113.   TET is in direct competition with Plaintiffs for the payments Orange Lake Owners owe to Plaintiffs.   TET specifically seeks out Orange Lake Owners to make payments to TET instead of to Plaintiffs.

114.   TET's advertising statements on its website and in the endorsements it obtains are misrepresentations of material fact that they know or should know are false.

115.   TET intends others to rely upon their statements for the purpose of selling their "timeshare exit" services and to induce others to retain TET for those services.

116.   TET's statements are made in bad faith and with malice or reckless indifference to Plaintiffs' and consumers' interests, who, as a direct and proximate result of the foregoing, have been damaged.

117.   An injunction is a viable form of relief for violation of Fla. Stat. § 817.41.

a)      TET's actions, as outlined above, constitute misleading advertisement in violation of Fla. Stat. § 817.41.

       b)      TET has procured unwarranted and unjustified contract breaches due to TET's misleading advertisement in violation of Fla. Stat. § 817.41, so Plaintiffs have a substantial likelihood of success on merits.

       c)      TET continues to solicit timeshare owners, such as Orange Lake Owners, through its misleading advertising, which shows a strong likelihood that Plaintiffs will suffer irreparable harm on an ongoing basis because any remedy at law for TET's perpetuation of its misleading advertisement is inadequate.

       d)      An injunction serves the public interest.

118.    As a proximate result of TET's unlawful conduct, Plaintiffs are being irreparably harmed and are entitled to have TET's conduct enjoined and restrained.

WHEREFORE, Plaintiffs ORANGE LAKE COUNTRY CLUB, INC., and WILSON RESORT FINANCE, L.L.C., respectfully request that this Court:

A.    Enter a preliminary injunction in favor of Plaintiffs and against Defendant REED HEIN & ASSOCIATES, LLC d/b/a TIMESHARE EXIT TEAM, and its officers, agents, servants, employees, and attorneys and on those persons in active concert or participation with them who receive actual notice of the injunction enjoining them from:

    1) Engaging in false and misleading advertising; and

    2) Engaging in deceptive, misleading, and unfair trade practices.

B.    Enter judgment after trial for a permanent injunction in favor of Plaintiffs and against Defendant REED HEIN & ASSOCIATES, LLC d/b/a TIMESHARE EXIT TEAM, and its officers, agents, servants, employees, and attorneys and on those persons

in active concert or participation with them who receive actual notice of the injunction enjoining them from:

       1)  Engaging in false and misleading advertising; and

       2)  Engaging in deceptive, misleading, and unfair trade practices.

     C.     Enter an Order that TET be required to take down and destroy all false, misleading, and deceptive material found on TET's website and found in any marketing material or documentation TET produces or is using;

     D.     Enter an Order that TET be directed to file with this Court and serve on Plaintiffs within fifteen days after the service of an injunction, a report, in writing under oath, setting forth in detail the manner and form in which TET has complied with the injunction;

     E.     Enter an Order requiring TET to provide notice of the injunction by posting the Order on TET's website;

     F.     Enter judgment for damages and lost profits (a natural consequence of TET's wrongs) and punitive damages;

     G.     Enter judgment in favor of Plaintiffs and against TET for costs of suit, expenses, and attorneys' fees incurred in this action; and

     E.     Award Plaintiffs such other and further relief as the Court may deem proper.

## COUNT VI
## (FALSE ADVERTISING UNDER THE LANHAM ACT, 15 U.S.C. § 1125(a))

119.    Plaintiffs reallege and reincorporate the allegations contained in paragraphs 1 through 63 above as if more fully set forth herein.

120.    This is a cause of action for false advertising under the Lanham Act, 15 U.S.C. § 1125(a), and is within this Court's jurisdiction.

121.    TET's advertised "timeshare exit" services travel in interstate commerce.

122.    TET misleadingly advertises on the Internet and radio, on its website and through celebrity endorsements, that it guarantees it will relieve timeshare owners of their timeshare obligations if TET is retained.

