## IN THE UNITED STATES DISTRICT COURT OF
## THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

ORANGE LAKE COUNTRY CLUB, INC., a Florida corporation, and WILSON RESORT FINANCE, L.L.C., a Delaware limited liability company,

        Plaintiffs,

v.

REED HEIN & ASSOCIATES, LLC d/b/a TIMESHARE EXIT TEAM; MITCHELL REED SUSSMAN d/b/a MITCHELL REED SUSSMAN & ASSOCIATES; and SCHROETER GOLDMARK & BENDER, P.S., BRANDON REED, TREVOR HEIN, and THOMAS PARENTEAU,

        Defendants.

_____/

CASE NO.: 17-cv-1542-DRL-37-KRSA

## SECOND AMENDED COMPLAINT
## FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff ORANGE LAKE COUNTRY CLUB, INC., a Florida corporation, and Plaintiff WILSON RESORT FINANCE, L.L.C., a Delaware limited liability company, file this Complaint against Defendants REED HEIN & ASSOCIATES, LLC d/b/a TIMESHARE EXIT TEAM, a Washington corporation; MITCHELL REED SUSSMAN d/b/a MITCHELL REED SUSSMAN & ASSOCIATES, an individual; SCHROETER GOLDMARK & BENDER, P.S., a Washington professional services corporation; BRANDON REED, an individual; TREVOR HEIN, an individual; and THOMAS PARENTEAU, an individual, and state:

## INTRODUCTION

1.      Timeshares are a popular option for vacationers throughout the world.  In 2016, Florida led the United States in timeshare resorts, comprising 24 percent of the national total of 1,547 resorts.[1]  It should come as no surprise, then, that Florida timeshare companies are often the main targets of schemes by so-called "consumer protection" firms whose business models profit from disrupting the valid legal contracts between resorts and their owners and divert owners' money to them instead.  One such target is Plaintiff Orange Lake Country Club, Inc. ("OLCC").

2.      OLCC is in the business of developing, financing, managing, and selling timeshare resort properties throughout the United States, including in Florida.  OLCC has 13 timeshare resorts totaling approximately 3,395 individual timeshare units and is supported by nearly 3,000 employees.  There are currently over 100,000 OLCC timeshare owners worldwide.  Plaintiff Wilson Resort Finance, L.L.C. ("Wilson Finance") offers financing to purchasers of OLCC timeshare interests and is the holder of promissory notes and mortgages extended to owners (collectively, OLCC and Wilson Finance are "Orange Lake").

3.      Defendants Brandon Reed ("Reed"), Trevor Hein ("Hein"), and Thomas Parenteau ("Parenteau") control Defendant Reed Hein & Associates d/b/a Timeshare Exit Team ("TET") and serve as driving, integral figures in TET's scheme described herein.  Through the promises on TET's website and paid celebrity endorsements from the likes

---

[1] VacationBetter.org, *Timeshare Industry Shows Another Year of Substantial Growth*, http://vacationbetter.org/timeshare-industry-shows-another-year-of-substantial-growth/ (Accessed Aug. 23, 2017).

of Glenn Beck, Steve Harvey, and Dave Ramsey, Reed, Hein, and Parenteau make false and misleading promises purporting to operate a "consumer protection group" offering a "100% guarantee" to relieve timeshare owners of their obligations, including owners of Orange Lake timeshare interests.  If TET is unsuccessful in cancelling an owners' timeshare interest, TET promises to return their money.

4.      However, TET – which is not a law firm – is not assisting consumers in situations in which a timeshare company, resort, or developer – such as Orange Lake – has done something illegal.  Instead, TET simply wants owners to pay money to TET in lieu of owners paying their annual maintenance, taxes, or mortgage payments to their timeshare company, resort, or developer.

5.      In an interview with the television program New Day Northwest on King 5, a broadcast media company and NBC affiliate based in Seattle, Washington, TET representatives stated TET's business plan in a nutshell:

> As far as we're concerned, the majority of timeshare contracts out there are just unfair contracts.  So that's what we do, we're a team of consumer advocates that also have attorneys when we need them.  And we break those—we get them out of those contracts.[2]

6.      To accomplish TET's goal to "break" those contracts, TET's representatives instruct owners to **stop** making their required payments to their timeshare companies.  TET's representatives know that by giving owners this advice, owners will breach their valid and enforceable agreements with their timeshare company, resort, or

---

[2]   King5.com, *Warning about scammers targeting time share owners*, http://www.king5.com/entertainment/television/programs/new-day-northwest/warning-about-scammers-targeting-time-share-owners/140109716 (Accessed Aug. 23, 2017).

3

developer.  Identifiable owners of Orange Lake timeshare interests have followed this very advice from TET's representatives and Orange Lake has been damaged as a result.

7.     The instructions from TET's representatives are then furthered by the attorneys that TET – not the owners who have signed up with TET – retains.  In fact, the owners never meet any of these attorneys.

8.     These TET-retained attorneys send boilerplate demand letters to the owners' timeshare companies instructing them to cease communicating with TET's purported "clients" and either state that TET's "clients" wish to terminate their timeshare agreements without reference to any legal basis whatsoever, or wish to terminate their obligations on false legal and factual bases.

9.     Defendant Mitchell Reed Sussman d/b/a Mitchell Reed Sussman & Associates ("Sussman Law") and Schroeter Goldmark & Bender, P.S. ("SGB Law") are retained by TET and send these kinds of boilerplate demand letters to Orange Lake in connection with identifiable owners of Orange Lake timeshare interests.  The demand letters are not unique to the situation of any owner of an Orange Lake timeshare interest.

10.    As a result, owners are hamstrung both by TET's advice not to make their payments or to communicate with Orange Lake, and by Sussman Law and SGB Law's furtherance of TET's instructions by sending demand letters with baseless claims instructing Orange Lake not to reach out to owners of Orange Lake timeshare interests. As a result of all of this, Orange Lake is damaged.

11.    In light of this, TET's "100% guarantee" to refund the owners' paid fee if TET fails to "exit" the owners from their timeshares is worthless in the face of having

4

lured and then subjected these owners to the risk of foreclosure actions and does nothing to absolve the Defendants' collective actions of interfering with Orange Lake's valid and legal contractual and business relationships with owners of Orange Lake timeshare interests for the Defendants' own pecuniary gain.

## PARTIES

12.     Plaintiff Orange Lake Country Club, Inc., is a Florida corporation with its principal place of business at 8505 West Irlo Bronson Memorial Highway, Kissimmee, Osceola County, Florida 34747.

13.     Plaintiff Wilson Resort Finance, L.L.C., is a Delaware limited liability company with its principal place of business at 8505 West Irlo Bronson Memorial Highway, Kissimmee, Osceola County, Florida 34747.

      a)    Its sole member is Wilson Resort Group, LLC, a Florida limited liability company, with its principal place of business at 8505 West Irlo Bronson Memorial Highway, Kissimmee, Osceola County, Florida 34747.

      b)    Wilson Resort Group, LLC's sole member is Orange Lake Country Club, Inc., a Florida corporation with its principal place of business at 8505 West Irlo Bronson Memorial Highway, Kissimmee, Osceola County, Florida 34747.

14.     Defendant Reed Hein & Associates, LLC, is a Washington limited liability company with its principal place of business at 3400 188th Street SW, Suite 300, Lynnwood, Washington 98037 ("Reed Hein").

a)      Reed Hein's Managing Members are Brandon Reed and Trevor Hein.

b)      Makaymax, Inc., is a 60 percent owner of Reed Hein.  Makaymax, Inc., is a Washington corporation with its principal place of business at 3400 188th Street SW, Suite 300, Lynnwood, Washington 98037.

c)      Hein & Sons Industries, Inc., is a 40 percent owner of Reed Hein. Hein & Sons Industries, Inc., is a Delaware corporation with its principal place of business at 3400 188th Street SW, Suite 300, Lynnwood, Washington 98037.

d)      "Timeshare Exit Team" is a registered trade name in Washington for Reed Hein.

15.     Defendant Mitchell Reed Sussman d/b/a Mitchell Reed Sussman & Associates ("Sussman Law") is an individual domiciled in Palm Springs, Riverside County, California, and is a citizen of California.

16.     Defendant Schroeter Goldmark & Bender, P.S. ("SGB Law") is a Washington professional services corporation with its principal place of business at 810 Third Avenue, Suite 500, Seattle, Washington 98104.

17.     Defendant Brandon Reed is an individual domiciled in Kirkland, King County, Washington, and is a citizen of Washington.

18.     Defendant Trevor Hein is an individual domiciled in Surrey, British Columbia, Canada, and is a citizen of Canada.

19.     Defendant Thomas Parenteau is an individual domiciled in Seattle, King County, Washington, and is a citizen of Washington.

## JURISDICTION

20.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs and all Defendants in this matter and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00.  Additionally, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because a federal question is presented under the Lanham Act, 15 U.S.C. § 1125(a).

21.     This Court also has supplemental jurisdiction over Orange Lake's state law claims under 28, U.S.C. § 1367 because those claims derive from a common nucleus of operative facts and are so related to claims in the action within original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

22.     This Court may exercise personal jurisdiction over all Defendants because this action arises out of and is related to Defendants' purposeful contacts with the State of Florida.

