**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT FLORIDA**
**ORLANDO DIVISION**

ORANGE LAKE COUNTRY CLUB, INC.,    CASE NO.: 17-cv-01542-RBD-KRS
a Florida corporation, and  WILSON
RESORT FINANCE, L.L.C., a Florida
limited liability company,

             Plaintiffs,         **DISPOSITIVE MOTION**

vs.

REED HEIN & ASSOCIATES, LLC d/b/a
TIMESHARE EXIT TEAM; THE LAW
OFFICES OF MITCHELL REED
SUSSMAN & ASSOCIATES; and
SCHROETER GOLDMARK & BENDER,
P.S.,

             Defendants.

_____/

**MOTION FOR SUMMARY JUDGMENT**
**MEMORANDUM OF LAW IN SUPPORT THEREON**

      Defendant, Mitchell Reed Sussman dba Mitchell Reed Sussman &

Associates ("Sussman"), by and through his undersigned counsel, respectfully

submits Motion for Summary Judgment, pursuant to F.R.Civ.P. and submits the

following in support thereon.

**I.**      **INTRODUCTION**

        The parties to this action are participants in what is now a series of legal

actions before this court concerning the multi-billion dollar "timeshare" industry.

Like many other providers of timeshares Orange Lake Country Club, Inc.. ("Orange Lake") and its financing arm Wilson Resort Finance, LLC   ( "Wilson" ), have gone on the offensive against law firms and others who allegedly  induce timeshare owners to breach their contracts with the timeshare companies.

Orange Lake is a Florida corporation which owns and operates timeshare developments throughout the United States. Its financing arm and co-plaintiff, Wilson, is a Delaware limited liability company.

The principal defendant in this action is Reed Hein & Associates, LLC d/b/a Timeshare Exit Team ("TET"), a company specializing in obtaining relief for timeshare owners dissatisfied and aggrieved by their timeshares.

Plaintiffs' Second Amended Complaint ("SAC") consists of five counts: (1) Interference with contract, against TET and its principals;  (2) Interference with prospective advantage against TET and its principals, (3) Civil Conspiracy, against TET and Sussman; (4) Civil Conspiracy, against TET and SGB;  and (5) violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUPTA") against TET and its principals.

Defendant and moving party, Mitchell Reed Sussman, is a California attorney who was hired by TET as an outside contractor to write  " boilerplate demand letters to the . . timeshare companies"  including Orange Lake "without ever speaking with an owner." (Second Amended Complaint, paragraph 77; Uncontroverted Facts 1, 4, 5, 11, 12 )

Other parties to the action are the law firm of Scrooeter Goldmark & Binder, P.S. ("SGB"),  who was also hired by TET to send demand letters to Orange Lake (Second Amended Complaint, paragraph 81, 82 ) and the principals of TET

Brandon Reed, Trevor Hein and Thomas Parenteau.

Important for this motion is the fact that moving party is named *only* in the Third Count.  As such this motion is directed to Third Count: "civil conspiracy to commit tortious interference with existing contracts and tortious interference with advantageous business relationships." ( SAC, paragraph 118 )

As will be seen below, application of the law to the uncontroverted facts, leads to the inescapable legal conclusion that judgment should be entered for defendant on the Third Count.

II.    **STATEMENT OF FACTS**

Timeshares are often thought of as a "bad investment*" ( USA Today, July 26, 2018 ),* sold by timeshare developers like Orange  Lake through the use of high – pressure and predatory sales practices. *( New York Times, January 22, 2016 )*

In the last few years a number of attorneys and so – called timeshare exit companies have come on the scene with the stated mission of relieving their clients of the ongoing financial burdens of timeshare ownership.

The principal defendant in the present case, TET, describes itself as a "consumer protection group" ( SAC, paragraph 3 )  which assists timeshare owners who are dissatisfied with their timeshares for a variety a reasons, including the dozen or so  reasons set forth in the SAC. ( SAC, paragraph 58 )

According to the SAC, TET uses misleading advertising to encourage

Orange Lake Owners to breach their contracts with Orange Lake. The SAC further alleges that TET does this in order to convince Orange Lake owners to pay TET instead of Orange Lake. ( SAC, paragraph 120 (a),(b),(c))

The SAC is devoid of any such allegations against attorney Sussman.

