**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**ORANGE LAKE COUNTRY CLUB, INC.
and WILSON RESORT FINANCE,
L.L.C.,**

        **Plaintiffs,**

v.                                                          Case No: 6:17-cv-1542-Orl-31DCI

**REED HEIN & ASSOCIATES, LLC,
SCHROETER GOLDMARK & BENDER,
P.S., MITCHELL REED SUSSMAN,
BRANDON REED, TREVOR HEIN and
THOMAS PARENTEAU,**

        **Defendants.**

## ORDER

This matter comes before the Court without a hearing on the: (1) Motion to Dismiss (Doc. 122) filed by Defendant Schroeter Goldmark & Bender, P.S. ("**SGB**"); (2) Motion to Dismiss (Doc. 131) filed by Defendant Mitchell Sussman ("**Sussman**"); (3) Motion to Dismiss (Doc. 144) filed by Defendants Reed Hein & Associates, LLC d/b/a Timeshare Exit Team ("**TET**"), Brandon Reed ("**Reed**"), Trevor Hein ("**Hein**") and Thomas Parenteau ("**Parenteau**") (collectively, "**TET Defendants**"); and (4) responses in opposition (Docs. 146, 148, 167) filed by Plaintiffs Orange Lake Country Club, Inc. ("**Orange Lake**") and Wilson Resort Finance, L.L.C. ("**Wilson Finance**").

**I.    Background**

According to the allegations of the Second Amended Complaint (Doc. 118), which are accepted in pertinent part as true for purposes of resolving these motions, Orange Lake develops, finances, manages, and sells timeshare resort properties, and Wilson Finance provides mortgage

financing to purchasers of those properties. (Doc. 118, ¶¶ 2, 46–47). Like many other providers of timeshares and timeshare financing, Plaintiffs have begun to take legal action against companies "whose business models profit from disrupting valid legal contracts with . . . their [timeshare] owners." (*Id.* ¶ 1).

In the instant case, Plaintiffs allege that Defendants have engaged in a scheme designed to induce timeshare owners, including identifiable Orange Lake timeshare owners ("**Orange Lake Owners**"), to retain TET and to breach their purchase and finance timeshare agreements ("**Timeshare Agreements**") solely for Defendants' pecuniary gain. (*Id.* ¶ 50). To facilitate this scheme, owners and officers of TET—specifically, Reed, Hein, and Parenteau—lure timeshare owners into hiring TET by making false promises to relieve them of their timeshare obligations. (*Id.* ¶¶ 3, 51–57).

For example, on the TET website, Reed, Hein and Parenteau advertise that TET will utilize its "'proprietary process' to 'get rid of' owners' timeshare contracts 'Safely. Legitimately. Forever.'" (*Id.* ¶ 58). On the website's "Frequently Asked Questions" section, Reed, Hein, and Parenteau also advertise that TET is for timeshare owners who are:

- Not using their timeshare as much as they intended to
- Frustrated by unexpected "special assessments" and skyrocketing maintenance fees
- Financially set back by their timeshare maintenance fees and special assessments
- Frustrated by their failure to sell the timeshare through a listing company
- Concerned about their children inheriting their timeshare and then consequently becoming financially responsible for it
- Bothered they can't vacation where they want, when they want
- Tired of going to the same place every year
- Aggravated with exchange companies
- Realizing that there are more ways to go on vacation for much less

- Widowed or divorced, or are no longer able to travel with their loved ones
- Inheritors of a timeshare they don't want or use
- Part of resort scams

(*Id.*). According to Plaintiffs, through these FAQs, Reed, Hein and Parenteau misrepresent to Orange Lake Owners that the foregoing advertised reasons are legally sufficient grounds to terminate a timeshare contract when, in fact, none of these are legal bases to cease making payments under their Timeshare Agreements. (*Id.* ¶ 59).

