## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT FLORIDA
## ORLANDO DIVISION

ORANGE LAKE COUNTRY CLUB, INC., a Florida corporation, and WILSON RESORT FINANCE, L.L.C., a Florida limited liability company,

        Plaintiffs,

vs.

REED HEIN & ASSOCIATES, LLC d/b/a TIMESHARE EXIT TEAM; THE LAW OFFICES OF MITCHELL REED SUSSMAN & ASSOCIATES; and SCHROETER GOLDMARK & BENDER, P.S.,

        Defendants.

CASE NO.: 17-cv-01542-RBD-KRS

_____/

## **DEFENDANT THE LAW OFFICES OF MITCHELL REED SUSSMAN & ASSOCIATES' AMENDED[1] REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant, Mitchell Reed Sussman d/b/a Mitchell Reed Sussman & Associates ("Sussman"), by and through his undersigned counsel, respectfully submits the following Reply to Plaintiff's Response in Opposition [DE 224] to Defendant Sussman's Motion for Summary Judgment [DE 197] and states as follows:

### **INTRODUCTION**

Faced with the undeniable and uncontroverted truth - that Sussman did not solicit, did not advertise, did not target, and did not even communicate with Plaintiffs' timeshare owners

---

[1] Defendant Sussman requests that this Court consider this memorandum as Defendant Sussman's reply permitted by Court Order [DE 198], and not the Reply in Response [DE 233] and its errata [DE 235]. The Reply and errata were mistakenly filed due to an error

1

[Uncontroverted Fact No. 18, 23, 24, 25] - Plaintiffs have seemingly abandoned their theory of interference with contract and instead raised a new theory of the case, that Defendant Sussman's deeding practice is illegal for a variety of reasons, each of which will be addressed below.

Suffice it to say at this point, the common law rule prohibiting restraints on the free alienation of real property is alive and well in the state of Florida *Title XL Chapter 689.28,* any condition contained in a deed which prohibits a grantee from alienating his property is void. *Davis v. Geyer*, 9 So. 2d 727, 730 (1942) and that a **deed back** to developers which recites the nominal consideration of $10.00 is not criminal in the state of Florida or anywhere else. Fla. Stat. §§ 721.17, 817.535.

## I.   COUNT I – INTERFERENCE WITH CONTRACT

The Plaintiffs agree and it is uncontroverted that Sussman did <u>not</u> communicate directly with the customers of codefendant Reed Hein & Associates, LLC d/b/a Timeshare Exit Team ("TET") [Uncontroverted Fact No. 18].

It is also uncontroverted that it did <u>not</u> participate nor did he advise TET in connection with the marketing of its timeshare exit services. [Uncontroverted Fact No. 20]. Moreover, Plaintiffs have provided not a scintilla of evidence that contradicts the purportedly *"immaterial"* fact that Sussman does not "solicit" timeshare clients in Florida or anywhere else. [Uncontroverted Fact No. 25].

In *Brown v. Larkin & Shea, P.A.,* 552 So.2d 500 (Fla. 1st DCA 1988) the court held that in the absence of solicitation there can be no interference.

It is undisputed that Sussman neither solicited nor communicated with the time share

2

owners and did not advise them to "stop paying." In the absence of a finding of a conspiracy with Sussman and TET, Sussman as a matter of law is not liable to Plaintiffs for tortious interference.

## II.     COUNT II – CONSPIRACY

### A. SUSSMAN'S RETAINER WITH TET

It is undisputed that a contract in the form of an attorney-client retainer agreement exists between Sussman and the principal defendant, ReedHein & Associates, LLC d/b/a Timeshare Exit Team ("TET") [Uncontroverted Fact No. 4], pursuant to the terms of which Sussman provided proprietary information, legal and consulting services to TET in connection with TET's desire to secure the liquidation and return of TET's customer's timeshares. [Uncontroverted Fact No. 5 ].

In response to this motion, the plaintiffs have offered no evidence of any agreement, other than the attorney-client retainer agreement.

Without evidence of an agreement to damage Plaintiffs by unlawful means, Plaintiffs simply cannot prevail. *Eagletech Comm. Inc., v. Bryn Mawr Inv. Grp.,* Inc. 79 So. 3d 855, 863 (Fla, 4th DCA 2012). An attorney retainer agreement for legal services, in and of itself, is not unlawful.

Not one of the methods employed by the defendant is either criminal or unlawful under Florida law. If, as the Plaintiffs contend, the methods used to execute that agreement were unlawful, there are no material facts supporting an *agreement* to use those methods. Defendants in fact admit there was no agreement as to the allegedly unlawful methods. Opposition at p. 11 [DE 224].

