## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

ORANGE LAKE COUNTRY CLUB, INC.,
a Florida corporation, and   WILSON
RESORT FINANCE, L.L.C., a Delaware
limited liability company,

              Plaintiffs,

v.

REED HEIN & ASSOCIATES, LLC d/b/a
TIMESHARE EXIT TEAM, MITCHELL
REED SUSSMAN d/b/a MITCHELL REED
SUSSMAN & ASSOCIATES, *et. al*,

              Defendants.

CASE N O.: 17-cv-1542-Orl-31DCI

_____/

### PLAINTIFFS' MOTION FOR DISCOVERY SANCTIONS FOR REFUSAL TO COMPLY WITH DISCOVERY ORDERS [DE 103, 121, 196] OR, IN THE ALTERNATIVE, TO COMPEL PRODUCTION FROM DEFENDANT MITCHELL REED SUSSMAN

Plaintiffs, Orange Lake Country Club, Inc. and Wilson Resort Finance LLC ( "OLCC"), pursuant to Fed. R. Civ. P. 26 and 37(b), file this Motion for Discovery Sanctions ("Motion") against Defendant Mitchell Reed Sussman d/b/a Mitchell Reed Sussman & Associates ("Sussman") requesting entry of an order that (1) strikes Defendant's Answer and Affirmative Defenses; or (2) bars Defendant from denying several facts at issue; or (3) compels Defendant to produce all documents within his control that are responsive to the First and Second Requests for Production within 5 days of the entry of an Order on this Motion; and (4) requires Defendant to submit to a second deposition to address the improperly withheld documents; (5) requires Defendant to submit a declaration describing the search conducted for responsive records and whether he has reason to believe responsive documents exist; (6) sanctions Defendant in the amount of the fees Plaintiffs reasonably incurred in having to file this Motion; and (7) awards further relief the Court deems just and proper.

## BACKGROUND

This is the fifth discovery motion OLCC has filed in an effort to address Sussman's discovery violations.   *See* DE 75, 152, 179, and 180.   Despite multiple Court Orders, Sussman has yet to produce the documents responsive to even the First Request for Production that OLCC served in December 17, 2017.   Almost a year later, OLCC has yet to receive the documents that will prove Defendants' conspiracy to interfere with Plaintiffs' contractual and advantageous business relationships.   This delay is not the result of Defendant's inadvertent omissions or inconsequential prevarications.   To the contrary, Sussman has made concerted efforts to stonewall discovery by improperly asserting boilerplate objections, disregarding Court deadlines, and misrepresenting to the Court and under oath that all responsive documents have been produced.

After representing to the Court that he had produced all documents responsive to the First and Second Requests for Production, Sussman filed amended discovery responses admitting that he needs to supplement his production.   To deflect from his failure to comply with the Court's Orders, Defendant attempts to muddy the waters with the red herring argument that the responsive documents are in the possession of his "staff" who are independent contractors.   As a licensed attorney, Sussman is fully aware that Rule 34 requires litigants to produce documents that they can obtain on demand.   Sussman's discovery violations warrant severe sanctions from this Court.

## MEMORANDUM OF LAW

### I.     STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY

> Your Honor, ***everything*** we have has been produced. What he didn't read to you in our response was ***notwithstanding the objection***, we've produced it. We kept the objection in there for purposes if there's need for them for later appellate purposes, but, quite frankly, ***every document has been produced***.
>
> -   Michael McGirney, Ex. 1, Hr'g Tr. 110:1-18 (Sept. 26, 2018).

This statement is provably false and representative of the discovery abuses Sussman boldly continues to perpetrate. Sussman's misrepresentations come at the heels of three motions to compel necessitated by his refusal to produce even a single responsive document in this proceeding. DE 75, 179, 180. These discovery violations date back to January 18, 2018 when Sussman served wholly deficient discovery responses asserting improper boilerplate objections as well as privilege claims that were not substantiated by a privilege log, as required by the Court's Standing Order on Procedure for Assertion of Privilege. Ex. 2.

Upon receipt of the deficient discovery responses, OLCC endeavored to meet and confer with Sussman to remedy the discovery dispute without Court intervention. Ex. 3. Sussman rebuffed OLCC's efforts, refused to supplement his answers to the First Request for Production, which promoted OLCC to file the first motion to compel. DE 75. Sussman did not oppose the motion to compel and, at the hearing, declined to provide any argument in support of his meritless, boilerplate objections. Ex. 4. The Court granted the motion to compel in part and, mindful of the then-October 1 discovery deadline, set specific production milestones. DE 103. Sussman disregarded each of the production milestones he was Court Ordered to obey, prompting OLCC to move to show cause why Sussman should not be held in contempt. DE 152.

After the Court declined to find Sussman in contempt, OLCC renewed its efforts to negotiate Defendant's response to the First Request for Production and Second Requests for Production which were both overdue. Because Sussman refused to produce the documents before the scheduled status conference, OLCC moved for discovery sanctions and to compel. DE 179, 180. Before the hearing on Plaintiffs' motions, Sussman served amended responses to the First Request for Production. Ex. 5. Sussman also served written responses to the Second Request for Production and produced 1,720

pages of documents allegedly responsive to all outstanding discovery requests.  Ex. 6.[1]  Sussman's

production included (i) 1,254 pages that allegedly contained all Sussman's files relating Timeshare

Clients; (ii) a 207-page document apparently listing Sussman's Timeshare Clients; and (iii) 259-

pages of contracts and communications with third parties.  Based on Defendant's representations that

this production contained every document responsive to Plaintiffs' requests, the Court denied in part

OLCC's Motion for Discovery Sanctions and denied the Motion to Compel.  DE 193, 196.