123.    TET is in direct competition with Plaintiffs for the payments Orange Lake Owners owe to Plaintiffs.   TET specifically seeks out Orange Lake Owners to make payments to TET instead of to Plaintiffs.

124.    TET's statements that it guarantees it will relieve timeshare owners of their timeshare obligations if TET is retained are false or misleading or made in bad faith.

125.    TET deceived, or had the capacity to deceive, consumers, thereby having a material effect on consumer purchasing decisions and resulting in damages to Plaintiffs.

126.    An injunction is a viable form of relief for violation of the Lanham Act.

a)      TET's actions, as outlined above, constitute false advertising in violation of 15 U.S.C. § 1125(a).

b)      TET has procured unwarranted and unjustified contract breaches due to their false advertising in violation of 15 U.S.C. § 1125(a), so Plaintiffs have a substantial likelihood of success on merits.

        c)       TET continues to solicit timeshare owners, such as Orange Lake Owners, through their false advertising, which shows a strong likelihood that Plaintiffs will suffer irreparable harm on an ongoing basis because any remedy at law for TET's perpetuation of their false advertising is inadequate.

        d)       An injunction serves the public interest.

    127.   As a proximate result of TET's unlawful conduct, Plaintiffs are being irreparably harmed and are entitled to have TET's conduct enjoined and restrained.

    WHEREFORE, Plaintiffs ORANGE LAKE COUNTRY CLUB, INC., and WILSON RESORT FINANCE, L.L.C., respectfully request that this Court:

    A.     Enter a preliminary injunction in favor of Plaintiffs and against Defendant REED HEIN & ASSOCIATES, LLC d/b/a TIMESHARE EXIT TEAM, and its officers, agents, servants, employees, and attorneys and on those persons in active concert or participation with them who receive actual notice of the injunction enjoining them from:

        1)  Engaging in false advertising; and

        2)  Engaging in deceptive, misleading, and unfair trade practices.

    B.     Enter judgment after trial for a permanent injunction in favor of Plaintiffs and against Defendant REED HEIN & ASSOCIATES, LLC d/b/a TIMESHARE EXIT TEAM, and its officers, agents, servants, employees, and attorneys and on those persons in active concert or participation with them who receive actual notice of the injunction enjoining them from:

        1)  Engaging in false advertising; and

        2)  Engaging in deceptive, misleading, and unfair trade practices.

C.      Enter an Order that TET be required to take down and destroy all false, misleading, and deceptive material found on TET's website and found in any marketing material or documentation TET produces or is using;

D.      Enter an Order that TET be directed to file with this Court and serve on Plaintiffs within fifteen days after the service of an injunction, a report, in writing under oath, setting forth in detail the manner and form in which TET has complied with the injunction;

E.      Enter an Order requiring TET to provide notice of the injunction by posting the Order on TET's website;

F.      Enter judgment for damages and lost profits (a natural consequence of TET's wrongs);

G.      Enter judgment in favor of Plaintiffs and against TET for costs of suit, expenses, and attorneys' fees incurred in this action; and

E.      Award Plaintiffs such other and further relief as the Court may deem proper.

DATED this 23rd day of August, 2017.

Respectfully submitted,

By: _____

RICHARD W. EPSTEIN
(Trial Counsel)
Florida Bar No. 229091
JEFFREY A. BACKMAN
Florida Bar No. 662501
CHRISTINA GUZMAN
Florida Bar No. 68928
GREENSPOON MARDER LAW
201 East Pine St, Suite 500

Orlando, Florida 32801
Telephone:     (407) 425-6559
Facsimile:     (407) 209-3152
Richard.Epstein@gmlaw.com
Maria.Salgado@gmlaw.com
Jeffrey.Backman@gmlaw.com
Khia.Joseph@gmlaw.com
Christina.Guzman@gmlaw.com
Cheryl.Cochran@gmlaw.com