### *TET*

23.     TET (i) solicits owners of timeshare interests, many of whom reside in Florida and/or whose timeshare interests are located in Florida, through the use of false, misleading, and deceptive advertising, (ii) intentionally interferes with contracts between Orange Lake, a Florida corporation, and owners of Orange Lake Timeshare interests who

retain TET ("Orange Lake Owners"), (iii) intentionally interferes with advantageous business and contractual relationships between Orange Lake and Orange Lake Owners, many of whom reside in Florida and/or whose timeshare interests are located in Florida, and (iv) is registered as a foreign limited liability company with the Florida Department of State in order to conduct business in the state of Florida.

24.     TET's Internet-based operations subject it to personal jurisdiction in the State of Florida.  TET solicits owners of Florida timeshare interests through the use of false, misleading, and deceptive advertising it contains on its websites, http://www.timeshareexitteam.com, www.reedhein.com, and www.321exit.com.  These websites do not constitute passive advertising.  TET solicits and receives the contact information of owners of Florida timeshare interests through the website, which involves the repeated transmission of computer files over the internet and allows owners of Florida timeshare interests to exchange their contact information with a host computer.

25.     TET commits tortious acts in the State of Florida, specifically, tortious interference with contractual and business relationships between Orange Lake and owners of Orange Lake timeshare interests.  TET instructs owners of Orange Lake timeshare interests to cease making valid payments of maintenance, taxes, and note and mortgage payments to Orange Lake, which damages Orange Lake.

26.     TET executes agreements with owners of Orange Lake timeshare interests, some of whom own timeshare interests in Florida.  TET is to perform these agreements, in whole or in part, in Florida.  TET purports to negotiate with Orange Lake to secure the release of any future obligations the owners of Orange Lake timeshare interests owe to

the Plaintiffs, together with the cancellation of the owners' contracts with Orange Lake. To effect the cancellation, TET instructs its retained attorneys, Sussman Law and SGB Law, to mail letters addressed to Orange Lake in Florida.

27.     This Court's exercise of personal jurisdiction over TET would not violate traditional notions of fair play and substantial justice.

*Sussman Law*

28.     Sussman Law commits tortious acts in the State of Florida by conspiring with TET to tortiously interfere with contractual and business relationships between Orange Lake and owners of Orange Lake timeshare interests.

29.     TET retains Sussman Law in order to effectuate the promised "exit," often with respect to Orange Lake Owners who reside in Florida and/or own a timeshare interest located in Florida.   TET representatives instruct owners of Orange Lake timeshare interests to stop making any payments to Orange Lake, and then instruct Sussman Law to contact Orange Lake on baseless legal grounds in writing, by phone, and by e-mail in order to, *inter alia*, prevent communication between Orange Lake and its owners.

30.     These communications are directed to Orange Lake in Florida and serve to further the interference between the contractual and business relationships between Orange Lake and owners of Orange Lake timeshare interests.

31.     This Court's exercise of personal jurisdiction over Sussman Law would not violate traditional notions of fair play and substantial justice.

*SGB Law*

32.     SGB Law commits tortious acts in the state of Florida by conspiring with TET to tortiously interfere with contractual and business relationships between Orange Lake and owners of Orange Lake timeshare interests.

33.     TET retains SGB Law in order to effectuate the promised "exit," often with respect to Orange Lake Owners who reside in Florida and/or own a timeshare interest located in Florida.   TET representatives instruct owners of Orange Lake timeshare interests to stop making any payments to Orange Lake, and then instruct SGB Law to contact Orange Lake on non-legal grounds in writing, by phone, and by e-mail in order to, *inter alia*, prevent communication between Orange Lake and its owners.

34.     These communications are directed to Orange Lake in Florida and serve to further the interference between the contractual and business relationships between Orange Lake and owners of Orange Lake timeshare interests.

35.     This Court's exercise of personal jurisdiction over SGB would not violate traditional notions of fair play and substantial justice.

*Reed*

36.     Personal jurisdiction over Reed is proper because this action arises out of and is related to Reed's purposeful contacts with the State of Florida, including (i) the solicitation of owners of Florida timeshares through the use of false and deceptive advertising; (ii) the intentional interference with contracts between Orange Lake, a Florida company, and owners of timeshare interests in Florida; (iii) the intentional interference with advantageous business relationships between Orange Lake and owners

of timeshare interests in Florida, (iv) and making false and misleading statements regarding Orange Lake through TET's website, directed at Florida residents. Specifically, via postings on TET's websites, Reed purposefully directs marketing efforts to, and solicits, Florida residents who own timeshare interests in Orange Lake (including Orange Lake Owners who reside in Florida).   Indeed, through false and deceptive advertisements, Reed lures Orange Lake Owners to pay large upfront fees to retain TET and induce the Orange Lake Owners to breach existing contracts and terminate existing advantageous business relationships with Orange Lake.   Such false and deceptive advertisements also underlie Orange Lake's claims against Reed for violations of the Lanham Act, 15 U.S.C. § 1125(a), *et seq*., violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), and violations of Section 817.41, Florida Statutes.

37.     Moreover, TET's misleading and deceptive advertising campaign, which is orchestrated, supervised, and conducted by Reed, does not contain passive advertising. Reed solicits owners of Florida timeshare interests through the use of false, misleading, and deceptive advertising on, *inter alia*, the websites, http://www.timeshareexitteam.com, www.reedhein.com, and www.321exit.com.   These websites do not constitute passive advertising.   Reed solicits and receives the contact information of owners of Florida timeshare interests through the website, which involves the repeated transmission of computer files over the internet and allows owners of Florida timeshare interests to exchange their contact information with a host computer.   Reed designs and directs TET's false and misleading advertising and marketing activities that cause Plaintiffs injury in Florida outside of the scope of his role as managing member of TET.

38.     This Court's exercise of personal jurisdiction over Reed would not violate traditional notions of fair play and substantial justice.

*Hein*

39.     Personal jurisdiction over Hein is proper because this action arises out of and is related to Hein's purposeful contacts with the State of Florida, including (i) the solicitation of owners of Florida timeshares through the use of false and deceptive advertising; (ii) the intentional interference with contracts between Orange Lake, a Florida company, and Orange Lake Owners in Florida; (iii) the intentional interference with advantageous business relationships between Orange Lake and owners of timeshare interests in Florida, (iv) and making false and misleading statements regarding Orange Lake through TET's websites, directed at Florida residents.  Specifically, via postings on TET's website, Hein purposefully directs marketing efforts to, and solicits, Florida residents who own timeshare interests in Orange Lake (including Orange Lake Owners who reside in Florida).  Indeed, through false and deceptive advertisements, Hein lures Orange Lake Owners to pay large upfront fees to retain TET and induce the Orange Lake Owners to breach existing contracts and terminate existing advantageous business relationships with Orange Lake.  Such false and deceptive advertisements also underlie Orange Lake's claims against Hein for violations of the Lanham Act, 15 U.S.C. § 1125(a), *et seq.*, violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), and violations of Section 817.41, Florida Statutes.

40.     Moreover, TET's misleading and deceptive advertising campaign, which is orchestrated, supervised, and conducted by Hein, does not contain passive advertising.

Hein solicits owners of Florida timeshare interests through the use of false, misleading, and deceptive advertising on, *inter alia*, the websites, http://www.timeshareexitteam.com, www.reedhein.com, and www.321exit.com.    Hein solicits and receives the contact information of owners of Florida timeshare interests through the website, which involves the repeated transmission of computer files over the internet and allows owners of Florida timeshare interests to exchange their contact information with a host computer.   Hein designs and directs TET's false and misleading advertising and marketing activities that cause Plaintiffs injury in Florida outside of the scope of his role as managing member of TET.

41.    This Court's exercise of personal jurisdiction over Hein would not violate traditional notions of fair play and substantial justice.

*Parenteau*

42.    Personal jurisdiction over Parenteau is proper because this action arises out of and is related to Parenteau's purposeful contacts with the State of Florida, including (i) the solicitation of owners of Florida timeshares through the use of false and deceptive advertising; (ii) the intentional interference with contracts between Orange Lake, a Florida company, and Orange Lake Owners in Florida; (iii) the intentional interference with advantageous business relationships between Orange Lake and owners of timeshare interests in Florida, (iv) and making false and misleading statements regarding Orange Lake through TET's website, directed at Florida residents. Specifically, via postings on TET's website, Parenteau purposefully directs marketing efforts to, and solicits, Florida residents who own timeshare interests in Orange Lake

(including Orange Lake Owners who reside in Florida).  Indeed, through false and deceptive advertisements, Parenteau lures Orange Lake Owners to pay large upfront fees to retain TET and induce the Orange Lake Owners to breach existing contracts and terminate existing advantageous business relationships with Orange Lake.  Such false and deceptive advertisements also underlie Orange Lake's claims against Parenteau for violations of the Lanham Act, 15 U.S.C. § 1125(a), *et seq*., violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), and violations of Section 817.41, Florida Statutes.