Not only are no claims made in the SAC that Sussman participated in any of TET's alleged fraudulent advertising, the SAC makes it clear that Sussman played no part in trying to persuade timeshare owners to stop making payments. ( SAC, paragraph 77; Uncontroverted Fact 19 )

In fact, it is an uncontroverted fact, admitted by plaintiff in their SAC, that defendant, Sussman, has <u>no</u> communication whatsoever with any of plaintiff's owners.  ( SAC, paragraph 77; Uncontroverted Fact 18 )

What the SAC states in simple and incontrovertible terms is that *"Sussman Law, without ever speaking with an owner"*  sends boilerplate demands to Orange Lake. (SAC, paragraph 77; Uncontroverted Fact 18 )

According to the SAC,    *" At TET's direction . . . .  Sussman Law sends demand letters . . .  .* upon which Orange Lake Owners can purportedly cancel their Purchase Agreements"  ( SAC, paragraph 120 (d); Uncontroverted Fact 9)

It is this and only this,  the sending of  "demand letters"  by Sussman, an outside counsel hired by TET,  to Orange Lake in an effort to secure the release of timeshare owners from their contracts, which is forms the basis for plaintiffs assertion that Sussman is a co – conspirator. ( SAC, paragraph 120 (d))

III.    **Standard On Motion For Summary Judgement**

A party may move for summary judgment, identifying each claim or defense
— or the part of each claim or defense — on which summary judgment is sought.
The court shall grant summary judgment if the movant shows that there is no
genuine dispute as to any material fact and the movant is entitled to judgment as a
matter of law. ( Federal Rule of Civil Procedure 56  (a))

IV.    **Count II1 – Conspiracy**

**A.  Agreement between two or more parties**

" In Florida, a civil conspiracy requires: (a) an agreement between two or
more parties, (b) to  do an unlawful act or to do a lawful act by unlawful means, (c)
the doing of some over act in pursuance of the" conspiracy, and (d) damage to
plaintiff as a result of the acts done under the conspiracy. *Eagletech Comm. Inc., v.
Bryn Mawr Inv. Grp., Inc. 79 So. 3d 855, 863 (Fla, 4th DCA 2012)*

In the present case, the only contract that has been alleged between Sussman
and TET is a so – called  "master fee agreement"  ( SAC, paragraph 76 ) which in
essence is an attorney client retainer agreement providing for the payment of a fixed
fee to attorney Sussman, for each timeshare file that he consults on. ( See:  Exhibit
A to Sussman Declaration in Support of this Motion )

The attorney client retainer agreement between Sussman and TET is neither
unlawful nor does it require Sussman to perform a lawful act by unlawful means.

Moreover, it is undisputed that Sussman is an outside contractor who has no
agreement to split fees or share profits. Nor is he an employee of TET  and he has

no financial stake in TET. (Uncontroverted  Fact 4, 5, 11, 12, 13,14, 15, 16, 17 )

Additionally he is just one of no less than four (4) attorneys hired by TET to write letters and provide outside legal services to TET and TET's customers. (Uncontroverted  Fact 17 )

For these reason alone this motion should be granted.

### B. Tortious Interference

The Third Count for conspiracy alleges that TET and Sussman formed a civil conspiracy to interfere with existing contracts. ( SAC, paragraph 118 )

For the reasons set forth below, there is no unlawful act upon which to base a conspiracy claim.

### 1.   Acting as an Attorney, Sussman is not a stranger to the contract

An essential element of a claim for tortious interference is that the defendant be a stranger to the contract; parties cannot interfere with their own contracts. *E.g.*, *Cedar Hills Properties Corp. v. Eastern Federal Corp.*, 575 So.2d 673, 676 (Fla. 1st DCA 1991)  ("to maintain an action for tortious interference with contractual rights, a plaintiff must prove that a third party interfered with a contract…;" holding that landlord's leasing agent could not be  liable for interfering with landlord's lease with tenant).

Generally speaking, one cannot tortiously interfere with a contract to which it is a party. *Ethyl Corp. v. Balter*, 386 So.2d 1220, 1224 (Fla. 3d DCA 1980). Consequently, an agent generally cannot be held liable for tortiously interfering with the contract of its principal because the agent is privileged to act in the best interest of the principal. *Sloan v. Sax*, 505 So.2d 526, 528 (Fla. 3d DCA 1987).

While it is true that the privilege afforded to an agent who gives honest advice in his principal's best interest is not available when an agent acts solely with ulterior purposes and contrary to the principal's best interest. *Scussel v. Balter*, 386 So. 2d

1227, 1228-29 (Fla. 3d DCA 1980), there is no evidence that this defendant acted solely with either an ulterior motive or contrary to his principal's best interest.