As part of Defendants' scheme, Reed, Hein and Parenteau also convince timeshare owners, including Orange Lake Owners, to retain TET by providing the owners with charts that purport to compare the cost of paying the owners' timeshare company to the cost of paying TET for its services. (*Id.* ¶ 69). However, the charts willfully exaggerate what the owners will pay to the timeshare company and make TET's hefty fees appear lower than they really are. (*Id.* ¶ 69). By this and other deceptive advertising and marketing tactics, Reed, Hein and Parenteau dupe Orange Lake Owners into retaining TET for thousands of dollars. (*Id.* ¶ 64).

Before TET is retained, Reed, Hein, and Parenteau direct TET's representatives to instruct owners, including Orange Lake Owners, to stop making payments under their Timeshare Agreements. (*Id.* ¶ 60). By doing so, Reed, Hein, and Parenteau create the misconception that timeshare companies will be more willing to let Orange Lake Owners exit their Timeshare Agreements. (*Id.*). After signing TET's retainer documents, Orange Lake Owners are sent vague email updates designed to deceive them into believing that TET will negotiate with their respective timeshare companies and perform actual work on their behalf. (*Id.* ¶¶ 70–71). By design, however, TET never provides Orange Lake Owners with legitimate representation or engages in negotiation. (*Id.* ¶ 72).

Instead, Reed, Hein and Parenteau hire law firms, including Sussman and SGB, to handle fruitless "negotiations" pursuant to a master fee agreement. (*Id.* ¶¶ 72, 76, 83). Under the master fee agreement, TET agrees to pay Sussman and SGB "a portion of the fee TET obtains at sign-up in the amount of $1,200.00" and to send them "at least 800 files per month." (*Id.* ¶¶ 72, 76, 83). In exchange, SGB and Sussman send boilerplate representation letters to Plaintiffs, instructing them to cease communicating with their purported clients, without ever speaking to the timeshare owners. (*Id.* ¶¶ 78, 82). The demand letters state that TET's "clients" wish to terminate their Timeshare Agreements. (*Id.* 77–78, 82). But the letters either provide no legal basis for termination or provide a false legal basis for termination. (*Id.* ¶¶ 77–78, 82). Because Orange Lake Owners are purportedly represented by counsel and Plaintiffs are forbidden from communicating with them, Orange Lake Owners are completely unaware—often until they suffer adverse consequences—that Defendants have accomplished nothing for them. (*Id.* ¶¶ 73–74).

To date, Defendants' conduct has caused identifiable Orange Lake Owners to default on their payment obligations under their Timeshare Agreements and has caused Plaintiffs to suffer injury to their commercial and reputational interests. (*Id.* ¶¶ 74, 85–86). Seeking injunctive and monetary relief, Plaintiffs filed a complaint against Defendants on March 9, 2018. (Doc. 1). In their Second Amended Complaint ("**SAC**") Plaintiffs assert claims for tortious interference with existing contracts (Count I), tortious interference with advantageous business relationships (Count II), civil conspiracy (Counts III and IV), violation of the Florida Deceptive and Unfair Trade Practices Act ("**FDUTPA**") (Count V), misleading advertising in violation of Fla. Stat. § 817.41 (Count VI), and false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a) (Count VII). (*Id.* ¶¶ 90–167).

Defendants now move for dismissal of the claims asserted against them. (Docs. 122, 131, 144).

**II.     Legal Standards**

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to give the defendant fair notice of the claim and the grounds upon which it rests. *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957), *overruled on other grounds*, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

Where a complaint contains claims of fraud or mistake, however, Rule 9(b) imposes a heightened pleading standard, requiring that the circumstances constituting fraud be stated with particularity. *See Brooks v. Blue Cross & Blue Shield of Fla.*, 116 F.3d 1364, 1381 (11th Cir. 1997). This particularity requirement is satisfied if the complaint alleges "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendant's allegedly fraudulent acts, when they occurred, and who engaged in them." *U.S. ex rel. Matheny v. Medco Health Sols., Inc.*, 671 F.3d 1217, 1223 (11th Cir. 2012) (quoting *Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009)).