### B. INTRA – CORPORATE CONSPIRACY DOCTRINE

Because a civil conspiracy requires "an agreement between two or more parties," *Lipsig v. Ramlawi*, 760 So. 2d 170, 180 (Fla. 3d DCA 2000), "it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself," *Dickerson v. Alachua Cty.Comm'n*, 200 F.3d 761, 767 (11th Cir. 2000).

The Plaintiffs argue that corporate conspiracy doctrine is inapplicable because "Sussman has failed to establish an agency relationship between him and the Orange Lake Owners." Opposition at p. 16 [DE 224]. Such argument completely misses the point! The conspiracy alleged is between Sussman and TET not between Sussman and the Orange Lake Owners.

It is uncontroverted that Sussman is the agent of his codefendant, TET. [Uncontroverted Fact Nos. 4, 5, & 17].

As the agent for TET, as a matter of law, Sussman cannot conspire with his corporate principal. *Richard Bertram, Inc. v. Sterling Bank & Trust*, 820 So. 2d 963, 966 (Fla. 4th DCA 2002).

While it is true that Florida courts recognize the "personal stake" exception to the intra-corporate conspiracy doctrine. *Richard Bertram*, 820 So. 2d at 966. To prove that a party's stake was sufficient to qualify for this exception, an agent must have "a personal stake in the activities that are separate and distinct from the corporation's interest." *Lipsig*, 760 So. 2d at 181 (citation omitted).

In other words, the agent must have "acted 'in their personal interests, wholly and separately from the corporation.'" *Microsoft Corp. v. Big Boy Distr. LLC*, 589 F. Supp. 2d

4

1308, 1323 (S.D. Fla. 2008).

In the present case, it is undisputed that TET and Sussman had the same interest, to secure the liquidation and return of TET's customer's timeshares. [Uncontroverted Fact No. 5]. It is also uncontroverted that the benefit derived by Sussman was the payment of a fixed fee for his services, in most cases as little as $500.00 per file. [Uncontroverted Fact No. 15].

It is the law in Florida that the mere receipt of a fee by an attorney does not vitiate the intra – corporate conspiracy doctrine, when the attorney is acting on behalf of his principal. *Lipsig v. Ramlawi*, 760 So. 2d 170, 186 (Fla. 3d DCA 2000). Of similar import is *Mancinelli v. Davis*, 217 So. 3d 1034, 1036 (Fla. 4th DCA 2017). In that case, the Court found that the personal stake exception did not apply when a person was alleged to have fraudulently manipulated records in order to personally enrich himself in the same transaction in which his principle company was being sold. *Id.* The Court determined that this was not a sufficient personal stake – the agent would have had to of "acted 'in their personal interests, wholly and separately from the corporation.'" *Id.* at 1037.

Plaintiffs have provided evidence only that Sussman received payment for services rendered on behalf of TET. The mere receipt of funds by an agent from a principle is, as a matter of law, insufficient to fall under the personal stake exception to the intra-corporate conspiracy doctrine.

### SUSSMAN'S DEEDING PRACTICE IS NOT UNLAWFUL

The Plaintiffs attack Sussman's deeding practice asserting that it is fraudulent and criminal, however, Plaintiffs simultaneously acknowledge Sussman's non-involvement in the sales process and recognize that he does not tell the owners to "stop paying"

As will be seen below, these new contentions are nothing more than red herrings designed to shift focus from Plaintiffs' real problem, Sussman's failure to engage in any conduct that could be deemed interference with contract.

### A. RIGHT OF FIRST REFUSAL

Plaintiffs' first argument is that Sussman failed to provide plaintiffs with their right of first refusal. Opposition at ps. 7, 9, 11 [DE 224].

What Plaintiffs' fail to mention is that each and every letter of representation sent by Sussman contains the same "boilerplate" language:

> Because my clients have no ill will towards your company they are prepared to execute a "deed in lieu" or other appropriate document by which my clients will return the timeshare interest to you without you having to incur the expense of a drawn out foreclosure proceeding.

[DE 224 – 9].

By offering to "return the timeshare interest" to the Plaintiffs, Sussman is more than satisfying any requirement to provide Plaintiffs with the opportunity to buy back the timeshare under their right of first refusal. In fact, the very first step Sussman takes, in each and every case, is to offer to give back the timeshare.

Perhaps more importantly, the Supreme Court of Florida in the seminal case of *Davis v. Geyer*, 9 So. 2d 727, 730 (Fla. 1942) noted that it had long been the law in Florida that a condition which prohibited the grantee or devisee from alienating that land was void. The Court stated that even a clause prohibiting the grantee from conveying without the consent of the grantor is repugnant and void and that a condition to sell only to a particular person or persons was void and unenforceable.

Thus, not only has defendant made an offer allowing the plaintiffs to take back their

6

property for free, but more importantly the "right of first refusal" that plaintiffs seek to impose on their owners is void and of no force and effect in the state of Florida.