On October 3, 2018, assuming that it was in possession of all responsive documents, OLCC

deposed Sussman.  During his deposition, Sussman described The Law Office of Mitchell Reed

Sussman & Associates as a three-office law firm that specializes in timeshare cancellations.  Ex. 7,

Sussman Dep. 10:9-21.  The "associates" identified in the firm's name are the legal and non-legal

personnel who assist Sussman in providing legal services.  *Id.* at 222:17-19.  Sussman relies

primarily on timeshare cancellation companies, such as Timeshare Exit Team ("TET") to refer him

work. *Id.* at 8-14.  Indeed, TET alone has referred more than 7,800 customers to Sussman since 2015

and paid him at least $500 for each timeshare owner he represented.  *Id.* at 178:13-15; 37:6-25.

For this fee, which TET wires to Sussman at the time of the referral, Sussman conducts an

"initial analysis" and then his "associates" execute the strategy that will allegedly terminate the

timeshare contract.  *Id.* at 117:1-5.  This strategy consists of (1) sending form demand letters; (2)

recording quitclaim deeds that purport to transfer the timeshare interest to one of Sussman's cash-

strapped associates; or (3) recording quitclaim deeds that purport to transfer the timeshare interest

back to OLCC.  *Id.* at 90:20-23; 96:11-16; 172:13-16.  Sussman associates issue the demands letters

based on form documents that Sussman previously prepared.  *Id.* at 50:7-25; 51:1-9.  Sussman hires

---

[1] Although Sussman claimed to have produced more than 3,000 pages of documents, the bate stamps in this production prove this claim is again false. Ex. 1, Hr'g Tr. 110:1-18.  The last document in Sussman's production is labeled "Sussman-01720."

local lawyers to prepare the quitclaim deeds based on information provided by Sussman's associates. *Id.* at 131:12-14.   After they prepare the quitclaim deeds, the local lawyers send the deeds to Sussman's associates who obtain the signatures required to finalize the deed and record the instruments. *Id.* at 275: 3-12.

Sussman does not conduct any of this work himself and completely relies on his "associates" to execute the strategy he masterminded. *Id.* at 191:8-14.  Neither Sussman nor any of his associates ever speak with the TET-referred clients.   *Id.* at 38:6-25; 39:1-18.   Sussman's considers those communications as "customer service" that he is not duty-bound to provide.   *Id.* Because Sussman does not communicate with the Timeshare Clients, he relies on TET to provide him the information he needs to conduct the "initial analysis" he undertakes at the outset of the representation. *Id.* at 117-118.  These documents include the timeshare information sheets completed by the Timeshare Clients, as well as the deed and mortgage documents. *Id.* at 117-118.

In light of this admission, Sussman's production of files relating to only 45 Timeshare Clients appeared suspicious.   Indeed, the production contained only 40 timeshare description sheets and eight deeds allegedly prepared on behalf of Timeshare Clients.  Under oath, Sussman was forced to concede that he had not actually produced all documents responsive to OLCC's discovery request— as he represented to the Court during the September 26, 2018 hearing. *Id.* at 30:4-20.   Sussman admitted, for example, that he did not produce responsive emails, bank records, or documents held by his staff. *Id.* at 64:1-7; 66:13-20; 168:6-12.  Most shockingly, Sussman failed to even properly search the paper and electronic records within his possession, custody or control.  *Id.* at 25-26; 31:2-5.   Based on these discovery deficiencies, on November 1, 2018, counsel for OLCC mailed Sussman's counsel a ten-page letter outlining the deficiencies in his responses to the First and Second Requests for Production and requesting supplementation by November 9, 2018.  Ex. 8.

On November 8, 2018, Sussman served supplemental responses to Plaintiffs' Second Request for Production. Ex. 9.  In those responses, Sussman conceded that he had not produced all responsive documents and even raised new objections to justify his refusal to comply with his discovery obligations.  In addition to raising new objections, the supplemental responses assert that Sussman will be producing additional documents "in possession of independent contractors."  No additional documents have been received to date. On November 20, 2018, OLCC's counsel conferred with Sussman's new counsel on the discovery deficiencies outlined in the November 8, 2019 letter.  Because counsel had been recently retained, she was not able to provide any substantive response.

## II.    APPLICABLE LAW

"The purpose of discovery is to require disclosure of relevant information so that the resolution of the civil action is based upon a full and accurate understanding of the facts." *Lesti v. Wells Fargo Bank NA*, 297 F.R.D. 665, 666 (M.D. Fla. 2014).  Requests to produce can be directed to any document or thing in the possession, custody, or control of the opposing party.  Fed. R. Civ. P. 34 (a)(1).  The responding party cannot furnish only that information within its immediate knowledge or possession.  *Gray v. Faulkner*, 148 F.R.D. 220, 223 (N.D. Ind. 1992).  Instead, that party has an affirmative obligation to seek and produce "information reasonably available to him from his employees, agents, or others subject to his control." *Id.*     Federal courts interpret the term "control" broadly and do not require that the responding party "have legal ownership or actual physical possession of the documents at issue."  *Costa v. Kerzner Intern. Resorts, Inc.*, 277 F.R.D. 468, 471 (S.D. Fla. 2011).  For discovery purposes, litigants are in "control" of the documents they have the "right, authority, or practical ability to obtain . . . on demand." *Id.* (citing *Desoto Health &*

*Rehab, L.L.C. v. Philadelphia Indem. Ins. Co.*, 2:09-CV-599-FTM-99S, 2010 WL 4853891, at *3 (M.D. Fla. Nov. 22, 2010); *see also Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984).

Courts consider a variety of factors in determining whether the a party has control over records held by a nonparty, including (1) the nonparty's connection to the transaction at issue in the litigation; (2) the degree to which the nonparty will benefit from the outcome of the case; and (3) whether the entities exchange documents in the ordinary course of business. *Costa*, 277 F.R.D. at 470-471; *In re Takata Airbag Prods. Liab. Litig.*, 15-02599-MD, 2017 WL 8812733, at *3 (S.D. Fla. Feb. 16, 2017) ("*Costa* merely identified specific evidentiary factors that could be used to evaluate "control" under the *Searock* standard."). "These considerations, which focus on the degree of closeness between the respective entities, essentially justify the finding of the requisite 'control' on principles of agency and the alter ego doctrine." *Silver v. Tenet Health Care Corp.*, 09-80365-CIV, 2010 WL 11444064, at *4 (S.D. Fla. Aug. 6, 2010). Accordingly, for purposes of discovery, litigants are deemed to have "control" over those current and former employees they continue to compensate. *In re Folding Carton Antitrust Litig.*, 76 F.R.D. 420, 423 (N.D. Ill. 1977). As such, litigants have an obligation to contact former employees who may have responsive documents. *Selectica, Inc. v. Novatus, Inc.*, 6:13-CV-1708-ORL-40, 2015 WL 1125051, at *5 (M.D. Fla. Mar. 12, 2015).