43.    Moreover, TET's misleading and deceptive advertising campaign, which is orchestrated, supervised, and conducted by Parenteau, does not contain passive advertising.  Parenteau solicits owners of Florida timeshare interests through the use of false, misleading, and deceptive advertising on, *inter alia*, the websites, http://www.timeshareexitteam.com, www.reedhein.com, and www.321exit.com. Parenteau solicits and receives the contact information of owners of Florida timeshare interests through the website, which involves the repeated transmission of computer files over the internet and allows owners of Florida timeshare interests to exchange their contact information with a host computer.  Parenteau designs and directs TET's false and misleading advertising and marketing activities that cause Plaintiffs injury in Florida outside of the scope of his role as Chief Operating Officer of TET.

44.    This Court's exercise of personal jurisdiction over Parenteau would not violate traditional notions of fair play and substantial justice.

## VENUE

45.     Pursuant to 28 U.S.C. § 1391, venue is proper in this judicial district because the events or omissions giving rise to the claims asserted in this complaint occurred within this judicial district.

## GENERAL ALLEGATIONS

### A.     The Orange Lake Timeshare Purchase

46.     At the time of a timeshare purchase from Orange Lake, each purchaser executes a written purchase agreement ("Purchase Agreement").  Pursuant to the terms of the Purchase Agreement, in addition to purchasing the timeshare interest, each owner understands and agrees to be bound by the Declaration of Condominium ("Declaration") for the resort where the owner purchased the timeshare, and to be responsible for their share of common expenses, assessments, maintenance fees, and any and all other expenses incurred in the operation of their timeshare unit.  The Declaration is referenced and incorporated in the Purchase Agreement with the owners.

47.     If a purchaser desires mortgage financing, he or she may complete and submit a mortgage application as part of the Purchase Agreement.  Upon approval of financing, a purchaser will execute and deliver a promissory note ("Promissory Note") and mortgage ("Mortgage") in connection with the timeshare purchase.  Both the Promissory Note and Mortgage are referenced and incorporated in the Purchase Agreement with the owners.  Wilson Finance is the lender and holder of Orange Lake Promissory Notes and Mortgages.

48.    Plaintiffs have heavily invested in the development, evolution, and perpetual improvement of their products and services.  They continually add new and improved services to their member menu and are constantly otherwise improving their member experience.

49.    Plaintiffs actively and aggressively protect their proprietary business practices and processes and their brand and reputation.  They devote substantial resources to advertising and other marketing promotions to increase the visibility and recognitions of their proprietary products and to maintain and enhance the value of their brand. Orange Lake competes directly with those who profit from the timeshare market place by targeting similar customers, such as other developers, marketers of vacation and travel products/services, and TET.  The goodwill associated with Plaintiffs' brands and their products are essential to Plaintiffs' ability to effectively compete in a highly competitive marketplace.

**B.    Relationship Between The Defendants**

50.    Collectively, Defendants are engaged in a timeshare cancellation scheme designed to induce Orange Lake Owners to breach their Purchase Agreements with, and related obligations to, Orange Lake in order to steer Orange Lake Owners to instead pay large, upfront sums to Defendants for their pecuniary gain.

51.    Reed and Hein are the founding members of TET.  Reed currently serves as Chief Executive Officer of TET, and Parenteau serves as TET's Chief Operating Officer.  Even though Reed and Hein are the purported owners of TET, Reed and Hein together with Parenteau are the masterminds behind TET's overall scheme.

16

52.     Reed, Hein, and Parenteau utilize TET as a mere instrumentality or business conduit to perpetrate a fraud on TET's clients that results in significant commercial and reputational harm to Orange Lake.  Indeed, Reed, Hein, and Parenteau control and dominate TET to such an extent that it has no independent existence apart from theirs.  Upon information and belief, Reed, Hein, and Parenteau use TET in an attempt to conceal the identities of wrongdoers in their scheme directed at timeshare companies, including Orange Lake.

53.     As described below, Reed, Hein, and Parenteau are using TET as a subterfuge for a massive scam to solicit timeshare owners through fraudulent, unfair, and deceptive advertising, which is orchestrated and controlled by Reed, Hein, and Parenteau.

**C.**     **Reed, Hein and Parenteau's TET Scheme**

54.     In or around December 2012, Reed and Hein formed TET to solicit timeshare owners using false and misleading advertising with, *inter alia*, the purpose of tortiously interfering with Plaintiffs' existing contracts and advantageous business relationships with owners of Orange Lake timeshare interests ("Orange Lake Owners").

55.     Through TET, Reed, Hein and Parenteau solicit timeshare owners, including identifiable Orange Lake Owners, convince them to terminate their Purchase Agreements, and entice the owners into signing a contract with TET for timeshare exit services, requiring large payments upfront.

56.     In order to lure timeshare owners, including Orange Lake Owners, to hire TET, Reed, Hein and Parenteau make false and misleading guarantees using a variety of marketing methods.  Reed, Hein and Parenteau's methods include ensuring that TET is

being endorsed by radio personalities and motivational speaker's websites, advertising through radio stations across the country, appearing in newspaper articles (such as in the Los Angeles Times and USA Today), engaging in television advertising, and advertising through several websites, including: www.timeshareexitteam.com, www.reedhein.com, and www.321exit.com.  The domain names www.reedhein.com and www.321exit.com both redirect customers to wwwtimeshareexitteam.com.  Reed, Hein and Parenteau similarly utilize social media, such as Facebook, and other internet websites and forums to sell TET's services to timeshare owners, including Orange Lake Owners.

57.    Among the most popular of TET's celebrity endorsements is Dave Ramsey, a radio personality who advises listeners on personal and household finances. Identifiable Orange Lake Owners have been lured to TET because of Mr. Ramsey's radio show.  In fact, on Mr. Ramsey's own website, he decries timeshares as outright "scams" and provides a link to TET's website.[3]

58.    Through the www.timeshareexitteam.com website, Reed, Hein and Parenteau advertise that TET will utilize its "proprietary process" to "get rid of" owners' timeshare contracts "Safely.  Legitimately.  Forever."  According to the website's "Frequently Asked Questions" section, TET is for the following types of timeshare owners who are:

- Not using their timeshare as much as they intended to
- Frustrated by unexpected "special assessments" and skyrocketing maintenance fees

---

[3]      DaveRamsey.com,    The    Truth    about    Timeshares, https://www.daveramsey.com/blog/the-truth-about-timeshares (Accessed Aug. 23, 2017).

- Financially set back by their timeshare maintenance fees and special assessments
- Frustrated by their failure to sell the timeshare through a listing company
- Concerned about their children inheriting their timeshare and then consequently becoming financially responsible for it
- Bothered they can't vacation where they want, when they want
- Tired of going to the same place every year
- Aggravated with exchange companies
- Realizing that there are more ways to go on vacation for much less
- Widowed or divorced, or are no longer able to travel with their loved ones
- Inheritors of a timeshare they don't want or use
- Part of resort scams

59. There is nothing "legitimate" about the foregoing advertised reasons. Through TET, Reed, Hein and Parenteau misrepresent to owners that any of the foregoing advertised reasons are legally sufficient reasons to terminate a timeshare contract when, in fact, none of these are legal bases for a timeshare owner to cease making his or her payments under their legally binding contracts with a timeshare company.

60. As part of TET's advertised "unique strategy," Reed, Hein and Parenteau direct TET's representatives to instruct owners, including Orange Lake Owners, to stop making payments on their timeshare obligations, such as owners' Promissory Note and Mortgage payments as well as maintenance and tax payments. By doing so, Reed, Hein and Parenteau misrepresent to the owners that timeshare companies will be more willing to allow the owners to "exit" their timeshare. Through TET, Reed, Hein and Parenteau further misrepresent to owners that their credit scores will not be affected by halting their

payments. Identifiable Orange Lake Owners were given these very instructions and assurances.

61.     Reed, Hein and Parenteau's misleading advertising and marketing in connection with TET through the various methods described above are designed to induce Orange Lake Owners to breach their Purchase Agreements with Orange Lake. But Reed, Hein and Parenteau fail to describe to Orange Lake Owners what, exactly, TET's "exit process" consists of and never publicly disclose TET's strategy. Instead, they repeatedly refer to a vague "exit process" that Reed, Hein and Parenteau claim is "proprietary."

62.     Reed, Hein and Parenteau also fail to publicly disclose the fees they charge timeshare owners, including Orange Lake Owners. When asked about fees charged, the standard response is to state that every case is unique and that a private consultation with TET is the only way to obtain a fee quote. Reed, Hein and Parenteau thus direct TET representatives to refuse to provide fee information unless a timeshare owner participates in a "free consultation" with TET.

63.     Timeshare owners, including Orange Lake Owners, are thus left with only a vague idea as to what TET will do for them (other than TET's general, false promise to exit their timeshare contract) or how TET will accomplish the purported exit, without agreeing to a misleading sales pitch disguised as a "free consultation." Thus, timeshare owners who contact TET, including Orange Lake owners, may not be predisposed to exit their timeshare when they contact TET and may only be seeking additional information that Reed, Hein and Parenteau refuse to publicly disclose.