It is undisputed that at all times mentioned Sussman was acting as the attorney for TET under a "master fee agreement" at the "direction" of his client, TET. ( SAC, paragraph 120 (d); Uncontroverted Fact 4, 5 )

An attorney who takes the "direction" of his client cannot be said to be acting in a manner that is not in the client's best interests or with an ulterior motive.

Moreover, much like an insurance company attorney who represents the aligned interest of both the insurance company and its insured *In re Proposed Addition to the Additional Rules Governing Conduct of Attorneys in Fla. 220 So.2d 6, 8 ( Fla. 1969) ( finding insurance attorneys represent both the insurer and insured  ),* by writing "demand letters"  Sussman  was acting on behalf of those TET customers who wished to be released from their timeshare obligations.

In *Richard Bertram, Inc. v. Sterling Bank & Trust*, 820 So.2d 963, 965 (Fla. 4th DCA 2002) a yacht broker sued an attorney for interference with his commission agreement.  In holding that an attorney cannot be liable for tortuously interfering with his or her client's contract, the court said:

> "It is well settled that an attorney serves as an agent for his or her client. As such, the attorney's acts are the acts of the principal…"
>  . . . . .
> Here, the agreement, if any, to pay a commission was between Sterling and the brokers. Wald was  Sterling's  attorney.  He cannot be liable for interfering with his principal's contract." [Citation omitted]

*Id.*, at 965-66.

In this case, it is undisputed that defendant's "demand letters" were  at the "direction" of  TET and in furtherance of their mission, to relieve their client of the ongoing burdens of timeshare ownership. ( SAC, paragraph 120 (d);

Uncontroverted Fact 4, 5, 9 )

A simple review of the "" form demand letters" sent to Orange Lake reveal an intent consistent with TET mission to return the property back " back to Orange Lake" without Orange Lake  having to "incur the expense of a drawn out foreclosure proceeding.." ( See:  Exhibit B to Sussman Declaration in Support of this Motion )

A client has an absolute right to seek and obtain legal advice in pursuit of his or her interests, and an attorney's professional obligation is to provide it.

Courts have long held that an attorney cannot be liable for tortious interference based upon advice given to a client, even if the advice is to breach a contract:   "professional counsel, being under a duty to advise his clients, is not liable for interference." *Parker v. Gordon*, 442 So.2d 273, 276 (Fla. 4th DCA 1983) (citations omitted)

More importantly, given the uncontroverted fact and the judicial admission made by plaintiffs in the SAC, that attorney Sussman never even spoke to TET's clients, it can hardly be said that moving party advised TET customers to do anything, much less breach their contracts. ( SAC, paragraph 77; Uncontroverted Fact 18, 19 )


2.  **The Noer – Pennington Doctrine**

The Noerr-Pennington doctrine "derives from the First Amendment's guarantee of the right of the people ... to petition the Government for a redress of grievances." Silverhorse Racing, LLC v. Ford Motor Co., 232 F. Supp. 3a'1206, 1211 (M.D. Fla. 2017) (citing U.S. Const. amend. I.).

Although the doctrine originally arose out of an antitrust context, courts have extended it "to protect First Amendment 'petitioning of the government from claims brought under federal and state laws including . . . common-law

*tortious interference with contractual relations*."' Silverhorse Racing, 232 F. Supp. 3d at 1211.

"The doctrine extends not only to petitioning of the judicial branch (i.e., filing a lawsuit), but also to acts reasonably attendant to litigation, such as *demand letters*." Id. at 1211 (citing Primetime 24 Joint Venture v. Nat'l Broad. Co., 219 F.3d 92, 99-100 (2d Cir. 2000) (collecting cases)) like the ones plaintiffs complain of.

Under Noerr - Pennington"[i]mmunity is not merely an affirmative defense; instead, *the party seeking to impose liability bears the burden to show that Noerr-Pennington immunity did not attach* to [defendants'] actions."' Hinson, 2014 WL 1118057, at 4-5 (citing McGuire Oil, 958 F.2d at 1558 n.9); see, e.g., Rolex Watch, 2012 WL 4138028, at *3 (dismissing counterclaim with prejudice based on finding that, even when viewing the pleadings in the light most favorable to the counter-plaintiff, the petitioning activity at issue was, at least in part, aimed to protect a trademark, not merely to interfere with the counter- plaintiff's business affairs);

In a case similar to the one now before the court <u>Silverhorse Racing, 232 F. Supp. 3d at 1212</u>  the Noerr-Pennington doctrine immunized the defendant from a tortious interference claim. There the court found that defendant's pre-litigation cease and desist letters to third parties were calculated to elicit a favorable outcome - i.e., the cessation of what the party believed to be trade infringement).