If a complaint does not comport with the pleading requirements or fails to set forth a plausible claim, it may be dismissed under Rule 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662, 672, 678–79, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). A Rule 12(b)(6) motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milbum v. United States*, 734 F.2d 762, 765 (11th Cir. 1984). In ruling on a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.1988). The Court must also limit its consideration to the pleadings and

any exhibits attached thereto. Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

The plaintiff must provide enough factual allegations to raise a right to relief above the speculative level, *Twombly,* 550 U.S. at 555, 127 S. Ct. at 1966, and to indicate the presence of the required elements, *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir. 2007). As explained in *Iqbal*, a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. at 1949 (citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the plaintiff is entitled to relief.'" *Id*. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

## III. Analysis

### A. Tortious Interference with Existing Contracts

In Count I, Plaintiffs assert that TET Defendants tortiously interfered with existing contracts between themselves and Orange Lake Owners. (Doc. 118, ¶¶ 90–103). Under Florida law, the tort of contractual interference occurs when: (1) a contract exists; (2) a third party has knowledge of the contract; (3) the third party intentionally interferes with a party's rights under the contract; (4) there is no justification or privilege for the interference; and (5) there are damages. *Mariscotti v. Merco Group At Akoya, Inc.*, 917 So. 2d 890, 892 (Fla. 3d DCA 2005).

In moving to dismiss Count I, TET Defendants advance several arguments. They first argue that Plaintiffs' claim fails because they do not "identify specific contracts . . . with which [TET Defendants] allegedly interfered." (Doc. 144, pp. 9–10). However, this degree of specificity is not

required. At the motion to dismiss stage, Plaintiffs need only plead facts that, if true, demonstrate that TET Defendants tortiously interfered with existing contracts between Plaintiffs and identifiable Orange Lake Owners. *Twombly,* 550 U.S. at 544. They have done this. Plaintiffs allege that they had valid and enforceable Timeshare Agreements with identifiable Orange Lake Owners. (*See, e.g.*, Doc. 1, ¶¶ 46–47, 92). Despite TET Defendants' knowledge of those existing agreements, TET Defendants intentionally and unjustifiably induced identifiable Orange Lake Owners to, *inter alia*, stop making payments to Plaintiffs under their Timeshare Agreements. (*Id.* ¶¶ 60, 85, 94–98). As a result, Plaintiffs suffered damages. (*Id.* ¶¶ 85, 99, 101). When taken together, these allegations are sufficient to support a claim for tortious interference.

Next, TET Defendants argue that, as agents of Orange Lake Owners, they cannot be liable for tortious interference. (Doc. 144, 10–11). In that same vein, TET Defendants argue that they were not strangers to Plaintiffs' contractual relationships because they had a "clear financial interest in how the [Timeshare Agreements] were performed." (*Id.* at 11–12). The Court is unpersuaded.

Although an agent generally cannot be held liable for tortiously interfering with the contract of its principal, an agent's "privilege to interfere" with the contracts of its principal is not absolute. *Sloan v. Sax*, 505 So. 2d 526, 528 (Fla. 3d DCA 1987). "'[T]he privilege afforded to an agent … who gives honest advice that it is in his principal's best interest to breach an existing relationship' is not available where the agent acts solely with ulterior purposes and the advice is not in the principal's best interest." *Id.* (quoting *Scussel v. Balter*, 386 So. 2d 1227, 1228–29 (Fla. 3d DCA 1980)). Likewise, non-strangers, who generally have the privilege to interfere with a contract to protect their own economic interests, may still be liable for tortious interference if they act in bad faith. *CSDS Aircraft Sales & Leasing, Inc. v. Lloyd Aereo Boliviano Airlines*, No. 09–CIV–22274, 2011 WL 1559823, at *5 (S.D. Fla. April 22, 2011).