### B. RECITATION OF $10.00 CONSIDERATION

Next Plaintiffs contend that Sussman's Quit Claim deeds which recite a consideration of $10.00 is fraudulent and in violation of Florida Criminal Law. Opposition [DE 224].

More particularly, Plaintiffs contend that the recitation of $10.00 is false information in violation of Fla.Stat. § 817.535 which provides criminal penalties for the filing of a "materially false, fictitious, or fraudulent statement or representation that purports to affect an owner's interest in the property..."

This, like the other deeding arguments, is a red herring.

The fact that a "Quit Claim" deed form states the recital for ten dollars ($10.00) of consideration does not make it "fraudulent." The very deed form used by defendant is approved and on the website of the Palm Beach County Clerk and Controller as the official form [DE 234-1].

Moreover, the recitation of the nominal consideration of $10.00, also appears on the deeds prepared by the Plaintiffs themselves, which deeds were given to the owners when they purchased the timeshares. These were presumably for something more than the $10.00 nominal consideration stated on the face of the deed. [DE 234-2]

### C. FLORIDA TIMESHARE RESELLER LAW

Plaintiffs again try and divert court's attention from the real issue, whether defendant's conduct amounts to interference with contract, by throwing out yet another red herring, defendant's alleged violation of Florida' version of the timeshare resellers law, Florida Statute

721.17. Opposition at p. 15 [DE 224].

Plaintiffs contend that defendant has violated this law and has committed a third-degree felony, *id.*, because it prohibits the "resale" of a consumer timeshare to a transferee that does not have the ability or means to pay. Fla. Stat § 721.17 (3).

The resellers law is "intended to protect the rights of all purchasers" of timeshares. Florida Statute Section 721.17 (1)(b) states that it "may be enforced by any prior or subsequent timeshare purchaser so long as that purchaser is not in default of his or her obligations."

Forgetting for the moment that plaintiff is an attorney and not a broker engaged in the business of timeshare resales. In this case there is no evidence of deeds to third parties, in Florida. In Florida, the only deeds that exist are those that were deeded back to Orange Lake not to third parties.

Moreover, had defendant been a reseller of timeshares his practice of deeding back would be covered by the subsection (i) of Florida Statute § 721.17:

> This subsection does not apply to the transfer of ownership of a consumer resale timeshare interest from a consumer timeshare reseller to the developer or managing entity of that timeshare plan.

### D. THE WAGNER CASE

Plaintiffs last ditch effort to paint defendant's conduct as fraudulent and criminal seeks to equate his conduct with that of attorney Deborah M. Wagner who lost her license to practice law in the state of Virginia. Opposition at p.16 [DE 224].

In *United States v. Wagner*, 4:15CR28 (E.D. Va. 2017), attorney Deborah M. Wagner pled guilty to transferring timeshare properties over "1,000 timeshare units into the names of stolen identities." The fraudulent acts supporting the indictment included engaging in various

8

"fraudulent acts in support of the scheme, including false statements and promises to resorts, propping up stolen identities with email accounts, bank accounts and tax returns, falsely notarizing signatures and preparing fraudulent deed work. The transfer also had a devastating impact on the credit of the stolen identities…." Defendant's Request for Judicial Notice [DE 234-3].

There is no assertion by anyone that defendant has "stolen" the identities of anyone much less his friends and his associates. Moreover, there is absolutely no evidence that defendant misled any of the plaintiffs to accept transfers by submitting phony "email accounts and tax returns" in order to gain their consent to the transfers. Finally, there no assertion that any of the "stolen identities" signatures or any signatures for that matter, were falsely notarized.

To equate attorney Wagner's behavior to Sussman's deeding practices is not only unfair, but designed to inflame, prejudice, and detract from the real issue before the court: whether Plaintiffs can show that there is a genuine issue of material fact as to whether Sussman unlawfully interfered with Plaintiffs' contracts or conspired with TET to commit illegal acts. Instead, the undisputed facts show that Sussman never even communicated with the timeshare owners and the only agreement between TET and Sussman is an attorney-client retainer agreement which contains no agreement to conduct unlawful acts.

**Dated:** This 20th day of November 2018.

**Michael L. Feinstein, P.A.**

/s/ Elizabeth O. Hueber_____
Elizabeth Olivia Hueber
Florida Bar No. 0073061
Michael L. Feinstein, P.A.
200 S.E. 18th Court
Fort Lauderdale, Florida 33316
Telephone: (954) 767-9662
Fax: (954) 764-4502
Email: Elizabeth@feinsteinlaw.net

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have filed the foregoing with the Clerk of Court via CM/ECF this 20th day of November 2018. I further certify that any party that enters an appearance in this matter will receive a copy of this document via CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notice of Electronic Filing.

/s/ Elizabeth Olivia Hueber _____