Because control focuses on the closeness of the relationship between the non-party and the litigant, the requisite level of control can arise from a contractual provision or a statutory obligation. *F.T.C. v. Sterling Precious Metals, LLC*, 12-80597-CIV, 2013 WL 1442180, at *8 (S.D. Fla. Apr. 9, 2013)(compelling production of documents held by the defendant's website host); *Flagg v. City of Detroit*, 252 F.R.D. 346, 355 (E.D. Mich. 2008)(finding that contractual confidentiality provision that prohibited disclosure of documents constituted "acknowledged power" that "constitutes 'control' within the meaning of Rule 34(a)(1)"); *Tomlinson v. El Paso Corp.*, 245 F.R.D. 474, 477 (D. Colo.

2007)(finding that statutory record keeping obligations granted employer "control" over data held by third-party pension administrator).

In assessing the requisite level of control, courts should "closely examine" the relationship between the parties to ward off "sharp practices, inequitable conduct, or other false and misleading actions" meant to obscure the search for truth that is the basis of our legal system. *Uniden Am. Corp. v. Ericsson Inc.*, 181 F.R.D. 302, 306 (M.D.N.C. 1998). Indeed, "[t]he withholding of evidence 'substantially prejudices an opposing party by casting doubt on the veracity of all of the culpable party's submissions throughout litigation.'" *Freddie v. Marten Transport, Ltd.*, 428 F. App'x 801, 804 (10th Cir. 2011). Under such circumstances, the requesting party is "forced either to attempt independent corroboration of each submission, at substantial expense of time or money, or to accept the possibility that every document or statement submitted by [Defendant] is incomplete or inaccurate." *Id.* (internal quotation omitted).

To avoid this scenario, Federal Rule of Civil Procedure 37(b)(2) grants the court broad authority in sanctioning a party for failure to comply with a court order to provide discovery. *See* Fed. R. Civ. P. 37(b)(2)(A); *Gratton v. Great Am. Commc'n*, 178 F.3d 1373, 1374 (11th Cir. 1999). Rule 37 authorizes a court in such a situation to "issue further just orders," which may include striking the pleadings and prohibiting a disobedient party from opposing a claim or asserting a defense" Fed. R. Civ. P. 37(b)(2)(A)(1). The authority to sanction bad faith litigation misconduct stems, not only from Rule 37, but also from the Court's inherent authority. *Quiroz v. Superior Bldg. Maint., Inc.*, 06-21594-CIV, 2008 WL 3540599, at *5 (S.D. Fla. Aug. 12, 2008).

Although dismissal is a harsh sanction, it is appropriate were "the record clearly reflect[s] a willful pattern of delay and obstruction of the orderly progress of the case" and no lesser sanction would ensure compliance with court orders. *United States v. One 2004 2'' Angler Vessel*, 206CV-

671-FTM-29SPC, 2008 WL 360603, at *1 (M.D. Fla. Feb. 8, 2008). In addition, litigants who deny

having documents responsive to a request can be required to describe "the search conducted 'with

sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and

exercised due diligence.'" *On Demand Direct Response, LLC v. McCart-Pollak*, 2:15-CV-01576-

MMDNJK, 2018 WL 2014066, at *1 (D. Nev. Apr. 30, 2018*); see also CC-Aventura, Inc. v. The

Weitz Co., LLC*, 06-21598-CIV, 2008 WL 828117, at *3 (S.D. Fla. Mar. 27, 2008).

## III.   FIRST REQUESTS FOR PRODUCTION

**REVISED RFP 1:**   Documents relating to Sussman's provision of services to
Timeshare Clients.[2]

**RESPONSE:**   Notwithstanding the objections, and based upon clarification of the
limits of the request, all documents have been produced.

Defendant's discovery response is improper as it fails to identify the documents that are

responsive to this request. *Gutescu v. Carey Intern., Inc.*, 01-4026 CIV, 2003 WL 25589035, at *4

(S.D. Fla. June 24, 2003). In addition, Defendant's production is not fully responsive to this request.

Indeed, the production only contains documents relating to 45 owners of OLCC timeshare interest

("Timeshare Clients"). This scant production does not address even half of the 132 Timeshare

Clients TET claims are represented by Sussman in this case. The production does not include the

demand letters Defendant prepared on behalf of the Timeshare Owners—which are relevant in this

case. While Sussman asserts he lost his client files as a result of a computer crash in 2016, it is

implausible that he does not have the files of the clients that he currently represents.

Second, Orange County, FL public records alone show several quitclaim deeds recorded in

2018 that were excluded from Defendant's production. Ex. 11. The deeds were prepared by Florida

---

[2]   In response to each request, Sussman asserted lengthy boilerplate objections. The requests at
issue and the complete responsive to each are listed on a separate document, attached hereto as
Ex. 9.

lawyers James Klohn and Daniel Stern upon the instruction of Sussman and recorded by the Sussman's staff.  Ex. 7, Sussman Dep. 255:3-6 ("Q. And would one of your associates be sending Mr. Klohn e-mails with the various information required for him to be able to prepare and record those deeds? A. Correct."); *see* Ex.13, Local Counsel Agreement, ¶ 1 (e) (establishing that Sussman recorded the deeds).  Even though these deeds were recently recorded, Sussman did not produce the documents he reviewed or prepared relating to these quitclaim deeds all the while falsely claiming under oath that all responsive documents had been produced.  Ex. 7, Sussman Dep. 30:4-20. Sussman's 2016 computer crash does not excuse Sussman's failure to produce documents and communications relating to these 2018 deeds.