64. The fees charged by Reed, Hein and Parenteau for TET's purported services vary, but are typically in the many thousands of dollars per timeshare owner. These fees are so high that Reed, Hein and Parenteau offer financing plans to timeshare owners (including Orange Lake Owners) to further induce the timeshare owners to retain TET to breach their timeshare contract.

65. TET's agreements with the owners who retain them are designed to protect TET from its own misrepresentations. Identifiable Orange Lake Owners' retainer documents contain provisions that contradict the verbal instructions TET's representatives give to the owners and the "guarantees" emblazoned across TET's website. The following disclaimer is from a February 21, 2016, version of a list given to retained Orange Lake Owners titled by TET "Things to Remember":

> RESORT FEES. You own the Timeshare until the closing of the exit is finalized, thereby relieving you of ownership; you remain responsible for all financial obligations associated with the Timeshare until the exit is complete. If you have determined of your own accord not to pay the resort ever again, you can expect some consequences that may include negative credit reporting, collection activity and/or legal action. In the final resolution with the resort, we may be able to request removal of any negative credit reporting with the credit bureaus. If there is a collection agency involved, we can assist you by requesting that the agency stop contacting you. However, we cannot control all of the actions by the resort or the collection agency. We have found that some resorts are quite pleasant to work with on an exit, while others are not. We can deal with both types for you. Our goal is to achieve an ultimate positive result for you.

66.     TET's goal to achieve an "ultimate positive result" is nowhere near equivalent to its advertised and misleading "personal GUARANTEE . . . that our team of consumer advocates will get you out of your timeshare, period."

67.     In fact, the "guarantee" is defined as **whatever offer** TET can manage to obtain from a timeshare resort.  The following excerpt is from a November 23, 2015, TET retainer agreement:

> FEES AND COSTS.  Under this Agreement there are absolutely no extra service fees or closing costs to be owed or paid by the CLIENT to REED HEIN.  However, some resorts may require a cancellation fee or similar fee to end or exit an ownership, and such fee(s) may be required in your case.  These fees will be no greater than the amount of this current year's maintenance fee.  If so, the CLIENT will be required to pay that fee to the Resort for a successful exit.  In addition, some resorts require all past maintenance fees to be paid upon the completion of an exit.  If required, these past maintenance fees will be paid by the CLIENT.  Whether accepted by OWNER or not, an exit agreement obtained by REED HEIN from the Resort shall meet REED HEIN's Guarantee even though the Resort may require by OWNER of an exit fee.

68.     But TET does not even deal with the timeshare companies – the TET-retained attorneys are the ones who do so.  Reed, Hein and Parenteau utilize TET to hire attorneys to execute TET's "proprietary process."  These attorneys, including Sussman Law and SGB Law, are retained pursuant to bulk representation contracts wherein TET promises to send the law firms a minimum number of files per month and pay a fixed fee per file.  TET then promises timeshare owners that it will "interface" between the owners and the attorneys.  Pursuant to the representation agreements between TET and the law

firms, however, TET is prohibited from representing to TET clients that TET's retained attorneys represent TET's clients.

69.     Another method that Reed, Hein and Parenteau use to convince owners to retain TET is to provide owners with a chart outlining the cost of paying the owner's timeshare company as compared to paying TET for its services.  An identifiable Orange Lake Owner was provided a chart that calculated the cost of paying annual maintenance fees plus special assessments in the amount of $21,579.00 for the next fifteen years, together with total future mortgage payments in the amount of $14,861.00, for a total of $36,440.00 versus paying $6,395.00 to TET.   However, the chart fails to discount the payments expected over the remainder of the timeshare contract to net present value, thereby willfully exaggerating what the Orange Lake Owner may pay, making TET's fees seem relatively lower in comparison to what they really are.  Printed over the final comparison figures, TET asks a simple question:

*Which of these would you rather pay?*

70.     After signing TET's retainer documents, owners are assigned an "Account Coordinator who becomes [their] personal contact during [the owner's] entire exit process.  No general 800 phone numbers or endless automated phone systems while trying to reach Customer Service.  [The] Account Coordinator will explain how the process works and will provide you with status updates throughout the exit process."  In fact, however, the e-mail updates that identifiable Orange Lake Owners have received are scant, non-specific, and designed to string along Orange Lake Owners into believing that actual work is being done on their behalves.

71.     Thereafter, TET begins its purported "negotiation process" with the owners' timeshare companies.  On its website, TET states that the "specifics of the process will depend on your ownership situation and how the resort responds to our requests." TET promises "exit" or it will refund the entirety of the fee to the owners.

72.     However, by Reed, Hein and Parenteau's design, TET is not doing any work to negotiate anything at all and fails to notify owners of this failure until the owners are in arrears.  Instead, through TET, Reed, Hein and Parenteau hire law firms including Sussman Law and SGB Law to handle these purported "negotiations" pursuant to master fee agreements by which TET agrees to pay these law firms a portion of the fee TET obtains at sign-up in the amount of $1,200.00.  Reed, Hein, and Parenteau also promise to send law firms at least 800 files a month, which, at $1,200.00 a file, is a lucrative operation for law firms such as Sussman Law and SGB Law. [4]

73.     Identifiable Orange Lake Owners have been told by TET representatives, almost a year into their retention of TET, that the attorney retained by TET "could not help [the Orange Lake Owners] anymore."  In addition, because the boilerplate demand letters sent by the law firms to Orange Lake state that Orange Lake is forbidden from communicating with Orange Lake Owners, the owners are completely unaware – until they are served with a copy of a foreclosure lawsuit – that TET, Sussman Law, and SGB Law are accomplishing absolutely ***nothing*** for them except for interference with the contracts they hold with Orange Lake.

---

[4] In fact, a law firm previously retained by TET has sued TET for breach of one of these exclusive and profitable master fee agreements.  *See Ken B. Privett, PLC v. Reed Hein & Associates, LLC d/b/a Timeshare Exit Team*, Case No. CJ-17-20 (In the District Court of Pawnee County, Oklahoma).

74.     What Reed, Hein and Parenteau actually accomplish through TET is to intentionally prohibit communication between Orange Lake and the Orange Lake Owners who have retained TET, cause those Orange Lake Owners to default on their payment obligations under their Purchase Agreements causing Orange Lake to foreclose on that interest (damaging the Orange Lake Owners' credit), and then falsely claim that TET has "exited" the Orange Lake Owners from their Purchase Agreements.   As a result of Defendants' actions, Orange Lake suffers significant damages.

**D.      Sussman Law's Furtherance of Reed, Hein and Parenteau's TET Scheme**

75.     As described above, through, *inter alia*, TET's deception and false advertising, Reed, Hein and Parenteau instruct owners to **stop** making their required payments to their timeshare companies, thereby causing such owners to breach their valid and enforceable agreements with their timeshare company.

76.     After finally convincing owners to pay TET instead of Orange Lake, TET's next step is to "negotiate" the owners' exit.   TET, however, does not handle the negotiation process on its own.   Instead, through TET, Reed, Hein and Parenteau hire law firms, including Sussman Law, to, *inter alia*, handle these fruitless "negotiations" pursuant to master fee agreements by which TET agrees to pay Sussman Law a portion of the upfront fee that TET charges Orange Lake Owners.

77.     Sussman Law, without ever speaking with an owner, then sends boilerplate demand letters to the owners' timeshare companies, including Orange Lake, instructing them to cease communicating with Sussman Law's purported "clients."   The demand letters either state that TET's "clients" wish to terminate their timeshare

agreements without reference to any legal basis whatsoever, or wish to terminate their obligation on false legal and factual bases.  Accordingly, the demand letters are not unique to the situation of any Orange Lake Owner.

78.     Indeed, Sussman Law sends boilerplate demand letters to Orange Lake stating that the reason the timeshare owners wish to terminate their interest is due to "claims of fraud and misrepresentation arising from [Orange Lake's] time-share presentation and sale," when, to the contrary, identifiable Orange Lake Owners have been lured in by TET's false and misleading Internet and radio advertising, which is orchestrated and designed by Reed, Hein and Parenteau, and, convinced by those, wish to simply stop making their payments for no legitimate reason at all.  These letters, which also instruct Orange Lake not to contact the TET clients, together with any subsequent correspondence, telephone calls, and e-mails, serve to further the interference with the contractual and business relationships between the Orange Lake Owners and Orange Lake as Orange Lake cannot gain access to Orange Lake Owners to resolve any issues related to their timeshares.  As a result, Orange Lake is forced to, *inter alia*, expend considerable money to foreclose on the Orange Lake Owners' timeshare interest.

79.     In fact, Sussman Law sent a demand letter to Orange Lake seeking to terminate a timeshare interest on the basis of fraud and misrepresentation at a timeshare presentation for Orange Lake Owners who actually ***inherited their timeshare from their parents***.  These owners never sat for a presentation.  Sussman Law knows the claims made in its letters to be baseless and false because Sussman Law never communicates

with the Orange Lake Owners before or after Sussman Law sends these demand letters to Orange Lake.

80.     Sussman Law's actions in concert with, and in furtherance of Reed, Hein and Parenteau's  scheme through TET results in significant damages to Orange Lake for Sussman Law's own pecuniary gain.