Of similar import is  <u>Marco Island Cable, Inc. v. Comcast Cablevision of S., Inc., No: 2:04-CV-26- FTM-29DNF, 2006 WL 1814333, at *9-10 (M.D. Fla. July 3, 2006)</u>  where the court found that letters sent by defendant threatening to sue to enforce its exclusivity contracts were immunized, even though plaintiff claimed those letters were a "sham" because they contained alleged false representations about the facts in dispute.

### 3.  The Litigation Privilege

In addition to the foregoing, plaintiffs' SAC is also barred, as a matter of law, by Florida's litigation privilege. This privilege provides legal immunity "to statements or actions taken during a judicial proceeding." *Levin, Middlebrooks, Mabie, Thomas, Mayes Mitchell, P.A. v. United States Fire Insurance Co., 639 So. 2d 606 (Fla.1994)*

The absolute immunity of the litigation privilege applies in all causes of action, whether common-law torts or statutory violations, *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole, 950 So. 2d 380, 384 (Fla. 2007).*

Here in Florida, the litigation privilege has been applied to "pre-suit communications," like the "demand letters" sent by moving defendant. *Trent v. Mort g. Blee. Registration Sys., Inc., 618 F. Supp. 2d 1356, 1360 (M.D. Fla. 2007*

On the subject of litigation privilege the Florida Supreme Court in of *Ange v. State, 123 So 916. at 917(Fla 1929),* held that the "privilege . .  arises immediately upon the doing of any act required or permitted by law in the due course of the judicial proceeding or as necessarily preliminary thereto.

### C.        Interference with Advantageous Business Relationships

Under Florida law, the elements of tortious interference with a business relationship are: (1) the existence of a business relationship, even if not evidenced in a formal written agreement; (2) that the defendant knew of the relationship; (3) the defendant intentionally and unjustifiably interfered with the relationship; and (4) damage to the plaintiff as a result of the breach of the relationship. *Ethan Allen, Inc. v. Georgetown Manor*, Inc., 647 So.2d 812, 814 (Fla.1994).

With respect to this portion of the Third Count, all the reasons set forth hereinabove, apply.

In addition, the conspiracy count for tortious interference with advantageous business relationships fails because plaintiffs have not shown a non-speculative "business relationship" that would likely have occurred but for defendant's conduct. This is fatal to any claim for interference with business relationships.

A "business relationship" "requires … an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Ethan Allen, Inc. v. Georgetown Manor, Inc.,* 647 So.2d 812, 815 (Fla. 1994). *Followed, Ferguson Transp., Inc. v. North American Van Lines, Inc.*, 687 So.2d 821, 822 (Fla. 1996).

Importantly, the mere fact that owners purchased timeshares from plaintiffs provide no likelihood that they would have purchased anything else from plaintiff E.g. Mobile Shelter Systems USA, Inc. v. Grate Pallet Solutions, LLC 845 F. Supp 2d 1241, 1258 – 59 (M.D. Fla 2012 ) ( prior purchase of goods "does not demonstrate an agreement to purchase good in the future . ." )

A plaintiff is required to prove facts indicating "that, in all probability," a transaction would have been entered into "but for" the defendant's conduct. *Realauction.com, LLC v. Grant Street Group, Inc.*, 82 So.3d 1056, 1058 (Fla. 4th DCA 2011).

"[T]he speculative hope of future business is not sufficient to sustain a claim for interference with a business relationship." *Zike, LLC v. Catalfumo*, No.

12-80236-CIV, 2013 WL 12080225 (S.D. Fla., Feb. 21, 2013), at *6, citing

Realauction, supra. Accord, Phillips v. Consolidated Publishing Co.,Inc., No.

CV213-069. 2014 WL 1319357 (S.D. Ga., Mar. 31, 2014), at *13 (Florida

law: allegation that "a 'reasonable expectancy' existed that, but for the

interference," plaintiff would have acquired certain rights, was an insufficient

allegation of a business relationship).