In this case, Plaintiffs allege that TET Defendants urged Orange Lake Owners to breach their Timeshare Agreements, not to aid them in successfully ending their contracts with the Plaintiffs, but "for purely selfish and mercenary reasons so as to earn and retain a large pre-paid retainer." (Doc. 118, ¶ 98). If Plaintiffs can prove this, then TET Defendants' agency status would not shield them from liability.

Relying on *Ingenuity, Inc. v. Linshell Innovations, Ltd.*, 644 Fed. Appx. 913, 916 (11th Cir. 2016), in which the Eleventh Circuit held that a party's "predisposition to breach . . . precludes any finding that it was induced to breach by a third party," TET Defendants argue that Plaintiffs' claim fails because they are "not causing [Orange Lake] [O]wners to breach their contracts with [Plaintiffs] . . . , but rather assisting individuals in obtaining a termination of their unwanted contracts." (Doc. 144, pp. 12–13).

This argument is undermined by Plaintiffs' assertion that Orange Lake Owners were not predisposed to breach their Timeshare Agreements, but that TET Defendants duped unsuspecting Orange Lake Owners into breaching their Timeshare Agreements for their own pecuniary gain. (*See*, *e.g.*, Doc. 118, ¶¶ 60–63, 78). Furthermore, whether Orange Lake Owners were predisposed to breach their Timeshare Agreements is a fact-intensive inquiry inappropriate for resolution at this stage.

For the foregoing reasons, Count I will not be dismissed.

### B. Tortious Interference with Advantageous Business Relationships

In Count II, Plaintiffs assert that TET Defendants tortiously interfered with their advantageous business relationships. (Doc. 118, ¶¶ 104–116). To plead a claim for tortious interference with an advantageous business relationship, a plaintiff must allege: (1) the existence of a business relationship; (2) that the defendant knew of the relationship; (3) the defendant

intentionally and unjustifiedly interfered with the relationship; and (4) damage to the plaintiff as a result of the breach of the relationship. *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla.1994). "As a general rule, an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Id*. at 815.

Here, Plaintiffs plead no facts to suggest that they had an actual and identifiable understanding or agreement with the Orange Lake Owners that would have been completed if the TET Defendants had not interfered. Plaintiffs simply allege that they have "legitimate business relationships with Orange Lake Owners for future business" because "Orange Lake Owners with existing contracts . . . have equity interests *which may be* used as credits toward the purchase of an upgraded timeshare interest." (Doc. 118, ¶ 106) (emphasis added).

As Defendants correctly note, these allegations are insufficient to support an existing business relationship.[1] *See Realauction.com, LLC v. Grant St. Grp., Inc.*, 82 So. 3d 1056, 1060 (Fla. 4th DCA 2011) ("Speculative hope of future business is not sufficient to sustain the tort of interference with a business relationship."); *see also Orange Lake Country Club, Inc. v. Castle Law Grp., P.C.*, No. 6:17-cv-1044-ORL-31DCI, 2017 WL 6406866, at *3 (M.D. Fla. Dec. 15, 2017) (dismissing a claim for tortious interference with business relationships where the plaintiffs made similar allegations). As such, Count II will be dismissed without prejudice.

---

[1] Plaintiffs also allege that they have "advantageous business relationships with Orange Lake Owners pursuant to their contracts." (Doc. 118, ¶ 106). But Plaintiffs cannot solely rely on this allegation to support their claim for tortious interference with a business relationship because that would result in a duplicative claim for tortious interference with existing contracts.

### C. Civil Conspiracy

Plaintiffs assert two separate claims for civil conspiracy: one against TET and Sussman (Count III) and another against TET and SGB (Count IV). (Doc. 118, ¶¶ 117–134).

A civil conspiracy claim requires: (1) an agreement between two or more parties (2) to do an unlawful act or to do a lawful act by unlawful means, (3) the doing of some overt act in furtherance of the conspiracy, and (4) damage to plaintiff as a result of the acts done under the conspiracy. *Charles v. Florida Foreclosure Placement Center, LLC*, 988 So. 2d 1157, 1159–60 (Fla. 3d DCA 2008). An actionable conspiracy also requires an actionable underlying tort or wrong. *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997).