Third, Sussman must also be compelled to conduct a proper search of his own emails and electronic files. The cursory inspection Sussman described during his deposition—which was limited to a search bearing the word "Orange Lake"—falls below the "reasonableness" standard required to comply with Rule 34. *Compare* Ex. 7, Sussman Dep. 31:2-8, *with Alexander v. F.B.I.*, 194 F.R.D. 316, 326 (D.D.C. 2000)(compelling search of electronic files based on relevant search terms).  Not only did Sussman fail to diligently search the records within his control, he also deliberately chose to exclude critical responsive documents, which include the e-mails memorializing the work he or his staff conducted on behalf of Timeshare Clients. Ex. 7, Sussman Dep. 64:1-14.  Those documents are squarely responsive to this request and must be produced.

Fourth, Sussman failed to search for responsive records held by his staff.  It is undisputed that Sussman hires legal and non-legal personnel to perform work on behalf of Timeshare Clients and whether *he* considers them "independent contractors" or regular "employees" is immaterial to OLCC.  *Id.* at 187-188; 222:11-19 ("Q. You refer to your firm as Mitchell Reed Sussman & Associates, correct? A. Correct. . . . . Q.  When you're referring to the word "associates," who is it

that you're referring to? A. The ongoing list of people that assist me."); 20:18-20 ("I only have 1099 independent contractors.  That was something that I established when I first got out of law school and could not afford a secretary.").  Sussman relies on these "associates" to execute the strategy he devises based on his "initial analysis" of the case.  *Id.* at 117-118.[3]  Their functions include preparing and sending form demand letters on Sussman's letterhead and signature, and recording the fraudulent deeds that are at the center of Plaintiffs' tortious interference claims.  *Id.* at 191:8-14; 346:4-16.  They also communicate with the Florida lawyers Sussman hires to prepare quitclaim deeds and.  Ex. 12, M. Sussman email to W. Williams (7/31/2018).

Because these associates conduct the work of Sussman's law firm, but Sussman has steadfastly refused to produce the documents in the associates' possession, his claim that all responsive documents have been produced is grossly disingenuous.  Ex. 7, Sussman Dep. 30: 9-20; 117-118.  These individuals continue to receive compensation from Sussman and carryout his business functions, which includes preparing and mailing demand letter under the Law Firm's letterhead.  In fact, Sussman claims that at least one of these staff members already agreed to produce responsive documents upon Sussman's request.  *Id.* at 29:13-23 (staff member Jeff Murphy provided some of the documents produced in discovery).  Sussman also has the right to obtain materials from his legal and non-legal personnel given the oversight ethical rules require him to exercise over the associates.  *See* CA R. Prof'l Cond. 5.3 (b) ("A lawyer having direct supervisory authority over the nonlawyer, whether or not an employee of the same law firm, shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer."); *id.* 5.1 (b) ("A lawyer having direct supervisory authority over another lawyer, whether or not a member or

---

[3] The non-legal personnel that assists Sussman and his Law Firm are Yanni Buckley, Steve Peyton, Leslie Benjamin, Raul Martinez, Jeffrey Murphy, Andrea Estrada, J. Alex Gomez, Tom Stanford, Terry Durst, Fawn Weaver, Terry Dust, Miriam Goldstein, Evan Laird, Jeffrey Corcoran, A.J. Underwood, and James Sibila. Ex. 7, Sussman Dep. 305-306.

employee of the same law firm, shall make reasonable efforts to ensure that the other lawyer complies with these rules and the State Bar Act."); Restatement (Third) of Law Governing Lawyers (2000) § 46 ("On request, a lawyer must allow a client or former client to inspect and copy any document possessed by the lawyer relating to the representation.").

Sussman has also refused to produce documents relating to two of the "associates" that are central to this case: Tom Stanford and Jose Alex Gomez.  Since at least 2015, Gomez has been heavily involved in Sussman's timeshare practice.  Not only was Gomez leading the effort to prepare the fraudulent quitclaim deeds at issue in this case, but he was also one of the straw owners that accepted ownership of timeshare interests knowing he would not pay the associated obligations. *See* Ex. 12 and 14.  Stanford also worked for Sussman for years and benefited from the fraudulent deeds Sussman recorded.  Ex. 15.  Even though Gomez and Stanford were Sussman's "associates" until just a month before this lawsuit was filed, Sussman did not contact either of them to request records responsive to OLCC's requests. Ex. 7, Sussman Dep. 29:11-23.  Sussman's discovery obligations require that he attempt to contact these (and all other) current and former associates to obtain documents responsive to OLCC's requests.  *Novatus, Inc*., 2015 WL 1125051 at 5; Ex. 7, Sussman Dep. at 165:14-25, 166:1-13.

Sussman has also failed to produce the checks, invoices, and 1099 Misc Forms that memorialize the payments Defendant issued to each and every one of the legal and non-legal personnel he hired to conduct work on behalf of Timeshare Clients. Sussman has a right to demand the banking and tax records that are responsive to this request. *See De Armas v. Miabraz*, LLC, 12-20063-CIV, 2012 WL 13014669, at *1 (S.D. Fla. Aug. 23, 2012).

> **<u>REVISED RFP 36</u>**: All correspondence or communications between You and any of the other Defendant regarding Timeshare Clients, including in connection with services provided in relation to any of the Plaintiffs.

**RESPONSE**: Defendant further states that no such documents have ever been in Defendant's possession or control.

Sussman's claim that he has no documents responsive to this request is contradicted by his deposition testimony and other documents obtained to date. As explained in connection with RFP 1, Sussman has the requisite control over the documents held by his staff and must produce them immediately. In addition, during his deposition, Sussman conceded that he decided to withhold all the responsive email communications and produced only the documents attached to those correspondences. Ex. 7, Sussman Dep. 64:1-14. The email communications that Sussman chose to withhold are responsive to Plaintiffs' request and must be produced.