### E.     SGB Law's Furtherance of Reed, Hein and Parenteau's TET Scheme

81.     SGB Law is also hired by Reed, Hein and Parenteau through TET to "negotiate" timeshare owners' exits with timeshare companies, including Orange Lake. This occurs once TET is retained based on false and misleading advertising, and after TET's clients are instructed to breach their valid and enforceable agreements with their timeshare company.

82.     SGB Law sends demand letters to Orange Lake on an entirely non-legal basis regarding Orange Lake Owners who have also never met any of the lawyers at SGB Law.  SGB Law's letters to Orange Lake simply state, *inter alia*, that TET's clients "are interested in terminating their time share[sic] memberships," and forbid any communication between Orange Lake and Orange Lake Owners "with the lone exception of forwarding routine billings to the client via mail."  The letters are "one size fits all" correspondence whose purpose is merely to prohibit Orange Lake from communicating with Orange Lake Owners.  These letters, together with any subsequent correspondence, telephone calls, and e-mails, serve to further the interference with the contractual and business relationships between the Orange Lake Owners and Orange Lake as Orange Lake cannot gain access to Orange Lake Owners to resolve any issues related to their

timeshares.  As a result, Orange Lake is forced to, *inter alia*, expend considerable money to foreclose on the Orange Lake Owners' timeshare interest.

83.    Upon information and belief, TET pays SGB Law for their legal services in furtherance of TET's scheme – as designed and executed by Reed, Hein and Parenteau – pursuant to master fee agreements by which SGB Law is paid a portion of the TET upfront fee and promised a volume of hundreds of files every month.

84.    SGB Law's actions in concert with, and in furtherance of Reed, Hein and Parenteau's scheme through TET results in significant damages to Orange Lake for SGB Law's own pecuniary gain.

      **E.**    **Defendants' Actions Have Damaged Plaintiffs**

85.    To date, Reed, Hein and Parenteau's false, deceptive, and misleading advertising has caused identifiable Orange Lake Owners to retain TET and (1) to stop making payments on their Promissory Notes and Mortgages they signed when they purchased their timeshare interests, and (2) to stop paying maintenance and other fees they contractually committed to pay.  Indeed, Reed, Hein and Parenteau use TET to intentionally and unjustifiably interfere with Plaintiffs' contractual and advantageous business relationships with the Orange Lake Owners by luring them with false, deceptive, and misleading advertising and advising them to breach their contractual relationships without any valid grounds, in exchange for a fee and the false assurance that there will be no harm to their credit scores and that they will be "exited" from their timeshare "Safely. Legitimately.  Forever."  Plaintiffs are damaged by Reed, Hein and Parenteau's conduct because TET's entire business model is premised on drawing customers away from

Plaintiffs, disparaging Plaintiffs' brand, and making false statements about Plaintiffs.  But for Reed, Hein and Parenteau's scheme through TET, Orange Lake would not suffer such damages.

86.     Sussman Law and SGB Law further Reed, Hein and Parenteau's scheme through TET to damage Orange Lake by sending demand letters rife with false or non-existent legal grounds for termination and by forbidding Orange Lake to communicate with the Orange Lake Owners, causing Orange Lake to, *inter alia*, lose payments due to them from Orange Lake Owners and foreclose on Orange Lake Owners' timeshare interests as necessary.  Defendants engaged in this arrangement together for their collective pecuniary gain.

87.     Orange Lake has not engaged in any behavior which would justify the cancellation of any of the contractual obligations by Orange Lake Owners.

88.     All conditions precedent to the filing of this action have been satisfied, waived, or have occurred.

89.     Plaintiffs have retained the law firm of Greenspoon Marder LLP to represent them in this action and are obligated to pay Greenspoon Marder LLP reasonable attorneys' fees and costs.

### <u>COUNT I: TORTIOUS INTERFERENCE WITH EXISTING CONTRACTS</u><br>(Against Defendants TET, Reed, Hein and Parenteau)

90.     Plaintiffs reallege and reincorporate the allegations contained in paragraphs 1 through 89 above as if more fully set forth herein.

91.     This is a cause of action for tortious interference with existing contracts and for damages in excess of $75,000.00, exclusive of interest, attorney's fees and costs, and is within this Court's jurisdiction.

92.     Plaintiffs hold valid and legally enforceable contracts with Orange Lake Owners for their timeshare units.

93.     TET, Reed, Hein and Parenteau (the "TET Defendants") have knowledge of those relationships.  The very fact that the Orange Lake Owners have contracts with Plaintiffs is the basis under which the TET Defendants sought to establish a relationship with the Orange Lake Owners.

94.     The TET Defendants sought to capitalize on Plaintiffs' contractual relationships with the Orange Lake Owners by soliciting the Orange Lake Owners through TET's false and misleading advertising, inducing them to pay large upfront fees to TET, and inducing them to stop making payments to Plaintiffs notwithstanding the Orange Lake Owners' legally enforceable contracts with Plaintiffs.  The TET Defendants do this to divert money contractually owed to Orange Lake to TET instead.

95.     The TET Defendants' false and misleading advertising used to induce Orange Lake Owners to breach their contractual relationships with Orange Lake include deceptive website advertisements and celebrity endorsements.  The TET Defendants further induce Orange Lake Owners to stop making their payments to Orange Lake with the false promise of achieving a favorable timeshare exit.

96.     The TET Defendants' willful actions to induce parties with whom Plaintiffs have valid contractual agreements to breach their agreements constitute intentional interference with existing contracts.

97.     The TET Defendants have intentionally, and without justification or privilege, interfered with Plaintiffs' existing contracts by inducing Orange Lake Owners to immediately stop making any further payments under their contracts without any legal basis.

98.     The TET Defendants' actions were not made in good faith, but rather were made with purely selfish and mercenary reasons so as to collect and retain the large pre-paid retainer fee without actually providing any meaningful services to the Orange Lake Owners and were with the knowledge and purpose to injure Plaintiffs or with reckless disregard for the attendant consequences naturally, directly, and proximately resulting from the TET Defendants actions and without reasonable grounds for the TET Defendants to believe that their actions were justified and proper.

99.     As a direct and proximate result of the TET Defendants' intentional misconduct, Orange Lake Owners have terminated, or have sought to terminate, their contractual relationship with Plaintiffs before the expiration of the terms of those contracts.

100.    The TET Defendants did not have any justification or privilege in procuring the breach of such contracts.

101.    As a direct and proximate result of the foregoing, Plaintiffs suffered damages.

102.    An injunction is a viable form of relief in a suit for tortious interference.

a)    As parties to legitimate and enforceable agreements with Orange Lake Owners, Plaintiffs have a clear legal right or interest in such contracts with Orange Lake Owners.

b)    As set forth in part above, the TET Defendants have procured unwarranted and unjustified contract breaches, so Plaintiffs have a substantial likelihood of success on merits.

c)    The TET Defendants continue to solicit timeshare owners, such as Orange Lake Owners, through the described misleading and deceptively false marketing, which shows a strong likelihood that Plaintiffs will continue to suffer irreparable harm on an ongoing basis because any remedy at law for the TET Defendants' perpetuation of the deceptive, fraudulent, and unfair marketing practices is inadequate.

d)    An injunction serves the public interest because, *inter alia*, an injunction would serve to protect timeshare owners as consumers and the fair and legitimate operation of the timeshare industry.

103.    As a proximate result of the TET Defendants' unlawful conduct, Plaintiffs are being irreparably harmed and are entitled to have TET's conduct enjoined and restrained.  Alternatively, Plaintiffs are entitled to damages for interference with contracts and business relationships.

WHEREFORE, Plaintiffs ORANGE LAKE COUNTRY CLUB, INC., and WILSON RESORT FINANCE, L.L.C., respectfully request that this Court:

A.      Enter judgment after trial for a permanent injunction in favor of Plaintiffs and against Defendant REED HEIN & ASSOCIATES, LLC d/b/a TIMESHARE EXIT TEAM, BRANDON REED, TREVOR HEIN, and THOMAS PARENTEAU and their officers, agents, servants, employees, and attorneys and on those persons in active concert or participation with them who receive actual notice of the injunction enjoining them from:

    1)  Engaging in false and misleading advertising; and

    2)  Engaging in deceptive or unfair trade practices.

B.      Enter judgment for damages and lost profits (a natural consequence of the TET Defendants' wrongs) and punitive damages;

D.      Enter judgment in favor of Plaintiffs and against the TET Defendants for costs of suit incurred in this action; and

E.      Award Plaintiffs such other and further relief as the Court may deem proper.

### COUNT II: TORTIOUS INTERFERENCE
### WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS
#### (Against Defendants TET, Reed, Hein and Parenteau)

104.    Plaintiffs reallege and reincorporate the allegations contained in paragraphs 1 through 89 above as if more fully set forth herein.

105.    This is a cause of action for tortious interference with advantageous business relationships and for damages in excess of $75,000.00, exclusive of interest, attorney's fees and costs, and is within this Court's jurisdiction.