     Moreover, under Florida law, a mere offer to sell does not give rise to

sufficient legal rights to support a claim of intentional interference. Lake Gateway

Motor Inn, Inc. v. Matt's Sunshine Gift Shops, Inc., 361 So. 2d 769, 772 (Fla. 4th

DCA 1978). An action for intentional interference with a business relationship will lie

"if the parties' understanding would have been completed if the defendant had not

interfered." Charles Wallace Co. v. Alternative Copier Concepts, Inc., 583 So. 2d 396,

397 (Fla. 2d DCA 1991).

     In this case, the SAC alleges that "Orange Lake Owners with existing

contracts with Plaintiffs have equity interests which may be used as credits towards

the purchase of an upgraded timeshare interest." ( SAC, paragraph 106 )

     Taken at face value, this does not even rise to the level of an offer to sell. It

appears to be merely a statement that Orange Lake owners could have made another

purchase from one of the Orange Lake, if they wished.

     Even if one were to characterize this to mean that Orange Lake  had a standing

offer to sell upgrades to existing timeshare owners, such an offer is not a "business

relationship" as required to support a claim for intentional interference with

advantageous business relationships

     In the present case, plaintiffs' have not identified a single owner who had

expressed any interest, much less entered into negotiations, for any further transaction with them.

The mere fact that Owners purchased timeshares from Plaintiffs provides no likelihood that they would have purchased anything else from Plaintiffs. *E.g.*, *Mobile Shelter Systems USA, Inc. v. Grate Pallet Solutions, LL*C, 845 F. Supp.2d 1241, 1258-59 (M.D. Fla. 2012) (prior purchase of goods "does not demonstrate an agreement to purchase goods in the future…").

Plaintiffs' failure to identify any actual and identifiable person willing to buy more timeshares from them, is fatal to their claim. *Id*.; *accord*, *Abusaid v. Hillsborough County Bd. of County Comm'rs*, 637 F. Supp.2d 1002, 1026 (M.D. Fla. 2007) (dismissing claim based on alleged interference with past and present customers).

## V.     <u>Conclusion</u>

Attorney Sussman is one of many "vendors" hired by TET to assist them in their mission of "exiting" owners from the financial burdens that are part and parcel of timeshare ownership.

The uncontroverted facts are that he is not an employee of TET, he does not share profits or losses with TET, that he is one of no less than four (4) outside counsel who have been hired by TET,  along with a host of other quasi – legal transfer companies, all charged with the purpose of seeking relief for embattled timeshare owners. ( Uncontroverted Fact 11, 12, 17 )

It is also undisputed that attorney Sussman was always subject to the "direction" and control of TET's principals as well as least two (2) in – house general counsel. (SAC, paragraph 120 (d);  Uncontroverted Fact 21, 22 )

Furthermore, attorney Sussman was privileged at all times to act in the

manner complained of.

     Finally, it is the law of this state that " neither an agent nor an employee can conspire with his or her corporate principal or employer." *Richard Bertram, iNc.  v. Sterling Bank & Trust, 820 So. 2d 963 (Fla. Dist. Ct. of App. 2002( at 966 citing Lipsig v. Ramlawi 760 So. 170, 180 (Fla.3d DCA 2000 )*


     For all the foregoing reasons, defendant prays that this motion be granted and  judgment be entered in his favor..

Dated: __10/4/18_____                    __/s/Michael McGirney__
                                                Michael McGirney

## <u>CERTIFICATE OF SERVICE</u>

I, Michael McGirney, hereby certify that a true and correct copy of the foregoing was served this 4th day of October, 2018, by e-filing with the Clerk of the Court using the CM/ECF Portal, and will provide a copy to the following parties of record:

*/s/Michael McGirney*
Michael McGirney,
Attorney for Defendant
The Law Offices of
Mitchell Reed Sussman & Associates

| | |
|---|---|
| Richard W. Epstein, Esquire<br>Jeffrey Backman, Esquire<br>Christina Guzman, Esquire<br>Greenspoon Marder, PA<br>201 East Pine Street, suite 500<br>Orlando, FL  32801 | John Y. Benford, Esquire<br>Angela M. Duerden, Esquire<br>Wilson Elser Moskowitz Edelman & Dicker<br>111 North Orange Avenue, Suite 1200<br>Orlando, FL  32801 |
| Charles J. Meltz, Esquire<br>Stacey J. Carlisle, Esquire<br>Grower, Ketchum, Eide, Telan & Meltz, P.A.<br>Post Office Box 538065<br>Orlando, FL  32853 | |