TET, Sussman, and SGB do not dispute that Plaintiffs have alleged all the essential elements of a claim for civil conspiracy. Instead, they argue that Plaintiffs' claims for conspiracy fail because they do not adequately allege their underlying claim for tortious interference. As support, TET, Sussman, and SGB make arguments nearly identical those advanced by the TET Defendants while moving to dismiss Count I. (Doc. 122, pp. 15–21; Doc. 131, pp. 5–12; Doc. 144, pp. 33–34). For the reasons stated in section III(A) of this order, TET's, Sussman's, and SGB's arguments lack merit.

Sussman separately argues that Plaintiffs' claim for conspiracy fails because TET hired Sussman as its attorney and agent, and an agent cannot conspire with its principal or employer. (Doc. 131, p. 13). The Court is unpersuaded. Although "neither an agent nor an employee can conspire with his or her corporate principal or employer . . . [a]n exception is made where the agent has a personal stake in the activities separate from the principal's interest." *Richard Bertram, Inc. v. Sterling Bank & Tr.*, 820 So. 2d 963, 966 (Fla. 4th DCA 2002) (citation omitted). In the instant case, Plaintiffs allege that Sussman had personal interests in furthering the conspiracy in that it acted for

its own pecuniary gain. (Doc. 118, ¶¶ 68, 76, 80). Because Plaintiffs' allegations are assumed to be true, their claim for conspiracy is not barred by the intra-corporate conspiracy doctrine.

SGB argues that Plaintiffs' conspiracy claim fails because: (1) Plaintiffs lack standing to sue SGB; (2) the demand letters SGB sent to Orange Lake constitute "pre-litigative" conduct which is immunized under the *Noerr–Pennington* doctrine; and (3) the demand letters SGB sent to Orange Lake constitute pre-suit communications which are immunized under Florida's litigation immunity privilege. (Doc. 22, pp. 7–15).

In support of its standing argument, SGB relies on *Angel, Cohen & Rogovin v. Oberon Inv., N.V.*, 512 So. 2d 192, 194 (Fla. 1987), which affirms that privity is required to sue a lawyer for professional negligence. This argument is without merit. Article III standing requires that a plaintiff sufficiently allege that they: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Here, Plaintiffs allege that they suffered an injury to their commercial and reputational interests. (Doc. 118, ¶¶ 52, 85, 132). Plaintiffs maintain that they suffered injury because, *inter alia*, SGB Defendants sent Plaintiffs boilerplate demand letters "rife with false or non-existent legal grounds for termination" and demanded that Plaintiffs cease communications with Orange Lake Owners, while TET Defendants simultaneously instructed those owners to breach their valid Timeshare Agreements. (*Id*. ¶¶ 10, 86, 129). Finally, Plaintiffs' alleged injuries are likely to be redressed by the relief they seek—monetary damages and an injunction. (*Id*. ¶¶ 132–134).

These allegations are sufficient to establish Article III standing. Besides, even a cursory review of the SAC reveals that Plaintiffs' claims for conspiracy do not sound in professional

negligence. Plaintiffs do not seek to speak on behalf of Orange Lake Owners; nor do they seek to sue any of the Defendants for the legal services provided to said owners. Plaintiffs simply seek redress for the damages they suffered due to Defendants' purported scheme.

The *Noerr–Pennington* doctrine extends not only to petitioning of the judicial branch, but also to acts reasonably attendant to litigation, such as demand letters. *Silverhorse Racing, LLC v. Ford Motor Co.*, 232 F. Supp. 3d 1206, 1211 (M.D. Fla. 2017). "The *Noerr* doctrine, however, is not absolute. To receive immunity, the conduct at issue cannot fall within the 'sham exception' to the *Noerr* doctrine. In other words, the litigation activity must be genuine." *Id.* (citation omitted).