In addition, during his deposition, Sussman identified Jeff Murphy as the "associate" or "staff" member assigned primarily to work with TET. Ex. 7, 119:1-25. Despite this concession, Sussman did not produce all relevant records in Murphy's possession. Sussman abdicated his responsibilities and, as he testified, allowed his staff to decide which documents to produce in response to OLCC's discovery requests. *Id.* at 167-168. Sussman's production includes one email Murphy exchanged with TET regarding a Timeshare Client. Ex. 16. Murphy generated this email from an AOL account and copied Sussman to his Gmail and AOL-based email accounts. These are cloud-based systems that could not be affected by Sussman's 2016 computer crash. Sussman's failure to diligently and reasonably search for responsive records constitutes a violation of the requirements of Rule 34 and the Court's Orders compelling discovery. Sussman must assume his discovery obligations and supplement his production immediately.

**RFP 43:** All Documents evidencing Your Timeshare Clients who are or were a member of or have or had a contract with any of the Plaintiffs for the last 5 years.

**RESPONSE:** Notwithstanding the objections, all documents have been produced.

Sussman's discovery responses are improper as they fail to identify the documents contained in Defendant's production that are responsive to OLCC's requests. *Gutescu*, 2003 WL 25589035, at

*4.   Nevertheless, the production does not fully respond to these requests.   Defendant's initial production contains a 241-page client list.   Defendant did not produce the list in native format and, in the process of converting the document to PDF, altered the format of the list rendering it unreadable. Plaintiffs are entitled to the native format version of Defendant's purported client list—which Defendant possesses.   Ex. 7, Sussman Dep. 153:11-14.   *Teledyne Instruments, Inc. v. Cairns*, 6:12-CV-854-ORL-28, 2013 WL 5781274, at *9 (M.D. Fla. Oct. 25, 2013).   Defendant's extensive client list also reveals that he has not produced all records and communications relating to Timeshare Clients.    Indeed, the October 1 production that was served concurrently with the amended supplemental responses, relates to only 45 of the hundreds of Timeshare Clients at issue in this case.

As explained in connection with RFPs 1 and 36, Sussman's alleged 2016 computer crash does not justify his failure to satisfy his discovery obligations.   Indeed, the production lacks any records relating to the quitclaim deeds he recorded in 2018.   *See* Ex. 11.   The deficiencies in Sussman's production are simply the result of his failure to properly search his paper and electronic records for the documents responsive to these requests. As he admitted during his deposition, ***Sussman's search was limited only to documents he could easily identify*** as relating to Orange Lake.   Ex. 7, Sussman Dep. 31:2-8.   In addition, as explained in response to RFPs 1 and 36, Sussman has an obligation to produce the records held by his associates and agents (such as the local lawyers), including the correspondence, deeds, and other records relating to Timeshare Clients.

> **RFP 44**: All records, communications, and files relating to any Timeshare Client who was a member of or had a contract with any of the Plaintiffs.
>
> **RESPONSE:** Notwithstanding the objections, all documents have been produced.
>
> **RFP 45:** All correspondence or communications between You and any of the other Defendant regarding Timeshare Clients, including but not limited to any efforts to solicit or retain Timeshare Clients.
>
> **RESPONSE:** Defendant further states that no such documents have ever been in Defendant's possession.

Defendant's assertion that he has produced all responsive records is contradicted by his deposition testimony and the evidence discussed in connection with RFPs 1, 36, and 43 above. Indeed, Defendant's production does not contain any records regarding the majority of the 132 Timeshare Clients TET claims Sussman has represented.  In addition, Sussman cannot seriously contend that he does not have control over the responsive documents in his associates' possession. Murphy, the associate Sussman assigned to work with TET, still works for Sussman and even assisted him in producing responsive documents.  Even though he had access to these records, Sussman only produced one email between Murphy and TET. Ex. 16; Ex. 7, Sussman Dep. 29:13-23.  Sussman deliberately continues to withhold the responsive documents each time asserting a new excuse and improper objection. Ex. 7, Sussman Dep. 64:1-14.  It is evident that Sussman will not comply with this Court's Orders.

> **RFP 52:** All documents relating to Your total profits for the last 5 years from services to Timeshare Clients.

> **RESPONSE**: Defendant further states that such documents have never been in Defendant's possession or control.

As explained on the first motion to compel, OLCC is entitled to information regarding Sussman's profits (including income statements, balance sheets and/or general ledgers, tax records, wire transfer records, and cancelled checks).  To stonewall discovery, Sussman has asserted that he is not in possession of any responsive documents.  This claim is contradicted by Sussman's deposition testimony in which he admitted that (1) he has a bank account into which TET wires all payments; and (2) he prepares 1099's for each staff member that works for him.  Ex. 7, Sussman Dep. 66:7-25; 257: 7-10.  After acknowledging these records existed, Sussman testified that he did not produce these financial records because he did not believe they were responsive to OLCC's requests. Ex. 7, 66-67.  Sussman's decision to withhold these responsive documents is inexcusable.

IV.     **SECOND REQUEST FOR PRODUCTION**

**RFP 2:** The Documents Rein Hein & Associates, LLC d/b/a Timeshare Exit Team sent You regarding Timeshare Clients, including Timeshare Clients Stanley Sellakumar, Jacques Legros, and Lynn Trepanier.

**RESPONSE:** After a diligent search and reasonable inquiry[,] responding party has been able to locate certain documents which are attached to this response.

**SUPP. RESPONSE**:  In addition, responding party will produce documents relating to Orange Lake since January 1, 2013, including those in possession of independent contractors that are still doing work for defendant.