106.    Plaintiffs not only have advantageous business relationships with the Orange Lake Owners pursuant to their contracts, but Plaintiffs also have real and legitimate business relationships with the Orange Lake Owners for future business. Orange Lake Owners with existing contracts with Plaintiffs have equity interests which may be used as credits towards the purchase of an upgraded timeshare interest. Examples of these upgrades include a larger unit, a more premium season, or a change of resort location, all of which are advantageous business relationships. Many of the Orange Lake Owners take advantage of these equity interests to upgrade their timeshare interests.

107.    TET, Reed, Hein, and Parenteau (the "TET Defendants") have knowledge of those relationships. The very fact that Plaintiffs' owners have a business relationship is the basis under which the TET Defendants sought to establish a relationship with the Orange Lake Owners.

108.    The TET Defendants sought to capitalize on Plaintiffs' business relationships with the Orange Lake Owners by soliciting Orange Lake Owners through deceptive and misleading advertising, inducing them to pay large upfront fees to TET, and inducing them to stop making payments to Plaintiffs pursuant to legally enforceable contracts thereby terminating any current and future advantageous business relationships Plaintiffs have with the Orange Lake Owners.

109.    The TET Defendants' false and misleading advertising used to induce Orange Lake Owners to breach their contractual relationships with Orange Lake thereby terminating any current and future advantageous business relationships Plaintiffs include deceptive website advertisements and celebrity endorsements. The TET Defendants

further induce Orange Lake Owners to stop making their payments to Orange Lake with the false promise of achieving a favorable timeshare exit.

110.    As stated above, the TET Defendants have intentionally and without justification interfered with Plaintiffs' relationships by convincing Orange Lake Owners to immediately stop making any further payments under their contracts without any legal basis, thereby terminating any current and future advantageous business relationships Plaintiffs have with the Orange Lake Owners.

111.    The TET Defendants' actions were not made in good faith, but were made for purely selfish and mercenary reasons so as to collect and retain the large pre-paid retainer fees without actually providing any meaningful services to the Orange Lake Owners and were made with the knowledge and purpose to injure Plaintiffs or with reckless disregard for the attendant consequences naturally, directly, and proximately resulting from the TET Defendants' actions and without reasonable grounds for the TET Defendants to believe that their actions were justified and proper.

112.    As a direct and proximate result of the TET Defendants' intentional misconduct, the Orange Lake Owners have terminated, or have sought to terminate, their contractual relationship with Plaintiffs and any advantageous business relationships with Plaintiffs and foreclosed on any future advantageous business relationships.

113.    The TET Defendants did not have any justification or privilege in procuring the breach of such business relationships.

114.    As a direct and proximate result of the foregoing, Plaintiffs suffered damages.

115.    An injunction is a viable form of relief in a suit for tortious interference.

a)      As parties to legitimate and enforceable agreements with Orange Lake Owners, Plaintiffs have a clear legal right or interest in their business relationships with Orange Lake Owners.

b)      The TET Defendants have procured unwarranted and unjustified contract breaches in contravention of the business relationships between Plaintiffs and the Orange Lake Owners, so Plaintiffs have a substantial likelihood of success on merits.

c)      The TET Defendants continues to solicit timeshare owners, such as Orange Lake Owners, through misleading and deceptively false marketing, which shows a strong likelihood that Plaintiffs will suffer irreparable harm on an ongoing basis because any remedy at law for the TET Defendants' perpetuation of the deceptive, fraudulent, and unfair marketing practices is inadequate.

d)      An injunction serves the public interest because, *inter alia*, an injunction would serve to protect timeshare owners as consumers and the fair and legitimate operation of the timeshare industry.

116.    As a proximate result of the TET Defendants' unlawful conduct, Plaintiffs are being irreparably harmed and are entitled to have the TET Defendants' conduct enjoined and restrained. Alternatively, Plaintiffs are entitled to damages for interference with contracts and business relationships.

WHEREFORE, Plaintiffs ORANGE LAKE COUNTRY CLUB, INC., and WILSON RESORT FINANCE, L.L.C., respectfully request that this Court:

A.      Enter judgment after trial for a permanent injunction in favor of Plaintiffs and Defendants REED HEIN & ASSOCIATES, LLC d/b/a TIMESHARE EXIT TEAM, BRANDON REED, TREVOR HEIN, and THOMAS PARENTEAU and their officers, agents, servants, employees, and attorneys and on those persons in active concert or participation with them who receive actual notice of the injunction enjoining them from:

      1)  Engaging in false and misleading advertising; and

      2)  Engaging in deceptive or unfair trade practices.

B.      Enter judgment for damages and lost profits (a natural consequence of the TET Defendants' wrongs) and punitive damages;

D.      Enter judgment in favor of Plaintiffs and against the TET Defendants for costs of suit incurred in this action; and

E.      Award Plaintiffs such other and further relief as the Court may deem proper.

## COUNT III: CIVIL CONSPIRACY
### (Against Defendants TET and Sussman Law)

117.    Plaintiffs reallege and reincorporate the allegations contained in paragraphs 1 through 89 above as if more fully set forth herein.

118.    This is a cause of action for civil conspiracy to commit tortious interference with existing contracts and tortious interference with advantageous business relationships and for damages in excess of $75,000.00, exclusive of interest, attorney's fees and costs, and is within this Court's jurisdiction.

119.    TET and Sussman Law are parties to a civil conspiracy as they conspired to commit an unlawful act by interfering with Plaintiffs' existing contracts and advantageous business relationships.

120.    TET and Sussman Law each performed one or more overt actions in furtherance of their conspiracy, including without limitation:

a)    TET uses misleading advertising to lure Orange Lake Owners to obtain TET's services;

b)    TET encourages Orange Lake Owners to breach their contracts with Orange Lake even though they have no legal basis to do so;

c)    TET does this in order to convince the Orange Lake Owners to pay TET instead of Orange Lake (*see e.g.,* chart referenced in paragraph 69 above);

d)    At TET's direction and pursuant to their master fee agreement, Sussman Law sends demand letters stating false legal bases upon which Orange Lake Owners can purportedly cancel their Purchase Agreements in furtherance of TET's interference between Orange Lake Owners and Orange Lake, and, upon information and belief, TET pays fees to Sussman Law for this.

121.    As a direct and proximate result of TET and Sussman Law's civil conspiracy, the Orange Lake Owners have terminated, or have sought to terminate, their contractual relationship with Plaintiffs before the expiration of the terms of those contracts.

122.    TET and Sussman Law did not have any justification or privilege in procuring the breach of such business relationships.

123.    As a direct and proximate result of the foregoing, Plaintiffs suffered damages.

124.    An injunction is a viable form of relief for a cause of action for civil conspiracy to commit tortious interference with existing contracts and to commit tortious interference with advantageous business relationships.

a)      TET and Sussman Law's actions, as outlined above, constitute a civil conspiracy to commit tortious interference with existing contracts and to commit tortious interference with advantageous business relationships.

b)      TET and Sussman Law have procured unwarranted and unjustified contract breaches due to their civil conspiracy to commit tortious interference with existing contracts and to commit tortious interference with advantageous business relationships, so Plaintiffs have a substantial likelihood of success on merits.

c)      TET and Sussman Law continue to solicit timeshare owners, such as Orange Lake Owners, through their civil conspiracy to commit tortious interference with existing contracts and to commit tortious interference with advantageous business relationships, which shows a strong likelihood that Plaintiffs will suffer irreparable harm on an ongoing basis because any remedy at law for TET and Sussman Law's perpetuation of their civil conspiracy to commit tortious interference with existing contracts and to commit tortious interference with advantageous business relationships is inadequate.

e)       An injunction serves the public interest because, *inter alia*, an injunction would serve to protect timeshare owners as consumers and the fair and legitimate operation of the timeshare industry.

125.    As a proximate result of TET and Sussman Law's unlawful conduct, Plaintiffs are being irreparably harmed and are entitled to have TET and Sussman Law's conduct enjoined and restrained.

WHEREFORE, Plaintiffs ORANGE LAKE COUNTRY CLUB, INC., and WILSON RESORT FINANCE, L.L.C., respectfully request that this Court:

A.       Enter judgment after trial for a permanent injunction in favor of Plaintiffs and against Defendants REED HEIN & ASSOCIATES, LLC d/b/a TIMESHARE EXIT TEAM, and MITCHELL REED SUSSMAN d/b/a MITCHELL REED SUSSMAN & ASSOCIATES, and their officers, agents, servants, employees, and attorneys and on those persons in active concert or participation with them who receive actual notice of the injunction enjoining them from:

1) Engaging in false and misleading advertising; and

2) Engaging in deceptive, misleading, and unfair trade practices.

B.       Enter judgment for damages and lost profits (a natural consequence of TET and Sussman Law's wrongs) and punitive damages;

C.       Enter judgment in favor of Plaintiffs and against TET and Sussman Law for costs of suit incurred in this action; and

E.       Award Plaintiffs such other and further relief as the Court may deem proper.

## COUNT IV: CIVIL CONSPIRACY
### (Against Defendants TET and SGB Law)

126.   Plaintiffs reallege and reincorporate the allegations contained in paragraphs 1 through 89 above as if more fully set forth herein.