Plaintiffs have pleaded sufficient facts to suggest that SGB's "pre-litigative conduct" falls within the sham exception of the *Noerr* doctrine. Specifically, Plaintiffs allege that SGB sent demand letters to Plaintiff in bad faith and asserted "baseless claims" solely to interfere with Plaintiffs' relationships with Orange Lake Owners for their own pecuniary gain. (Doc. 118, ¶¶ 7, 10, 82, 126–134). Thus, the Court cannot conclude, as a matter of law, that the *Noerr* doctrine applies.

Turning to SGB's final argument, Florida's litigation privilege is an affirmative defense. *Am. Nat'l Title & Escrow of Fla., Inc. v. Guarantee Title & Trust Co.*, 810 So. 2d 996, 998 (Fla. 2d DCA 2002). Affirmative defenses are not usually considered at the pleading stage unless "the complaint affirmatively and clearly shows the conclusive applicability of the defense to bar the action." *Reisman v. Gen. Motors Corp.*, 845 F.2d 289, 291 (11th Cir. 1988) (quoting *Evans v. Parker*, 440 So. 2d 640, 641 (Fla. 1st DCA 1983)). Here, the conclusive applicability of the litigation privilege does not unequivocally appear on the face of the SAC. Therefore, the Court is unable to conclude that Plaintiffs' conspiracy claims are barred by Florida's litigation privilege.

Accordingly, the Court will not dismiss Counts III and IV.

### D. Violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et. seq*.

In Count V, Plaintiffs allege that TET Defendants violated FDUTPA. (Doc. 118, ¶¶ 135–144). FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).[2] To state a claim under the FDUTPA, a plaintiff must allege three elements: (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages. *Caribbean Cruise Line, Inc. v. Better Business Bureau of Palm Beach County, Inc.*, 169 So. 3d 164, 167 (Fla. 4th DCA 2015).

TET Defendants argue that Plaintiffs' claim should be dismissed because: (1) Plaintiffs are not consumers and therefore lack standing to bring a claim under FDUTPA; (2) Plaintiffs fail to satisfy Rule 9(b)'s heightened pleading standard; and (3) TET Defendants' purported statements constitute mere puffery and nonactionable opinions. (Doc. 144, pp. 16–25).

"FDUTPA claims are not limited to consumers." *Orange Lake Country Club, Inc.*, 2018 WL 1535719, at *5. The statute applies to all individuals and entities that can prove the elements of an FDUTPA claim. *See Bailey v. St. Louis*, 196 So. 3d 375, 383 (Fla. 2d DCA 2016) (holding that the statutory amendment "evinces a legislative directive that the remedy of damages is not limited to a consumer"); *see also* Fla. Stat. § 501.211(2) (stating that "[i]n any action brought by a *person* . . . , such *person* may recover") (emphasis added). Therefore, the first argument fails.

The second and third arguments are equally unavailing. As discussed *infra*,[3] the Court cannot conclude, as a matter of law, that the statements at issue constitute mere opinion or puffery.

---

[2] For purposes of FDUTPA, the term "trade or commerce" is defined as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." Fla. Stat. § 501.203(8).

[3] *See* section III(F) of this Order.

Furthermore, Plaintiffs' FDUTPA claim does not rest on fraud allegations, so Rule 9(b) is inapplicable. But even if Rule 9(b) applied, Plaintiffs' allegations suffice. Plaintiffs identify and detail TET Defendants' advertising statements, when and where the advertising was made, why their statements were false or misleading, how the statements deceived Orange Lake Owners into retaining TET and stopping their required Timeshare Agreement payments, how Plaintiffs were damaged, and what TET Defendants obtained as a consequence of their purported fraud. (*See, e.g.*, Doc. 118, pp. 54–74, 85, 135–144).

For these reasons, the Court will deny the motion to dismiss Count V.