After originally representing that all responsive documents had been produced, Sussman served supplemental discovery responses on November 8, 2019.  In those responses, Sussman conceded that responsive documents had yet to be produced.  Ex. 9.  Sussman attempts to justify his previous misrepresentations by asserting that the responsive documents are in the custody of his staff. Sussman's explanation does not justify his misrepresentations to the Court and failure to timely produce responsive documents.  Indeed, under Rule 34, Sussman has an obligation to produce all documents he can obtain on demand.  *Costa*, 277 F.R.D. at 471.  In addition, the discovery requests, make clear that Sussman includes "Mitchell Reed Sussman d/b/a Mitchell Reed Sussman & Associates, the individual, and/or any agents or representatives, including, without limits, any partners, managers, consultants, employees, and/or other related persons or entities acting, or purporting to act, on his behalf." Ex. 17.

**RFP 31**:  Documents sufficient to identify all payments You received from any timeshare termination company.

**RESPONSE**: Defendant has no such documents.

Sussman's claim that he does not have control over responsive documents is inaccurate. During his deposition, Sussman testified that TET paid his fee in full via wire transfer every time it referred him a Timeshare Client to Sussman. *Id.* at 178:1-9.  Sussman has a right to demand the banking and tax records that are responsive to this request. *See De Armas,* 2012 WL 13014669, at *1.

**RFP 40:** All deeds that either You recorded or that were recorded at Your direction for Timeshare Clients, as described in paragraph 28 of the Declaration attached hereto as Exhibit A.

**RFP 41:** For each deed produced in response to Request for Production No. 40, please produce all Communications with the Timeshare Client advising of the transfer.

**RFP 42:** For each deed produced in response to Request for Production No. 40, please produce the Documents reflecting the grantee's acceptance of the conveyance and its corresponding obligations.

**RESPONSE:** Without waiving said objection, in response to Request 2, responding party produced all documents relating to Plaintiff's, whether client was sent over by TET or any other exit company, in responding party's possession and control. Included in these documents are all copies of deeds recorded at the direction of the responding party.

**SUPP. RESPONSE:** As a supplemental response, responding party will produce documents in possession of independent contractors that are still doing work for defendant.

In response to these requests, Sussman produced 1,245 that contain only eight deeds, recorded and in draft form, and no communications responsive to either requests 41 or 42. This production is patently deficient in light of the list produced in response to RFP 3 above, which purports to identify thousands of Timeshare Clients Sussman claims to have represented. Furthermore, Sussman did not produce the deeds that he recorded in 2018, which could not possibly have been affected by the 2016 computer crash. Ex. 10. The deeds were prepared by Florida lawyers James Klohn and Daniel Stern and recorded by Sussman's staff. Ex. 7, Sussman Dep. 255:3-6; *see* Ex.12, Local Counsel Agreement, ¶ 1 (e). Even though these deeds were recently recorded, Sussman did not produce the responsive documents and communications all the while falsely claiming under oath that all responsive documents had been produced. Ex. 7, Sussman Dep. 30:4-20. For the reasons stated in response to First RFPs, 1, 36, 43, 44 and Second RFPs 2, 40, 41, and 42, fully incorporated herein, Sussman's failure to produce the responsive records is not justified by his claim that the documents are in possession of his staff.

**RFP 48**:  All Communications between You and any local counsel You retained to prepare and record deeds purporting to return the timeshare interest back to the developer, as described in paragraphs 29-30 of the Declaration attached hereto as Exhibit "A."

**RESPONSE**: Subject to and without waiving said objection, responding party has produced examples of local lawyers and their local counsel agreement in response to requests no. 8, 13-18.

**SUPP. RESPONSE**: As a supplemental response, responding party will produce documents in possession of independent contractors that are still doing work for defendant.

In response to this request, Sussman produced six pages of e-mail communications with Florida lawyer Summer Williams and nothing else.  Ex. 11.  Sussman's six-page production is patently deficient. In addition, in a separate lawsuit, Sussman produced an email exchange between him and local lawyer Daniel Stern that is also omitted from Defendant's production in this case. Ex. 19.  Demonstrably, Defendant has deliberately withheld documents all the while representing to the Court that he has complied with his discovery violations.   These discovery abuses, which Sussman attempts to camouflage by creating a non-existing division between himself and his staff, have impeded the discovery in this action.

**RFP 49**: All contracts and Documents reflecting the terms of Your agreement with the local counsel You retained to prepare and record deeds, as described in paragraphs 29-30 of the Declaration attached hereto as Exhibit "A."

**SUPP. RESPONSE**: As a supplemental response, responding party will produce documents in possession of independent contractors that are still doing work for defendant.

As has been borne out through discovery, one of the improper means Sussman used in his scam was the preparation of fraudulent quitclaim deeds that purported to transfer timeshare interest away from the Timeshare Client and into the hands of a straw owner or back to the developer, without securing the developer's consent.  The Florida lawyers that Sussman hired to prepare these quitclaim deeds are key witnesses in this case.  But, to conceal their identity, Sussman has

consistently refused to produce documents responsive to Plaintiffs' request, including the Local Counsel Agreement that establish the terms of Sussman's relationship with these Florida lawyers.

Indeed, Sussman's production includes only those contracts that Sussman executed with James Klohn, Summer Williams, and Daniel Stern—the Florida lawyers OLCC had already identified through discovery and which were specifically identified in the Second Request for Production. Unjustifiably absent from Sussman's production are the contracts Defendant executed with Gerardo Ortega and Robert Kerr—the Florida lawyers Defendant identified during his deposition. Most alarming, however, is Sussman's failure to identify and produce any documents relating to Florida lawyer Jessica Most, who prepared quitclaim deeds for Sussman throughout 2017. Ex. 20. Indeed, OLCC only learned of Most's involvement after canvassing public records—an onerous and time-consuming task that would not be necessary absent Sussman's bad faith discovery practices. *See Freddie*, 428 F. App'x at 804.

Instead of producing the responsive records, Sussman has improperly relied on relevancy objections that he falsely represented to the Court were not limiting his production. Ex. 1, Hr'g Tr. 110:1-18. Even assuming Sussman could assert a valid objection, he waived this right by timely failing to respond to discovery. DE 179; *Third Party Verification, Inc. v. SignatureLink, Inc.*, 606CV-415-ORL-22DAB, 2007 WL 1288361, at *2 (M.D. Fla. May 2, 2017). Nevertheless, the requested documents are relevant because the basis of this lawsuit is the conspiracy between Sussman and TET to unjustifiably interfere with OLCC's contracts. Sussman has no basis to withhold the documents responsive to this request.