127.   This is a cause of action for civil conspiracy to commit tortious interference with existing contracts and tortious interference with advantageous business relationships and for damages in excess of $75,000.00, exclusive of interest, attorney's fees and costs, and is within this Court's jurisdiction.

128.   TET and SGB Law are parties to a civil conspiracy as they conspired to commit an unlawful act by interfering with Plaintiffs' existing contracts and advantageous business relationships.

129.   TET and SGB Law each performed one or more overt actions in furtherance of their conspiracy, including without limitation:

    a)    TET uses misleading advertising to lure Orange Lake Owners to obtain TET's services;

    b)    TET encourages Orange Lake Owners to breach their contracts with Orange Lake even though they have no legal basis to do so;

    c)    At TET's direction and pursuant to their master fee agreement, SGB Law sends demand letters stating non-legal bases upon which Orange Lake Owners can purportedly cancel their Purchase Agreements in furtherance of TET's interference between the Orange Lake Owners and Orange Lake, and, upon information and belief, TET pays fees to SGB Law for this.

130.    As a direct and proximate result of TET and SGB Law's civil conspiracy, the Orange Lake Owners have terminated, or have sought to terminate, their contractual relationship with Plaintiffs before the expiration of the terms of those contracts.

131.    TET and SGB Law did not have any justification or privilege in procuring the breach of such business relationships.

132.    As a direct and proximate result of the foregoing, Plaintiffs suffered damages.

133.    An injunction is a viable form of relief for a cause of action for civil conspiracy to commit tortious interference with existing contracts and to commit tortious interference with advantageous business relationships.

a)     TET and SGB Law's actions, as outlined above, constitute a civil conspiracy to commit tortious interference with existing contracts and to commit tortious interference with advantageous business relationships.

b)     TET and SGB Law have procured unwarranted and unjustified contract breaches due to their civil conspiracy to commit tortious interference with existing contracts and to commit tortious interference with advantageous business relationships, so Plaintiffs have a substantial likelihood of success on merits.

c)     TET and SGB Law continue to solicit timeshare owners, such as Orange Lake Owners, through their civil conspiracy to commit tortious interference with existing contracts and to commit tortious interference with advantageous business relationships, which shows a strong likelihood that Plaintiffs will suffer irreparable harm on an ongoing basis because any remedy at law for TET and SGB Law's perpetuation of

their civil conspiracy to commit tortious interference with existing contracts and to commit tortious interference with advantageous business relationships is inadequate.

       d)     An injunction serves the public interest because, *inter alia*, an injunction would serve to protect timeshare owners as consumers and the fair and legitimate operation of the timeshare industry.

134.    As a proximate result of TET and SGB Law's unlawful conduct, Plaintiffs are being irreparably harmed and are entitled to have TET and SGB Law's conduct enjoined and restrained.

WHEREFORE, Plaintiffs ORANGE LAKE COUNTRY CLUB, INC., and WILSON RESORT FINANCE, L.L.C., respectfully request that this Court:

A.    Enter judgment after trial for a permanent injunction in favor of Plaintiffs and against Defendants REED HEIN & ASSOCIATES, LLC d/b/a TIMESHARE EXIT TEAM; and SCHROETER GOLDMARK & BENDER, P.S., and their officers, agents, servants, employees, and attorneys and on those persons in active concert or participation with them who receive actual notice of the injunction enjoining them from:

    1)  Engaging in false and misleading advertising; and

    2)  Engaging in deceptive, misleading, and unfair trade practices.

B.    Enter judgment for damages and lost profits (a natural consequence of TET and SGB Law's wrongs) and punitive damages;

C.    Enter judgment in favor of Plaintiffs and against TET and SGB Law for costs of suit incurred in this action; and

E.      Award Plaintiffs such other and further relief as the Court may deem proper.

## COUNT V: VIOLATION OF FLORIDA'S DECEPTIVE
## AND UNFAIRTRADE PRACTICES ACT, FLA. STAT. § 501.201, *et seq.*
### (Against Defendants TET, Reed, Hein, and Parenteau)

135.    Plaintiffs reallege and reincorporate the allegations contained in paragraphs 1 through 89 above as if more fully set forth herein.

136.    This is a cause of action for violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* ("FDUTPA"), against TET, Reed, Hein, and Parenteau (the "TET Defendants"), including unconscionable acts and practices and unfair and deceptive practices in the conduct of trade or commerce.

137.    The TET Defendants are engaged in "trade or commerce" as defined by Fla. Stat. §501.203(8).

138.    Plaintiffs are "interested part[ies] or person[s]" as defined by Section 501.203(6), Florida Statutes.

139.    The TET Defendants have engaged in the following unconscionable, unfair, and deceptive acts or practices by:

    a)      soliciting Orange Lake Owners through false and misleading advertising which deceives Orange Lake Owners into believing that they may cancel their timeshare interest without any legal basis or reason whatsoever;

    b)      fraudulently inducing Orange Lake Owners into retaining TET based on TET's advertised "100% guarantees" of "exiting"

44

timeshares when the TET Defendants cannot actually fulfill the guarantee without detriment to the Orange Lake Owner;

c) misrepresenting that they will "interface" between the Orange Lake Owners and law firms such as Sussman Law and SGB Law without providing the Orange Lake Owners details about the attorneys or actually facilitating contact between them, and when the Orange Lake Owners often never communicate with Sussman Law and SGB Law; and

d) instructing Sussman Law and SGB Law to transmit demand letters to Orange Lake attempting to terminate the Orange Lake Owners' contracts on non-existent legal bases or on bases of "claims of fraud and misrepresentation arising from [Orange Lake's] time-share presentation and sale," when none of the identifiable Orange Lake Owners retained TET for those reasons.

140. Plaintiffs have a clear legal right or interest in being free from the TET Defendants' deceptive or unfair advertising, as the false statements and representations set forth above have demonstrated specific past and present grievances, and will result in future grievances, and will result in future grievances if the TET Defendants are not enjoined.

141. The TET Defendants continue to engage in such false and deceptive marketing campaigns and fraudulent representations for the purpose of soliciting the Orange Lake Owners and inducing them to pay large upfront retainer fees with the false

representation that the Orange Lake Owners may unilaterally terminate their obligations with Plaintiffs without any valid legal basis, and therefore, there is a strong likelihood that Plaintiffs will suffer irreparable harm on an ongoing basis and any remedy at law for the TET Defendants' perpetuation of the deceptive, fraudulent, and unfair marketing practices, is inadequate.

142.    Pursuant to Fla. Stat. §§ 501.211(2) and 501.2105, Plaintiffs are entitled to damages, attorney's fees, and costs.

143.    Pursuant to Fla. Stat. § 501.211(1), declaratory and injunctive relief are viable forms of relief for violation of FDUTPA.

    a)    The TET Defendants' actions, as outlined above, constitute deceptive, misleading, and unfair practices in violation of FDUTPA.

    b)    The TET Defendants have procured unwarranted and unjustified contract breaches due to The TET Defendants' deceptive, misleading, and unfair practices in violation of FDUTPA, so Plaintiffs have a substantial likelihood of success on merits.

    c)    The TET Defendants continue to solicit timeshare owners, such as Orange Lake Owners, through the TET Defendants' deceptive, misleading, and unfair practices in violation of FDUTPA, which shows a strong likelihood that Plaintiffs will suffer irreparable harm on an ongoing basis because any remedy at law for the TET Defendants' perpetuation of their deceptive, misleading, and unfair practices in violation of FDUTPA is inadequate.

d)　　An injunction serves the public interest because, *inter alia*, an injunction would serve to protect timeshare owners as consumers and the fair and legitimate operation of the timeshare industry.

144.　As a proximate result of the TET Defendants' unlawful conduct, Plaintiffs are being irreparably harmed and are entitled to have the TET Defendants' conduct enjoined and restrained.

WHEREFORE, Plaintiffs ORANGE LAKE COUNTRY CLUB, INC., and WILSON RESORT FINANCE, L.L.C., respectfully request that this Court:

A.　　Enter judgment after trial for a permanent injunction in favor of Plaintiffs and against Defendants REED HEIN & ASSOCIATES, LLC d/b/a TIMESHARE EXIT TEAM, BRANDON REED, TREVOR HEIN, and THOMAS PARENTEAU and their officers, agents, servants, employees, and attorneys and on those persons in active concert or participation with them who receive actual notice of the injunction enjoining them from:

1)　Engaging in false and misleading advertising; and

2)　Engaging in deceptive, misleading, and unfair trade practices.

B.　　Enter judgment for actual damages;

D.　　Enter judgment in favor of Plaintiffs and against the TET Defendants for costs of suit incurred in this action; and

E.　　Award Plaintiffs such other and further relief as the Court may deem proper.

47

## COUNT VI: MISLEADING ADVERTISING, FLA. STAT. § 817.41
### (Against Defendants TET, Reed, Hein, and Parenteau)

145.    Plaintiffs reallege and reincorporate the allegations contained in paragraphs 1 through 89 above as if more fully set forth herein.

146.    This is a cause of action for misleading advertising pursuant to Fla. Stat. § 817.41 and for damages in excess of $75,000.00, exclusive of interest, attorney's fees and costs, and is within this Court's jurisdiction.