### E. Misleading Advertising, Fla. Stat. § 817.41

Count VI asserts a claim against TET Defendants for misleading advertising in violation of Fla. Stat. § 817.41. A consumer party may state a claim under Section 817.41 by pleading:

> (a) the representor made a misrepresentation of a material fact; (b) the representor knew or should have known of the falsity of the statement; (c) the representor intended that the representation would induce another to rely and act on it; and (d) the plaintiff suffered injury in justifiable reliance on the representation.

*Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314, 1322 (M.D. Fla. 2007). When the party alleging misleading advertising is a plaintiff-consumer, direct reliance is required to assert a claim under § 817.41. *Id*. But when the party alleging misleading advertising is "a competitor of the defendant in selling the goods or services to which the misleading advertisement relates," an allegation of competition is permitted to "stand in" for the element of direct reliance." *Id*.

Plaintiffs are not consumers who suffered an injury in justifiable reliance on a representation Defendants made to the public. Therefore, Plaintiffs attempt to bring themselves within the ambit

of Fla. Stat. § 817.41 by alleging that the "TET Defendants are in direct competition with Plaintiffs for the payments Orange Lake Owners owe to Plaintiffs." (Doc. 118, ¶ 148).

This argument fails. Plaintiffs do not compete with TET Defendants in the sale of goods or services. Rather, Plaintiffs are in the business of getting people into timeshares, while the Defendants are in the business of getting them out. Though their target audiences overlap, Plaintiffs and the TET Defendants are engaged in entirely different markets. They are adversaries, not competitors. Accordingly, Count VI will be dismissed with prejudice.

### F. False Advertising Under the Lanham Act, 15 U.S.C. § 1125(a)

Plaintiffs allege that TET Defendants are liable for false advertising under the Lanham Act. (Doc. 118, pp. 154–167). To state a claim under the Lanham Act, a plaintiff must allege that:

> (1) the defendant's statements were false or misleading; (2) the statements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on the consumers' purchasing decision; (4) the misrepresented service affects interstate commerce; and (5) [the plaintiff] has been, or likely will be, injured as a result of the false or misleading statement.

*Sovereign Military Hospitaller Order of St. John of Jerusalem of Rhodes & of Malta v. Fla. Priory of Knights Hospitallers*, 702 F.3d 1279, 1294 (11th Cir. 2012).

Actionable false statements include: "(1) commercial claims that are literally false as a factual matter; and (2) claims that may be literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or are likely to deceive consumers." *BellSouth Advert. & Pub. Corp. v. Lambert Pub.*, 45 F. Supp. 2d 1316, 1320 (S.D. Ala. 1999) (citation omitted). To determine if an advertisement is false or misleading, a court "must analyze the message conveyed in full context" and "must view the face of the statement in its entirety." *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1308 (11th Cir. 2010) (citation omitted). "[B]ald assertions of superiority or general statements of opinion" do not result in a violation of the Lanham Act. *Pizza Hut, Inc. v.*

*Papa John's Int'l, Inc.*, 227 F.3d 489, 496 (5th Cir. 2000). Similarly, "exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely"—commonly referred to as "puffery"—is not actionable under the Lanham Act. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997).

TET Defendants first argue that Plaintiffs' claims fail because their statements—specifically, the "100% guarantee"—were mere puffery or non-actionable opinions. (Doc. 144, pp. 26–28). Based on the allegations of the SAC, Defendants' statements were not general opinions or exaggerated statements; but rather, assertions of fact upon which a reasonable consumer might rely. Therefore, the Court cannot conclude as a matter of law that the statements at issue constitute mere puffery or non-actionable opinions.

Next, TET Defendants contend that Plaintiffs' claim should be dismissed because they fail to allege that the statements at issue occurred within the context of "commercial advertising or promotion." (Doc. 144, p. 29). Defendants identify four characteristics of "commercial advertising or promotion":

> (1) commercial speech; (2) by a defendant who is in *commercial competition* with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services[; and] (4) the representations . . . must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

*Edward Lewis Tobinick, MD v. Novella*, 848 F.3d 935, 950 (11th Cir. 2017) (emphasis added) (quoting *Gordon & Breach Sci. Publishers S.A. v. Am. Ins. of Physics*, 859 F. Supp. 1521, 1535–36 (S.D.N.Y. 1994)), *cert. denied Tobinick v. Novella*, 138 S. Ct. 449 (2017).