> **RFP 54**: All letters You sent to timeshare developers withdrawing your representation of Timeshare Owners.
>
> **RESPONSE**: Subject to and without waiving said objection, responding party has produced an example of such letter.

Despite representing to the Court that he had fully complied with his discovery obligations, Sussman's production does not include documents responsive to this request. Instead, Sussman self-servingly opted to produce only an example of the requested letters that relates to Timeshare Client OLCC had already identified through discovery. Sussman must produce all responsive documents immediately and, in doing so, must conduct a reasonable search for the paper and electronic records within his control—including the documents held by his staff.

> **RFP 55**: All powers of attorneys and special powers of attorneys executed by Timeshare Clients.

> **RESPONSE**: Subject and without waiving said objection, responding party has produced an example of a Special Power of Attorney.

Defendant's belated objection to this request is improper. Not only has Defendant waived all relevancy objections, but the requested powers of attorneys are a key piece of evidence in this action. *See* DE 214. Defendant's unilateral decision to produce only one example of the requested powers of attorneys is improper and is a blatant failure to comply with his discovery obligations.

> **RFP 60**: Documents sufficient to identify all payments made by You to any attorney or law firm You retained or instructed to prepare and record deeds transferring timeshare interest back to developers.

> **RESPONSE**: Without waiving said objection, after a diligent search and reasonable inquiry there are no documents which identify all payments. Responding party will, however, produce a representative document payable to attorney Andre Young.

Sussman's failure to produce the documents responsive to this request is inexcusable in light of his deposition testimony in which he confirmed that all the local lawyers provided invoices memorializing their work. Ex. 7 187:-16. If Sussman did not physically possess the responsive invoices, he had to request them from the lawyers. *See Costa*, 277 F.R.D. at 471. Some of those lawyers have already produced some invoices in response to the subpoenas. Ex. 21. Sussman also had an obligation to produce the checks and 1099 forms that corroborate the payments he made. *Id*. 257:7-11; *see De Armas,* 2012 WL 13014669, at *1.

**RFP 77**: Snapshots of all attorney listings relating to Your practice, as described in paragraph 12 of the Declaration attached hereto as Exhibit "A."

**RESPONSE:**  Responding party objects to this request on the grounds that it requires responding party to take snapshots.  He is not a cameraman.

In this request, OLCC asks that Sussman produce copies of the attorney listings in which he repeatedly claims to have promoted his law practice.  Ex. 7, 1-13. Sussman objects to this request claiming he lacks the technical knowledge required to preserve and produce this information.  This is an improper objection that Sussman has waived.  *SignatureLink, Inc.*, 2007 WL 1288361, at *2.

## V.  SUSSMAN SHOULD BE SANCTIONED FOR FAILING TO COMPLY WITH THE   COURT'S DISCOVERY ORDER AND COMPELLED TO PRODUCE THE REQUIRED DISCOVERY

Federal Rule of Civil Procedure 37(b)(2) grants the court broad authority in sanctioning a party for failure to comply with a court order to provide discovery.  *See* Fed. R. Civ. P. 37(b)(2)(A); *Gratton v. Great Am. Commc'n*, 178 F.3d 1373, 1374 (11th Cir. 1999).  Rule 37 authorizes a court in such a situation to "issue further just orders," which may include striking the pleadings and prohibiting a disobedient party from opposing a claim or asserting a defense." Fed. R. Civ. P. 37(b)(2)(A)(1).  The authority to sanction a litigant that engages in bad faith litigation misconduct stems, not only from Rule 37, but also from the Court's inherent authority.  *Quiroz v. Superior Bldg. Maint., Inc.*, 06-21594-CIV, 2008 WL 3540599, at *5 (S.D. Fla. Aug. 12, 2008) (Courts have discretion to dismiss an action, "which is appropriately exercised particularly where a party commits perjury or . . . doctors evidence' that 'relates to the pivotal or 'linchpin' issue in the case.'").

Although dismissal is a harsh sanction, it is appropriate were "the record clearly reflect[s] a willful pattern of delay and obstruction of the orderly progress of the case" and no lesser sanction would ensure compliance with court orders.  *United States v. One 2004 26' Angler Vessel*, 206CV-671-FTM-29SPC, 2008 WL 360603, at *1 (M.D. Fla. Feb. 8, 2008).  Here, Sussman repeatedly flouted the Courts Orders and falsely affirmed under oath that he has complied with their discovery

obligations.  The documents Sussman has lied about producing reflect the work that he or his office performed for the timeshare owners at issue, including the preparation, execution, and recording of unlawful deeds, and his subsequent false statements to those timeshare owners that they no longer owed any legal or financial obligations to Plaintiffs.  Sussman's sworn testimony is proven false by Defendant's supplemental responses to the Second RFP and the documents OLCC has obtained by issuing subpoenas and combing the public records.

Sussman cannot blame his discovery violations on a "misunderstanding" or inadvertent omission.  Sussman himself was present during the September 26, 2018 during which he represented to the Court that all responsive records had been produced.  Ex. 1, Hr'g Tr. 110:1-8.).  Perhaps the most poignant evidence of Sussman's resolve to obstruct discovery is his failure to produce the documents held by his staff.  In light of the four discovery motions and meet and confer letters in which OLCC explained the scope of its discovery requests, Sussman's refusal to produce responsive documents is inexcusable.  Indeed, Sussman has failed to produce the baseless demand letters and other documents that prove he knowingly stated false basis upon which Timeshare Owners can cancel their contracts and, thereby, lured Timeshare Owners to default on their contracts.

In addition, Sussman's refusal to produce the contracts, documents, and communications he exchanged with the local lawyers he hired to prepare the quitclaim deeds that are at the center of this case is flagrant discovery violation and reprehensible given that Sussman himself, a licensed attorney, was present during the September 26, 2018 in which he misrepresented to the Court that all responsive documents had been produced.   Sussman's discovery violations cast doubt upon the veracity of his submissions through this litigation.  *Freddie*, 428 F. App'x at 804.  Not only has this forced OLCC to expend substantial resources to comb public records and issue subpoenas to

corroborate Sussman's discovery responses, but they also demonstrate that Sussman will not comply with his discovery obligations and will continue to raise improper objections and defy Court Orders.

Should the Court find a lesser sanction is appropriate, the Court should deem admitted that Sussman (1) engaged in unlawful and ineffective exit strategies and then falsely instructed the affected timeshare owners—or instructed TET who instructed the owners—that they did not owe any legal or financial obligations to Plaintiffs, (2) provided that false instruction intending that the owners rely on that false instruction and breach their contractual obligations, and (3) was not acting as an agent or on behalf of TET or the owners at issue.  This would be an appropriate sanction because the documents that Sussman has lied about producing and refused to produce in violation of multiple prior Court orders include the documents that would allow Plaintiffs to establish these allegations.

In addition, the Court should order Sussman to produce, within 5 days of the entry of an Order on this Motion, the following documents in Sussman's possession, or the possession of his associates and deed attorneys:

- Electronic version of Sussman's client list, which admittedly exists in native format;

- All communications between Sussman and TET relating to their relationship in general and the timeshare owners at issue;

- All documents Sussman obtained from TET;

- All communications between Sussman and deed attorneys;

- All documents Sussman obtained from the deed attorneys;

- All letters of representation or letters of resignation Sussman prepared for the timeshare owners at issue;

- All communications between Sussman and the timeshare owners at issue, whether direct or through TET, and including notices of completion of exit;

- All executed and recorded deeds Sussman procured for the timeshare interests;

- All communications between Sussman and his "associates" regarding the timeshare owners at issue;

- Sufficient bank statements, cancelled checks, and wire transfers evidencing fees Sussman earned from providing services to the owners at issue;

- Sufficient IRS Form 1099, checks, bank statements, and invoices evidencing Sussman's payments to associates who performed work for the owners at issue;

- Sufficient IRS Form 1099, checks, bank statements, and invoices evidencing Sussman's payments to deed attorneys who performed work for the owners at issue; and

- All Local Counsel Agreement Defendant executed with any lawyer who prepared deeds on behalf of Timeshare Clients;

In supplementing his production, Defendant must be compelled to search and produce relevant records in possession of their vendors as well as current and former staff. *F.T.C.*, 2013 WL 1442180; *Novatus, Inc.*, 2015 WL 1125051. Because Defendant has disregarded three Orders requiring the production of these documents, the Court should require Sussman to submit a declaration describing the search conducted for responsive records and whether he has reason to believe additional responsive documents exist that have not been produced. *CC-Aventura, Inc. v. The Weitz Co., LLC*, 06-21598-CIV, 2008 WL 828117, at *3 (S.D. Fla. Mar. 27, 2008).

## VI.    REQUEST FOR ATTORNEY'S FEES PURSUANT TO FRCP 37(a)(5)(A)

Finally, the Court should award, against both Sussman and his counsel, the attorneys' fees that Plaintiffs reasonably incurred in making this Motion. Federal Rule of Civil Procedure 37(a)(5) provides that if a motion to compel is granted, the Court must award the movant the reasonable costs it incurred in making the motion unless the noncompliance was substantially justified. Here, there is no substantial justification for Sussman's failure to comply. An award of attorneys' fees is particularly appropriate here considering this is Sussman's failure to comply with a Court Order.

## CONCLUSION

Plaintiffs request that the Court enter an order that (1) strikes Defendant's Answer and Affirmative Defenses [DE 217]; or (2) deems admitted that Sussman (a) engaged in unlawful and ineffective exit strategies and then falsely instructed the affected timeshare owners—or instructed

TET who instructed the owners—that they did not owe any legal or financial obligations to Plaintiffs, (b) provided that false instruction intending that the owners rely on that false instruction and breach their contractual obligations, and (c) was not acting as an agent or on behalf of TET or the owners at issue.  Plaintiffs also respectfully request that the Court order that Sussman produce all documents in his possession or his associates' position that are responsive to the First and Second Requests for Production within 5 days of the entry of an Order on this Motion; that Sussman submit to a second deposition to address documents not previously produced,; (5) that Defendant to submit a declaration describing the search conducted for responsive records and whether he has reason to believe responsive documents exist; (6) sanctions Defendant in the amount of the fees Plaintiffs reasonably incurred in having to file this Motion; and (7) awards further relief the Court deems just and proper.

DATED this 21th of November, 2018        Respectfully submitted,

By:     */s/ Jeffrey A. Backman*
        RICHARD W. EPSTEIN
        (Trial Counsel)
        Florida Bar No. 229091
        JEFFREY A. BACKMAN
        Florida Bar No. 662501

        GREENSPOON MARDER, LLP
        201 E. Pine Street
        Orlando, FL  32801
        (407) 425-6559

        and

        200 E. Broward Blvd., Suite 1800
        Ft. Lauderdale, FL  33301
        (954) 491-1120
        richard.epstein@gmlaw.com
        jeffrey.backman@gmlaw.com

## **GOOD FAITH CONFERENCE CERTIFICATION**

Pursuant to Local Rule 3.01(g), undersigned counsel for OLCC certifies that, as detailed above (p. 6), undersigned counsel for OLCC and counsel for Sussman conferred regarding the subject of this Motion.

          */s/ Jeffrey A. Backman*
          JEFFREY A. BACKMAN

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that I have filed the foregoing with the Clerk of Court via CM/ECF this 21th day of November, 2018. I further certify that any party that enters an appearance in this matter will receive a copy of this document via CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notice of Electronic Filing.

          */s/ Jeffrey A. Backman*
          JEFFREY A. BACKMAN