147.    Defendants TET, Reed, Hein, and Parenteau (the "TET Defendants") misleadingly advertise on the Internet and radio, on their website and through celebrity endorsements, that timeshare owners will be relieved of their timeshare obligations if TET is retained.

148.    As outlined above, the TET Defendants manage and control the operations of TET, and therefore direct the marketing and advertising decisions of TET. Accordingly, the TET Defendants are in direct competition with Plaintiffs for the payments Orange Lake Owners owe to Plaintiffs.  The TET Defendants specifically seek out Orange Lake Owners to make payments to TET instead of to Plaintiffs.

149.    The TET Defendants' advertising statements on their website and in the endorsements they obtain are misrepresentations of material fact that they know or should know are false.

150.    The TET Defendants intend for others to rely upon their statements for the purpose of selling their "timeshare exit" services and to induce others to retain TET for those services.

151.    The TET Defendants' statements are made in bad faith and with malice or reckless indifference to Plaintiffs' and consumers' interests, who, as a direct and proximate result of the foregoing, have been damaged.

152.    An injunction is a viable form of relief for violation of Fla. Stat. § 817.41.

a)      The TET Defendants' actions, as outlined above, constitute misleading advertisement in violation of Fla. Stat. § 817.41.

b)      The TET Defendants have procured unwarranted and unjustified contract breaches due to their misleading advertisement in violation of Fla. Stat. § 817.41, so Plaintiffs have a substantial likelihood of success on merits.

c)      The TET Defendants continue to solicit timeshare owners, such as Orange Lake Owners, through their misleading advertising, which shows a strong likelihood that Plaintiffs will suffer irreparable harm on an ongoing basis because any remedy at law for The TET Defendants' perpetuation of their misleading advertisement is inadequate.

d)      An injunction serves the public interest because, *inter alia*, an injunction would serve to protect timeshare owners as consumers and the fair and legitimate operation of the timeshare industry.

153.    As a proximate result of the TET Defendants' unlawful conduct, Plaintiffs are being irreparably harmed and are entitled to have the TET Defendants' conduct enjoined and restrained.

WHEREFORE, Plaintiffs ORANGE LAKE COUNTRY CLUB, INC., and WILSON RESORT FINANCE, L.L.C., respectfully request that this Court:

A.      Enter judgment after trial for a permanent injunction in favor of Plaintiffs and against Defendants REED HEIN & ASSOCIATES, LLC d/b/a TIMESHARE EXIT TEAM, BRANDON REED, TREVOR HEIN, and THOMAS PARENTEAU and their officers, agents, servants, employees, and attorneys and on those persons in active concert or participation with them who receive actual notice of the injunction enjoining them from:

> 1)  Engaging in false and misleading advertising; and
>
> 2)  Engaging in deceptive, misleading, and unfair trade practices.

B.      Enter an Order that the TET Defendants be required to take down and destroy all false, misleading, and deceptive material found on TET's website and found in any marketing material or documentation that the TET Defendants produce or are using;

C.      Enter an Order that the TET Defendants be directed to file with this Court and serve on Plaintiffs within fifteen days after the service of an injunction, a report, in writing under oath, setting forth in detail the manner and form in which the TET Defendants have complied with the injunction;

D.      Enter an Order requiring the TET Defendants to provide notice of the injunction by posting the Order on TET's website;

E.      Enter judgment for damages and lost profits (a natural consequence of the TET Defendants' wrongs) and punitive damages;

F.      Enter judgment in favor of Plaintiffs and against the TET Defendants for costs of suit, expenses, and attorneys' fees incurred in this action; and

E.      Award Plaintiffs such other and further relief as the Court may deem proper.

### COUNT VII: FALSE ADVERTISING
### UNDER THE LANHAM ACT, 15 U.S.C. § 1125(a)
**(Against Defendants TET, Reed, Hein, and Parenteau)**

154.    Plaintiffs reallege and reincorporate the allegations contained in paragraphs 1 through 89 above as if more fully set forth herein.

155.    This is a cause of action for false advertising under the Lanham Act, 15 U.S.C. § 1125(a), and is within this Court's jurisdiction.

156.    Plaintiffs are engaged in commerce within the control of Congress because they have a cognizable commercial interest in reputation or sales and fall within the zone of interest protected by 15 U.S.C. § 1125(a).

157.    As outlined above, TET, Reed, Hein, and Parenteau (the "TET Defendants") have made material false or misleading statements in interstate commerce in connection with commercial advertising or solicitation.

158.    The TET Defendants' statements, outlined in part above, are not only literally false, but also are misleading when considered in their full context.

159.    The TET Defendants substantially injured Plaintiffs' business reputation by leading consumers and others in the trade to believe their false statements of fact about its services and by falsely stating, *inter alia*, that Plaintiffs are engaged in unlawful or illegal conduct.

160.    The TET Defendants' advertised "timeshare exit" services travel in interstate commerce.

161.    The TET Defendants misleadingly advertise on the Internet and radio, on their website and through celebrity endorsements that they guarantee to relieve timeshare owners of their timeshare obligations if TET is retained.

162.    As outlined above, the TET Defendants manage and control the operations of TET, and therefore direct the marketing and advertising decisions of TET. Accordingly, the TET Defendants are in direct competition with Plaintiffs for the payments Orange Lake Owners owe to Plaintiffs.  The TET Defendants specifically seek out Orange Lake Owners to make payments to TET instead of to Plaintiffs.

163.    The TET Defendants' statements that they guarantee to relieve timeshare owners of their timeshare obligations if TET is retained are false or misleading or made in bad faith.

164.    The TET Defendants deceived, or had the capacity to deceive, consumers, thereby having a material effect on consumer purchasing decisions and resulting in damages to Plaintiffs.

165.    Plaintiffs suffered an injury to commercial and reputational interests based on The TET Defendants' misrepresentation, and false and deceptive statements about Plaintiffs, their brand and products.

166.    An injunction is a viable form of relief for violation of the Lanham Act.

a)    The TET Defendants' actions, as outlined above, constitute false advertising in violation of 15 U.S.C. § 1125(a).

b)      The TET Defendants have procured unwarranted and unjustified contract breaches due to their false advertising in violation of 15 U.S.C. § 1125(a), so Plaintiffs have a substantial likelihood of success on merits.

c)      The TET Defendants continue to solicit timeshare owners, such as Orange Lake Owners, through their false advertising, which shows a strong likelihood that Plaintiffs will suffer irreparable harm on an ongoing basis because any remedy at law for the TET Defendants' perpetuation of their false advertising is inadequate.

d)      An injunction serves the public interest because, *inter alia*, an injunction would serve to protect timeshare owners as consumers and the fair and legitimate operation of the timeshare industry.

167.    As a proximate result of the TET Defendants' unlawful conduct, Plaintiffs are being irreparably harmed and are entitled to have the TET Defendants' conduct enjoined and restrained.

WHEREFORE, Plaintiffs ORANGE LAKE COUNTRY CLUB, INC., and WILSON RESORT FINANCE, L.L.C., respectfully request that this Court:

A.      Enter judgment after trial for a permanent injunction in favor of Plaintiffs and against Defendants REED HEIN & ASSOCIATES, LLC d/b/a TIMESHARE EXIT TEAM, BRANDON REED, TREVOR HEIN, and THOMAS PARENTEAU and their officers, agents, servants, employees, and attorneys and on those persons in active concert or participation with them who receive actual notice of the injunction enjoining them from:

1)  Engaging in false advertising; and

2)  Engaging in deceptive, misleading, and unfair trade practices.

B.      Enter an Order that the TET Defendants be required to take down and destroy all false, misleading, and deceptive material found on TET's website and found in any marketing material or documentation that the TET Defendants produce or are using;

C.      Enter an Order that the TET Defendants be directed to file with this Court and serve on Plaintiffs within fifteen days after the service of an injunction, a report, in writing under oath, setting forth in detail the manner and form in which the TET Defendants have complied with the injunction;

D.      Enter an Order requiring the TET Defendants to provide notice of the injunction by posting the Order on TET's website;

E.      Enter judgment for damages and lost profits (a natural consequence of the TET Defendants' wrongs);

F.      Enter judgment in favor of Plaintiffs and against the TET Defendants for costs of suit, expenses, and attorneys' fees pursuant to 15 U.S.C. § 1117; and

G.      Award Plaintiffs such other and further relief as the Court may deem proper.

DATED this  28 day of  June , 2018.

Respectfully submitted,

By:   /s/ Jeffrey A. Backman
        RICHARD W. EPSTEIN
        (Trial Counsel)
        Florida Bar No. 229091
        JEFFREY A. BACKMAN
        Florida Bar No. 662501

GREENSPOON MARDER LAW
201 East Pine St, Suite 500
Orlando, Florida 32801
Telephone:      (407) 425-6559
Facsimile:      (407) 209-3152
Richard.Epstein@gmlaw.com
Maria.Salgado@gmlaw.com
Jeffrey.Backman@gmlaw.com
Khia.Joseph@gmlaw.com
Cheryl.Cochran@gmlaw.com