TET Defendants posit that since they are not in commercial competition with Plaintiffs, their Lanham Act claim fails. However, the U.S. Supreme Court has held that a plaintiff need not show that a defendant was in commercial competition with plaintiff to have standing under the Lanham

Act. *Lexmark International, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1394 (2014). According to the U.S. Supreme Court, where, as here, "a party claims reputational injury from disparagement, competition is not required for proximate cause; and that is true even if the defendant's aim was to harm its immediate competitors, and the plaintiff merely suffered collateral damage." *Id*. Thus, the Court will not dismiss Plaintiffs' Lanham Act claim on this basis. See *Diamond Resorts Int'l, Inc. v. Aaronson*, No. 6:17-cv-1394-ORL-37-DCI, 2018 WL 735627, at *3 (M.D. Fla. Jan. 26, 2018) (declining to dismiss a Lanham Act claim based on similar arguments); see also *Tobinick v. Novella*, 142 F. Supp. 3d 1275, 1280 (S.D. Fla. 2015) (explaining that whether a plaintiff and defendant are competitors "is not dispositive of whether the speech at issue constitute[s] 'commercial advertising or promotion'"), *aff'd sub nom.*, 848 F.3d 935 (11th Cir. 2017).

Finally, TET Defendants maintain that Plaintiffs have omitted the necessary allegations of injury and causation for their Lanham Act claim. (Doc. 144, pp. 29–31). Section 1125(a) of the Lanham Act "extends only to plaintiffs whose interests fall within the zone of interests protected" by the Lanham Act. *Lexmark*, 134 S. Ct. at 1377. To that end, a false advertising claim under the Lanham Act requires that "a plaintiff . . . plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Id*. at 1395. The sufficiency of proximate cause allegations turns on whether "the harm alleged has a sufficiently close connection to the conduct the statute prohibits." *Id*. at 1390. When "a defendant harms a plaintiff's reputation by casting aspersions on its business, the plaintiff's injury flows directly from the audience's belief in the disparaging statements." *Id*. at 1393.

Plaintiffs adequately alleged that their injuries were proximately caused by Defendants' alleged false and misleading statements. They allege that TET Defendants made advertising

statements which, *inter alia*, falsely deceived Orange Lake Owners into believing that Plaintiffs engaged in unlawful conduct and falsely guaranteed to relieve Orange Lake Owners of their Timeshare Agreement obligations. (Doc. 118, ¶¶ 54–74, 154–163). The advertising statements caused identifiable Orange Lake Owners to retain TET and to stop making payments as required under their Timeshare Agreements. (*Id.* ¶¶ 85, 164). As a result, Plaintiffs suffered harm to their reputational and commercial interests. (*Id.* ¶¶ 159, 165). When viewed in the light most favorable to Plaintiffs, these allegations sufficiently allege injuries flowing directly from TET Defendants' statements. For the foregoing reasons, the Court will deny the motion to dismiss Count VII.

## IV. Conclusion

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion to Dismiss filed by Defendant Schroeter Goldmark & Bender, P.S. and the Motion to Dismiss (Doc. 131) filed by Defendant Mitchell Sussman are **DENIED**. The Motion to Dismiss (Doc. 144) filed by Defendants Reed Hein & Associates, LLC d/b/a Timeshare Exit Team, Brandon Reed, Trevor Hein, and Thomas Parenteau is **GRANTED IN PART AND DENIED IN PART.** Count II is **DISMISSED WITHOUT PREJUDICE** and Count VI is **DISMISSED WITH PREJUDICE**. In all other respects, the motion is denied.

Should the Plaintiffs wish to file an amended complaint, they must do so on or before November 16, 2018.

**DONE** and **ORDERED** in Orlando, Florida on October 24, 2018.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE