**IN THE UNITED STATES DISTRICT COURT OF
THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

ORANGE LAKE COUNTRY CLUB,
INC., a Florida corporation, and  WILSON
RESORT FINANCE, L.L.C., a Delaware
limited liability company,

               Plaintiffs,

v.

REED HEIN & ASSOCIATES, LLC d/b/a
TIMESHARE EXIT TEAM; MITCHELL
REED  SUSSMAN  d/b/a  MITCHELL
REED SUSSMAN & ASSOCIATES; and
SCHROETER GOLDMARK & BENDER,
P.S., BRANDON REED, TREVOR HEIN,
and THOMAS PARENTEAU,

               Defendants.

_____/

CASE NO.: 17-cv-01542-GAP-DCI

**THIRD AMENDED COMPLAINT
FOR DAMAGES AND INJUNCTIVE RELIEF**

      Plaintiff ORANGE LAKE COUNTRY CLUB, INC., a Florida corporation, and

Plaintiff WILSON RESORT FINANCE, L.L.C., a Delaware limited liability company,

file this Third Amended Complaint against Defendants REED HEIN & ASSOCIATES,

LLC d/b/a TIMESHARE EXIT TEAM, a Washington corporation; MITCHELL REED

SUSSMAN d/b/a MITCHELL REED SUSSMAN & ASSOCIATES, an individual;

SCHROETER GOLDMARK & BENDER, P.S., a Washington professional services

corporation; BRANDON REED, an individual; TREVOR HEIN, an individual; and

THOMAS PARENTEAU, an individual, and state:

## INTRODUCTION

1.     Timeshares are a popular option for vacationers throughout the world.  In 2016, Florida led the United States in timeshare resorts, comprising 24 percent of the national total of 1,547 resorts.[1]   It should come as no surprise, then, that Florida timeshare companies are often the main targets of schemes by so-called "consumer protection" firms whose business models profit from taking exorbitant up-front fees for disrupting the valid legal contracts between resorts and their owners and divert owners' money to them instead.  One such target is Plaintiff Orange Lake Country Club, Inc. ("OLCC").

2.     OLCC is in the business of developing, financing, managing, and selling timeshare resort properties throughout the United States, including in Florida.  OLCC has 13 timeshare resorts totaling approximately 3,395 individual timeshare units and is supported by nearly 3,000 employees.  There are currently over 100,000 OLCC timeshare owners worldwide.  Plaintiff Wilson Resort Finance, L.L.C. ("Wilson Finance") offers financing to purchasers of OLCC timeshare interests and is the holder of promissory notes and mortgages extended to owners (collectively, OLCC and Wilson Finance are "Orange Lake").

3.     Defendants Brandon Reed ("Reed"), Trevor Hein ("Hein"), and Thomas Parenteau ("Parenteau") control Defendant Reed Hein & Associates d/b/a Timeshare Exit Team ("TET") and serve as driving, integral figures in TET's scheme described herein.

---

[1]  VacationBetter.org, *Timeshare Industry Shows Another Year of Substantial Growth*, http://vacationbetter.org/timeshare-industry-shows-another-year-of-substantial-growth/ (Accessed Aug. 23, 2017).

Through TET's website, advertising, and paid celebrity endorsements from the likes of Glenn Beck, Steve Harvey, and Dave Ramsey, Reed, Hein, and Parenteau make false and misleading promises purporting to operate a "consumer protection group" offering a "100% guarantee" to relieve timeshare owners of their obligations, including owners of Orange Lake timeshare interests.  TET falsely promises safe, legal, and permanent exits regardless of whether any legal or factual basis exists to cancel the timeshare contract. TET also falsely claims that it can make or force timeshare companies to take back timeshare interests.  If TET is unsuccessful in cancelling an owners' timeshare interest, TET promises to return their money.

4.     However, TET – which is not a law firm – is not providing redress to owners in situations in which a timeshare company, resort, or developer – such as Orange Lake – has done something illegal.  TET does not investigate whether there is any legal or factual basis to cancel a timeshare contract and generally does not care if any basis exists.  Rather, TET simply redirects to TET the money the owners would otherwise pay to their timeshare company, resort, or developer for their annual maintenance, taxes, or mortgage payments.

5.     TET representatives have expressly stated that their business plan is to "break" the contracts between timeshare developers such as Orange Lake and the individual owners.

6.     To accomplish TET's goal to "break" those contracts, TET's representatives, without even investigating whether there is any cognizable factual or legal basis for doing so, instruct owners to *stop* making their required payments to their

timeshare companies.   TET's representatives know that by giving owners this advice, owners will breach their valid and enforceable agreements with their timeshare company, resort, or developer.   Identifiable owners of Orange Lake timeshare interests have followed this very advice from TET's representatives and Orange Lake has been damaged as a result.

7.     The instructions from TET's representatives are then furthered by TET and the attorneys retained by TET: Defendant Mitchell Reed Sussman d/b/a Mitchell Reed Sussman & Associates ("Sussman Law") and Schroeter Goldmark & Bender, P.S. ("SGB Law").  In general, the timeshare owners never meet any of these attorneys.  TET deliberately conceals the identity of these attorneys from its customers to ensure they can only obtain information about the status of their purported timeshare "exit" from TET. Moreover, TET deliberately misleads customers into thinking that TET is a law firm by selective use of the moniker "Hein, Reed, & Associates," and falsely conveys to customers that it employs attorneys by referring to outside attorneys it claims to contract with as "our attorneys" and in other ways.

8.     These TET-retained attorneys send boilerplate demand letters to the owners' timeshare companies instructing them to cease communicating with TET's purported "clients" and stating that TET's "clients" wish to terminate their timeshare agreements.   These demand letters, which are generic and not personalized to the situation of any owner, are sent to Orange Lake in connection with identifiable owners of Orange Lake timeshare interests.   Likewise, TET instructs its customers not to communicate with their timeshare companies, again to deliberately prevent them from

obtaining information about the status of their timeshare and their purported "exit" from any source other than TET.

9.     Thus, owners are hamstrung both by TET's directions not to make their payments or to communicate with Orange Lake, and by SGB Law and Sussman's furtherance of TET's instructions by sending demand letters instructing Orange Lake not to contact its own customers.  TET's "100% guarantee" to refund the owners' paid fee if TET fails to "exit" the owners from their timeshares is rendered worthless because TET considers foreclosure and other adverse legal consequences to the owners to be legitimate "exits" such that no guarantee is owed.  Orange Lake owners have been lured into breaching their valid contracts with Orange Lake, subjecting them a forced "exit" of their timeshares through foreclosure and/or liability for breach of contracts exceeding the value of their fees paid to TET.  In the end, only TET and the attorneys it hires profit, after providing no actual services, and Orange Lake is damaged.

## PARTIES

10.     Plaintiff Orange Lake Country Club, Inc., is a Florida corporation with its principal place of business at 8505 West Irlo Bronson Memorial Highway, Kissimmee, Osceola County, Florida 34747.

11.     Plaintiff Wilson Resort Finance, L.L.C., is a Delaware limited liability company with its principal place of business at 8505 West Irlo Bronson Memorial Highway, Kissimmee, Osceola County, Florida 34747.

      a)     Its sole member is Wilson Resort Group, LLC, a Florida limited liability company, with its principal place of business at 8505 West

Irlo Bronson Memorial Highway, Kissimmee, Osceola County, Florida 34747.

b)      Wilson Resort Group, LLC's sole member is Orange Lake Country Club, Inc., a Florida corporation with its principal place of business at 8505 West Irlo Bronson Memorial Highway, Kissimmee, Osceola County, Florida 34747.

12.     Defendant Reed Hein & Associates, LLC, is a Washington limited liability company with its principal place of business at 3400 188th Street SW, Suite 300, Lynnwood, Washington 98037 ("Reed Hein").

a)      Reed Hein's Managing Members are Brandon Reed and Trevor Hein.

b)      Makaymax, Inc., is a 60 percent owner of Reed Hein.  Makaymax, Inc., is a Washington corporation with its principal place of business at 3400 188th Street SW, Suite 300, Lynnwood, Washington 98037.

c)      Hein & Sons Industries, Inc., is a 40 percent owner of Reed Hein. Hein & Sons Industries, Inc., is a Delaware corporation with its principal place of business at 3400 188th Street SW, Suite 300, Lynnwood, Washington 98037.

d)      "Timeshare Exit Team" is a registered trade name in Washington for Reed Hein.

13.     Defendant Mitchell Reed Sussman d/b/a Mitchell Reed Sussman & Associates ("Sussman Law") is an individual domiciled in Palm Springs, Riverside County, California, and is a citizen of California.

14.     Defendant Schroeter Goldmark & Bender, P.S. ("SGB Law") is a Washington professional services corporation with its principal place of business at 810 Third Avenue, Suite 500, Seattle, Washington 98104.

15.     Defendant Brandon Reed ("Reed") is an individual domiciled in Kirkland, King County, Washington, and is a citizen of Washington.

16.     Defendant Trevor Hein ("Hein") is an individual domiciled in Surrey, British Columbia, Canada, and is a citizen of Canada.

17.     Defendant Thomas Parenteau ("Parenteau") is an individual domiciled in Seattle, King County, Washington, and is a citizen of Washington.

## JURISDICTION

18.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs and all Defendants in this matter and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00.  Additionally, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because a federal question is presented under the Lanham Act, 15 U.S.C. § 1125(a).

19.     This Court also has supplemental jurisdiction over Orange Lake's state law claims under 28, U.S.C. § 1367 because those claims derive from a common nucleus of operative facts and are so related to claims in the action within original jurisdiction

that they form part of the same case or controversy under Article III of the United States Constitution.

20.    This Court may exercise personal jurisdiction over all Defendants because this action arises out of and is related to Defendants' purposeful contacts with the State of Florida, and this Court's exercise of personal jurisdiction over TET would not violate traditional notions of fair play and substantial justice.

*TET*

21.    TET (i) solicits owners of timeshare interests, many of whom reside in Florida and/or whose timeshare interests are located in Florida, through the use of false, misleading, and deceptive advertising, (ii) intentionally interferes with contracts between Orange Lake, a Florida corporation, and owners of Orange Lake Timeshare interests who retain TET ("Orange Lake Owners"), and (iii) is registered as a foreign limited liability company with the Florida Department of State in order to conduct business in the state of Florida.

22.    TET's Internet-based operations subject it to personal jurisdiction in the State of Florida.  TET solicits owners of Florida timeshare interests through the use of false, misleading, and deceptive advertising it contains on its websites, http://www.timeshareexitteam.com, www.reedhein.com, and www.321exit.com.  These websites do not constitute passive advertising.  TET solicits and receives the contact information of owners of Florida timeshare interests through the website, which involves the repeated transmission of computer files over the internet and allows owners of Florida timeshare interests to exchange their contact information with a host computer.

23.     TET commits tortious and/or wrongful acts in the State of Florida, specifically, tortious interference with contractual relationships between Orange Lake and owners of Orange Lake timeshare interests and unfair and deceptive acts and practices as further described herein.   TET instructs owners of Orange Lake timeshare interests to stop making payments of maintenance and taxes, and of legitimately owed note and mortgage payments, to Orange Lake in Florida, which damages Orange Lake.

24.     TET makes agreements with owners of Orange Lake timeshare interests, some of whom own timeshare interests in Florida.   TET is to perform these agreements, in whole or in part, in Florida, supposedly negotiating with Orange Lake to release current and future obligations owed to the Plaintiffs.   To make the scheme seem legitimate TET instructs the lawyers it claims to retain, Sussman Law and SGB Law, to mail letters addressed to Orange Lake in Florida.

### *Sussman Law*

25.     Sussman Law commits tortious acts in the State of Florida by conspiring with TET to tortiously interfere with contractual and business relationships between Orange Lake and owners of Orange Lake timeshare interests.

26.     TET retains Sussman Law in order to effectuate the promised "exit," often with respect to Orange Lake Owners who reside in Florida and/or own a timeshare interest located in Florida.   TET representatives instruct owners of Orange Lake timeshare interests to stop making any payments to Orange Lake, and then instruct Sussman Law to write Orange Lake boilerplate demand letters to, *inter alia*, stop communication between Orange Lake and its owners.

27.     These communications are directed to Orange Lake in Florida and serve to further the interference between the contractual relationships between Orange Lake and owners of Orange Lake timeshare interests.

### *SGB Law*

28.     SGB Law commits tortious acts in the state of Florida by conspiring with TET to tortiously interfere with contractual relationships between Orange Lake and owners of Orange Lake timeshare interests.

29.     TET retains SGB Law in order to effectuate the promised "exit," often with respect to Orange Lake Owners who reside in Florida and/or own a timeshare interest located in Florida.   TET representatives instruct owners of Orange Lake timeshare interests to stop making any payments to Orange Lake, and then instruct SGB Law to write Orange Lake boilerplate demand letters to, *inter alia*, stop communication between Orange Lake and its owners.

30.     These communications are directed to Orange Lake in Florida and serve to further the interference between the contractual relationships between Orange Lake and owners of Orange Lake timeshare interests.

### *Reed*

31.     Personal jurisdiction over Reed is proper because Reed, along with Hein and Parenteau, directs and controls TET, which they formed and have used for the improper purpose of operating a fraudulent timeshare exit scheme, and because TET is the alter ego of Reed, Hein and Parenteau.

32.     Reed uses TET as a mere instrumentality or business conduit to perpetrate a fraud on TET's customers that results in significant harm to Orange Lake.  Indeed, Reed controls and dominates TET to such an extent that it has no independent existence apart from his own (and Hein and Parenteau).  He instructs his employees to delay and confuse customers about the status of their timeshare "exit" to avoid making good on TET's refund guarantee,[2] while siphoning millions of dollars from the company for his own personal pecuniary gain and for extraordinary personal expenses.  Reed uses TET in an attempt to conceal his identity as an orchestrator of a fraudulent scheme directed at timeshare companies, including Orange Lake, such that the corporate form of TET must be disregarded and individual liability imposed on Reed in order to prevent further losses to Orange Lake.

33.     This action arises out of and is related to Reed's purposeful contacts with the State of Florida resulting from his actions and TET's activities that he directed and controlled, including (i) the solicitation of owners of Florida timeshares through the use of false and deceptive advertising; (ii) the intentional interference with contracts between Orange Lake, a Florida company, and owners of timeshare interests in Florida; and (iii) making false and misleading statements regarding Orange Lake through TET's website, directed at Florida residents.   Specifically, via postings on TET's websites, TET purposefully directs marketing efforts to, and solicits, Florida residents who own timeshare interests in Orange Lake (including Orange Lake Owners who reside in

---

[2]  In fact, after one of the TET-retained attorneys inadvertently sent out letters in 2016 to thousands of TET customers falsely stating that their timeshare exits had been accomplished, Reed, Hein, and Parenteau elected not to tell customers the truth.  Instead, and despite objections from TET's account representatives, Reed, Hein, and Parenteau specifically instructed the account coordinators to conceal that information.

Florida).  Indeed, through false and deceptive advertisements, TET lures Orange Lake Owners to pay large upfront fees to retain TET and induce the Orange Lake Owners to breach existing contracts with Orange Lake.  Such false and deceptive advertisements also underlie Orange Lake's claims against Reed for violations of the Lanham Act, 15 U.S.C. § 1125(a), *et seq*., and violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

34.     Moreover, TET's misleading and deceptive advertising campaign, which is orchestrated, supervised, and directed by Reed together with Hein and Parenteau, solicits owners of Florida timeshare interests through the use of false, misleading, and deceptive advertising on, *inter alia*, the websites, http://www.timeshareexitteam.com, www.reedhein.com, and www.321exit.com.    These websites do not constitute passive advertising.   TET solicits and receives the contact information of owners of Florida timeshare interests through the website, which involves the repeated transmission of computer files over the internet and allows owners of Florida timeshare interests to exchange their contact information with a host computer.   Reed designs and directs TET's false and misleading advertising and marketing activities that cause Plaintiffs injury in Florida.

<u>*Hein*</u>

35.     Personal jurisdiction over Hein is proper because Hein, along with Reed and Parenteau, directs and controls TET, which they formed and have used for the improper purpose of operating a fraudulent timeshare exit scheme, and because TET is the alter ego of Reed, Hein and Parenteau.

36.     Hein uses TET as a mere instrumentality or business conduit to perpetrate a fraud on TET's customers that results in significant harm to Orange Lake.  Indeed, Hein controls and dominates TET to such an extent that it has no independent existence apart from his own (and Reed and Parenteau).  He instructs his employees to delay and confuse customers about the status of their timeshare "exit" to avoid making good on TET's refund guarantee [*see supra*, n. 3], while siphoning millions of dollars from the company for his own personal pecuniary gain and for extraordinary personal expenses.  Hein uses TET in an attempt to conceal his identity as an orchestrator of a fraudulent scheme directed at timeshare companies, including Orange Lake, such that the corporate form of TET must be disregarded and individual liability imposed on Hein in order to prevent further losses to Orange Lake.

37.     This action arises out of and is related to Hein's purposeful contacts with the State of Florida resulting from his actions and TET's activities that he directed and controlled, including (i) the solicitation of owners of Florida timeshares through the use of false and deceptive advertising; (ii) the intentional interference with contracts between Orange Lake, a Florida company, and owners of timeshare interests in Florida; and (iii) making false and misleading statements regarding Orange Lake through TET's website, directed at Florida residents.  Specifically, via postings on TET's websites, TET purposefully directs marketing efforts to, and solicits, Florida residents who own timeshare interests in Orange Lake (including Orange Lake Owners who reside in Florida).  Indeed, through false and deceptive advertisements, TET lures Orange Lake Owners to pay large upfront fees to retain TET and induce the Orange Lake Owners to

breach existing contracts with Orange Lake.  Such false and deceptive advertisements also underlie Orange Lake's claims against Hein for violations of the Lanham Act, 15 U.S.C. § 1125(a), *et seq*., violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), and violations of Section 817.41, Florida Statutes.

38.     Moreover, TET's misleading and deceptive advertising campaign, which is orchestrated, supervised, and directed by Hein together with Reed and Parenteau, solicits owners of Florida timeshare interests through the use of false, misleading, and deceptive advertising on, *inter alia*, the websites, http://www.timeshareexitteam.com, www.reedhein.com, and www.321exit.com.    These websites do not constitute passive advertising.  TET solicits and receives the contact information of owners of Florida timeshare interests through the website, which involves the repeated transmission of computer files over the internet and allows owners of Florida timeshare interests to exchange their contact information with a host computer.  Hein designs and directs TET's false and misleading advertising and marketing activities that cause Plaintiffs injury in Florida.

## *Parenteau*

39.     Personal jurisdiction over Parenteau is proper because Parenteau, along with Reed and Hein, directs and controls TET, which they formed and have used for the improper purpose of operating a fraudulent timeshare exit scheme, and because TET is the alter ego of Reed, Hein and Parenteau.

40.     Parenteau uses TET as a mere instrumentality or business conduit to perpetrate a fraud on TET's customers that results in significant harm to Orange Lake.

Indeed, Parenteau controls and dominates TET to such an extent that it has no independent existence apart from his own (and Reed and Hein). He instructs his employees to delay and confuse customers about the status of their timeshare "exit" to avoid making good on TET's refund guarantee [*see supra*, n. 3], while siphoning millions of dollars from the company for his own personal pecuniary gain and for extraordinary personal expenses. Parenteau uses TET in an attempt to conceal his identity as an orchestrator of a fraudulent scheme directed at timeshare companies, including Orange Lake, such that the corporate form of TET must be disregarded and individual liability imposed on Parenteau in order to prevent further losses to Orange Lake.

41. This action arises out of and is related to Parenteau's purposeful contacts with the State of Florida resulting from his actions and TET's activities that he directed and controlled, including (i) the solicitation of owners of Florida timeshares through the use of false and deceptive advertising; (ii) the intentional interference with contracts between Orange Lake, a Florida company, and owners of timeshare interests in Florida; (iii) and making false and misleading statements regarding Orange Lake through TET's website, directed at Florida residents. Specifically, via postings on TET's websites, TET purposefully directs marketing efforts to, and solicits, Florida residents who own timeshare interests in Orange Lake (including Orange Lake Owners who reside in Florida). Indeed, through false and deceptive advertisements, TET lures Orange Lake Owners to pay large upfront fees to retain TET and induce the Orange Lake Owners to breach existing contracts with Orange Lake. Such false and deceptive advertisements also underlie Orange Lake's claims against Parenteau for violations of the Lanham Act,

15 U.S.C. § 1125(a), *et seq.*, violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), and violations of Section 817.41, Florida Statutes.

42.     Moreover, TET's misleading and deceptive advertising campaign, which is orchestrated, supervised, and directed by Parenteau together with Reed and Hein, solicits owners of Florida timeshare interests through the use of false, misleading, and deceptive advertising on, *inter alia*, the websites, http://www.timeshareexitteam.com, www.reedhein.com, and www.321exit.com.   These websites do not constitute passive advertising.   TET solicits and receives the contact information of owners of Florida timeshare interests through the website, which involves the repeated transmission of computer files over the internet and allows owners of Florida timeshare interests to exchange their contact information with a host computer.  Parenteau designs and directs TET's false and misleading advertising and marketing activities that cause Plaintiffs injury in Florida.

## VENUE

43.     Pursuant to 28 U.S.C. § 1391, venue is proper in this judicial district because the events or omissions giving rise to the claims asserted in this complaint occurred within this judicial district.

## GENERAL ALLEGATIONS

### A.     The Orange Lake Timeshare Purchase

44.     Each timeshare purchaser executes a written purchase agreement ("Purchase Agreement") with Orange Lake.   Pursuant to the terms of the Purchase Agreement, in addition to purchasing the timeshare interest, each owner understands and

agrees to be bound by the Declaration of Condominium ("Declaration") for the resort where the owner purchased the timeshare, and to be responsible for their share of common expenses, assessments, maintenance fees, and any and all other expenses incurred in the operation of their timeshare unit.  The Declaration is referenced and incorporated in the Purchase Agreement with the owners.

45.     Many timeshare purchasers finance the purchase and execute and deliver a promissory note ("Promissory Note") and mortgage ("Mortgage") in connection with the timeshare purchase.  Both the Promissory Note and Mortgage are referenced and incorporated in the Purchase Agreement with the owners.  Plaintiffs have the right to collect on the Promissory Notes and Mortgages.

**B.     Reed, Hein and Parenteau's TET Scheme**

46.     Collectively, Defendants are engaged in a timeshare cancellation scheme which induces Orange Lake Owners to breach their Purchase Agreements with, and related mortgage and maintenance fee obligations to, Orange Lake by paying that money, and often much, much more, instead to TET as large, upfront fees before any services are performed.

47.     In or around December 2012, Reed and Hein formed TET for the improper purpose of soliciting timeshare owners using false and misleading advertising with, *inter alia*, the purpose of tortiously interfering with Plaintiffs' existing contracts with owners of Orange Lake timeshare interests ("Orange Lake Owners").

48.     Reed and Hein are the founding members of TET.  Reed currently serves as Chief Executive Officer of TET, and Parenteau serves as TET's Chief Operating

Officer.  Even though Reed and Hein are the purported owners of TET, Reed and Hein together with Parenteau are the masterminds behind TET's overall scheme and direct and control all of TET's activities which are the subject of this lawsuit such that TET is the alter ego of Reed, Hein, and Parenteau.

49.     Through their alter ego TET, Reed, Hein and Parenteau solicit timeshare owners, including identifiable Orange Lake Owners, to sign contracts with TET for so-called timeshare exit services through in-person sales and webinars calling for large payments upfront, long before TET performs any services.

50.     In order to lure timeshare owners, including Orange Lake Owners, to hire TET, Reed, Hein and Parenteau make false and misleading guarantees using a variety of marketing methods.  Reed, Hein and Parenteau's methods include paid endorsements by radio personalities and motivational speaker's websites, advertising through radio stations across the country, appearing in newspaper articles (such as in the Los Angeles Times and USA Today), engaging in television advertising, and advertising through several websites, including: www.timeshareexitteam.com, www.reedhein.com, and www.321exit.com.  The domain names www.reedhein.com and www.321exit.com both redirect customers to wwwtimeshareexitteam.com.  Reed, Hein and Parenteau similarly utilize social media, such as Facebook, and other internet websites and forums to sell TET's services to timeshare owners, including Orange Lake Owners.

51.     Among the most notorious of TET's paid celebrity endorsements is Dave Ramsey, a radio personality who advises listeners on personal and household finances.

Identifiable Orange Lake Owners have been lured to TET because of Mr. Ramsey's radio show.  In fact, Mr. Ramsey's own website provides a link to TET's website.[3]

52.    Through the www.timeshareexitteam.com website, Reed, Hein and Parenteau advertise that TET will utilize its illusory "proprietary process" to "get rid of" owners' timeshare contracts "Safely.  Legitimately.  Forever."  As shown by TET's "Frequently Asked Questions" section on its website, TET targets timeshare owners who want to terminate their timeshare ownership for any reasons, including just not wanting it any more.

53.    While the "FAQs" may enumerate legitimate individual concerns, there is nothing "legitimate" about this website or the sales pitch that accompanies it.  Reed, Hein and Parenteau falsely portray timeshare owners do not need any legally sufficient basis to terminate a timeshare contract or to cease making his or her payments under their legally binding contracts with a timeshare company.  They also falsely state and imply that they can make or force timeshare companies to take back timeshare interests without even investigating whether any legal or factual basis exists to cancel the timeshare contracts.

54.    As part of TET's advertised "unique strategy," Reed, Hein and Parenteau direct TET's representatives to instruct owners, including Orange Lake Owners, to stop making payments on their timeshare obligations, such as owners' purchase money Promissory Note and Mortgage payments owed, for instance, as well as maintenance and tax payments.  Reed, Hein and Parenteau falsely assure the owners that, this way, timeshare companies will be more willing to allow the owners to "exit" their timeshare.

---

[3]        DaveRamsey.com,        The        Truth        about        Timeshares, https://www.daveramsey.com/blog/the-truth-about-timeshares (Accessed Aug. 23, 2017).

Through TET, Reed, Hein and Parenteau further misrepresent to owners that their credit scores will not be affected by halting their payments.  Identifiable Orange Lake Owners were given these very instructions and assurances.

55.     TET's misleading advertising and marketing was designed by Reed, Hein and Parenteau to induce Orange Lake Owners to breach their Purchase Agreements with Orange Lake.  But Reed, Hein and Parenteau fail to inform Orange Lake Owners what, exactly, TET's "exit process" consists of and never publicly disclose TET's strategy. Instead, they repeatedly refer to a vague "exit process" that Reed, Hein and Parenteau claim is "proprietary."

56.     In actuality, TET's process and strategy is nothing more than a scheme to enrich Reed, Hein, and Parenteau at the expense of timeshare owners and timeshare companies.  That scheme includes but is not limited to (a) falsely conveying to the public that TET can get customers out of their timeshares without even investigating whether there is any legitimate reason to do so; (b) falsely conveying that they can make or force timeshare companies to take back timeshare interests; (c) falsely conveying that the exit will be safe, legal, and permanent; (d) guaranteeing an exit; (e) persuading timeshare owners to pay large up-front fees to TET instead of paying their contractually-required obligations to timeshare companies and associations; (f) preventing communications between timeshare owners and timeshare companies through letters sent by TET-retained attorneys, whose identities TET conceals from its customers, allowing TET to manipulate the flow of information to its customers and hide the fact that nothing is being done to accomplish their timeshare "exits;" (g) utilizing unfair, deceptive, and unlawful methods

to complete a so-called "exit;" (h) falsely informing timeshare owner clients that an "exit" has been completed; and (i) refusing to honor their money back guarantee when certain adverse consequences occur—i.e., foreclosure—because TET considers that adverse consequences to be legitimate "exits."

57.     Reed, Hein and Parenteau also fail to publicly disclose the fees they charge timeshare owners, including Orange Lake Owners. When asked about fees charged, the standard response is to state that every case is unique and that a private consultation with TET is the only way to obtain a fee quote.  Reed, Hein and Parenteau thus direct TET representatives to refuse to provide fee information unless a timeshare owner participates in a "free consultation" with TET.  In reality, TET's fee is simply a function of the timeshare owner's annual maintenance fees owed to the timeshare company—an amount TET justifies because it is less than the 15, 30, or 45 years' worth of maintenance fees to which TET compares it.

58.     Timeshare owners, including Orange Lake Owners, are thus left with only a vague idea as to what TET will do for them (other than TET's general, false promise to exit their timeshare contract) or how TET will accomplish the purported exit.  Thus, timeshare owners who contact TET, including Orange Lake owners, may not be predisposed to exit their timeshare when they contact TET and may only be seeking additional information that Reed, Hein and Parenteau refuse to publicly disclose, unless the Orange Lake owners submits to a misleading sales pitch deceptively disguised as a "free consultation."   Certainly, many of the Orange Lake owners were not predisposed to

breach their timeshare contracts, as they were continuing to perform those contracts until they saw TET's advertising and/or received instructions to stop paying.

59.     The fees charged by Reed, Hein and Parenteau for TET's purported services vary, but are typically thousands of dollars per timeshare owner.  These fees are so high that Reed, Hein and Parenteau offer financing plans to timeshare owners (including Orange Lake Owners).

60.     TET's agreements with the owners who retain them are designed to protect TET from its own misrepresentations.  Identifiable Orange Lake Owners' retainer documents contain provisions that contradict the verbal instructions TET's representatives give to the owners and the "guarantees" emblazoned across TET's website.  The following disclaimer is from a February 21, 2016, version of TET's "Things to Remember":

> RESORT FEES.  You own the Timeshare until the closing of the exit is finalized, thereby relieving you of ownership; you remain responsible for all financial obligations associated with the Timeshare until the exit is complete.  If you have determined of your own accord not to pay the resort ever again, you can expect some consequences that may include negative credit reporting, collection activity and/or legal action.  In the final resolution with the resort, we may be able to request removal of any negative credit reporting with the credit bureaus.  If there is a collection agency involved, we can assist you by requesting that the agency stop contacting you.  However, we cannot control all of the actions by the resort or the collection agency.  We have found that some resorts are quite pleasant to work with on an exit, while others are not.  We can deal with both types for you.  Our goal is to achieve an ultimate positive result for you.

61.     TET's aspiration of an "ultimate positive result" is nowhere near equivalent to its advertised and apparently demonstrably false "personal GUARANTEE . . . that our team of consumer advocates will get you out of your timeshare, period."

62.     Unbeknownst to the timeshare owner and undisclosed during the sales pitch, the "guarantee" is defined as *whatever offer* TET can manage to obtain from a timeshare resort, even one requiring full payment of all existing and future debt (so that the owner is economically worse off than before TET, as they have already paid TET a substantial fee).   The following excerpt is from a November 23, 2015, TET retainer agreement:

> FEES AND COSTS.   Under this Agreement there are absolutely no extra service fees or closing costs to be owed or paid by the CLIENT to REED HEIN.   However, some resorts may require a cancellation fee or similar fee to end or exit an ownership, and such fee(s) may be required in your case.   These fees will be no greater than the amount of this current year's maintenance fee.   If so, the CLIENT will be required to pay that fee to the Resort for a successful exit.   In addition, some resorts require all past maintenance fees to be paid upon the completion of an exit.   If required, these past maintenance fees will be paid by the CLIENT. Whether accepted by OWNER or not, an exit agreement obtained by REED HEIN from the Resort shall meet REED HEIN's Guarantee even though the Resort may require by OWNER of an exit fee.

63.     But TET does not itself even deal with the timeshare companies – the undisclosed, unidentified TET-retained attorneys are the ones who supposedly do so. Reed, Hein and Parenteau have TET hire the attorneys to execute TET's advertised "proprietary process," but do not so inform TET's customers.   These attorneys, including Sussman Law and SGB Law, are retained pursuant to an industrialized bulk

representation contract under which TET sends the law firm an agreed minimum number of files per month and pay a fixed fee per file or per month.  TET then positions itself as the "interface" between the owners and the undisclosed, unidentified attorneys.  But the representation agreements prohibit TET from actually telling TET's clients that the undisclosed, unidentified attorneys actually represent them.

64.     Another deceptive method that Reed, Hein and Parenteau use to mislead owners is to compare the cost of paying the owner's timeshare company to the fee TET is charging.   One example showed the cost of fifteen years of maintenance fees ($21,579.00) and mortgage payments ($14,861.00), totaling $36,440.00 (not discounted to present value) versus TET's fee of $6,395.00, but totally and deceptively concealed the upwards of ***thirty weeks of already paid for resort accommodations to which the owner is entitled***. Printed over the final comparison figures, TET asks a simple question:

> ***Which of these would you rather pay?***

65.     After signing TET's retainer documents, owners are assigned a non-lawyer "Account Coordinator who becomes [their] personal contact during [the owner's] entire exit process.  No general 800 phone numbers or endless automated phone systems while trying to reach Customer Service.  [The] Account Coordinator will explain how the process works and will provide you with status updates throughout the exit process."  In fact, however, the e-mail updates that identifiable Orange Lake Owners have received are scant, non-specific, and designed to string along Orange Lake Owners into believing that actual work is being done on their behalves.

66.     Thereafter, TET supposedly begins its purported "negotiation process" with the owners' timeshare companies.  On its website, TET states that the "specifics of the process will depend on your ownership situation and how the resort responds to our requests."  But regardless, and undisclosed to the customer, no lawyer is actually involved and the customer is completely dependent on TET's non-lawyer telephone operators.  Nonetheless, TET promises an "exit" without disclosing how that is to be accomplished, and promises a full refund of its entire fee otherwise.

67.     However, by Reed, Hein and Parenteau's design, TET is not doing any work to negotiate anything at all and fails to notify owners of this until the owners are in arrears with the developers and the association.  Instead, TET's "Potemkin Village" hires law firms – here SGB Law and Sussman Law – whose letterhead is used to send a generic "demand" letter to the developer, but the lawyers perform no actual "negotiations." For this, TET has paid these law firms $1,200 each for a minimum of 800 files a month, which, at more than $1 million a year for little or no actual legal services is a lucrative operation for law firms such as Sussman Law and SGB Law. [4]  More recently, TET has paid SGB law a monthly flat fee in excess of $3 million a year.

68.     After a year or more of having done nothing nor even ***trying*** to do something, TET representatives tell identifiable Orange Lake Owners that the attorney retained by TET "could not help [the Orange Lake Owners] anymore."  Since the boilerplate demand letters TET sends for the law firms forbid them from communicating

---

[4] In fact, a law firm previously retained by TET has sued TET for breach of one of these exclusive and profitable master fee agreements. *See Ken B. Privett, PLC v. Reed Hein & Associates, LLC d/b/a Timeshare Exit Team*, Case No. CJ-17-20 (In the District Court of Pawnee County, Oklahoma).

with Orange Lake Owners – state debt collection laws mandate that Orange Lake abide by that - the owners are not informed that TET, SGB Law, and Sussman Law have accomplished absolutely ***nothing*** for them until the owners are served with Orange Lake's collection or foreclosure lawsuit.

69.    All that Reed, Hein, Parenteau, and TET actually accomplish is to interfere with routine communication between Orange Lake and the Orange Lake Owners and cause those Orange Lake Owners to default on their payment obligations resulting in debt collection or foreclosure lawsuits with attendant credit reporting.  Yet, they nonetheless falsely claim or, worse yet, knowingly allow owners to believe that TET has "exited" the Orange Lake Owners from their Purchase Agreements.

**C.**    **Sussman Law's Furtherance of Reed, Hein and Parenteau's TET Scheme**

70.    As described above, through, *inter alia*, TET's deception and false advertising, TET, Reed, Hein, and Parenteau instruct owners to ***stop*** making their required payments to their timeshare companies, thereby causing such owners to breach their valid and enforceable agreements with their timeshare company.

71.    After finally convincing owners to pay TET instead of Orange Lake, TET's next step is to "negotiate" the owners' exit.  TET, however, does not handle the negotiation process on its own.  Instead, through TET, Reed, Hein and Parenteau hire law firms, including Sussman Law, to, *inter alia*, handle these fruitless "negotiations" pursuant to master fee agreements by which TET agrees to pay Sussman Law a portion of the upfront fee that TET charges Orange Lake Owners.

72.     Sussman Law, without ever speaking with an owner, then sends boilerplate demand letters to the owners' timeshare companies, including Orange Lake, instructing them to cease communicating with Sussman Law's purported "clients."  The demand letters state that TET's "clients" wish to terminate their timeshare agreements. Accordingly, the demand letters are not unique to the situation of any Orange Lake Owner.

73.     These letters, which also instruct Orange Lake not to contact the TET clients, together with any subsequent correspondence, telephone calls, and e-mails, serve to further the interference with the contractual and business relationships between the Orange Lake Owners and Orange Lake as Orange Lake cannot gain access to Orange Lake Owners to resolve any issues related to their timeshares.  As a result, Orange Lake is forced to, *inter alia*, expend considerable money to foreclose on the Orange Lake Owners' timeshare interest.

74.     These letters also state that the owners will no longer be paying their contractual obligations to Orange Lake, demonstrating TET and/or Sussman had already instructed owners to stop paying.

75.     The most perverse part of this scheme is that Sussman would then engage in three unfair, deceptive, and unlawful strategies to attempt to "exit" or "cancel" the timeshare contract.  One strategy was simply notifying Orange Lake that the timeshare owner "resigned" from the timeshare.  Sussman knows that such a "resignation" does not excuse the timeshare owners' contractual obligations, and he knows that Orange Lake does not agree such a "resignation" validly cancels its contracts, but Sussman and/or TET

nonetheless falsely inform the timeshare owners that they no longer have any legal or financial obligations to Orange Lake. Next, Sussman would have the timeshare owners execute deeds purportedly conveying the timeshare interest back to Orange Lake, knowing that Orange Lake did not consent to the deed, knowing he would not deliver the deed to Orange Lake, knowing Orange Lake did not accept the deed, and knowing Orange Lake had no mutual intent for title to transfer.  Finally, Sussman would have the timeshare owners execute deeds purportedly conveying the timeshare interest to individuals who had no ability or intent to pay, and that Sussman often paid $100 to accept the deeds.  After recording these deeds, and without informing Orange Lake, Sussman and/or TET nonetheless falsely inform the timeshare owners that they no longer have any legal or financial obligations to Orange Lake.  If the owners had not already stopped paying, they clearly stop paying their financial obligations to Orange Lake once they are falsely informed that they have no further legal or financial obligations.

76.     Sussman and TET, Reed, Hein, and Parenteau are aware that these practices are unlawful and invalid, and in violation of numerous civil and criminal laws, but they do not care.  They agreed to this unlawful scheme, and they carried it out, as part of their conspiracy.

77.     Sussman Law's actions in concert with, and in furtherance of Reed, Hein and Parenteau's  scheme through TET results in significant damages to Orange Lake Defendants' own pecuniary gain.

**D.      SGB Law's Furtherance of Reed, Hein and Parenteau's TET Scheme**

78.     SGB Law is hired by TET ostensibly to "negotiate" timeshare owners' exits with timeshare companies, including Orange Lake.  This occurs once TET's false and misleading advertising induces the timeshare owner to contract with TET.

79.     TET and/or SGB Law then instruct the timeshare owners to stop paying their financial obligations, which is to breach their valid and enforceable agreements with their timeshare company.

80.     SGB Law sends cookie-cutter demand letters to Orange Lake for supposed clients who they have never met and are not even aware they are represented by a SGB Law lawyer.  SGB Law's letters to Orange Lake say little more than TET's customers "are interested in terminating their time share[sic] memberships," and forbid any communication between Orange Lake and Orange Lake Owners "with the lone exception of forwarding routine billings to the client via mail."  The letters say nothing about the Orange Lake Owner's individual circumstances but rather are "one size fits all" correspondence that's purpose is to silence Orange Lake.  These letters and what follows foster TET's interference with the contractual and business relationships between the Orange Lake Owners and Orange Lake as, through the operation of state debt collection laws, Orange Lake cannot talk with its own customers about their relationship with Orange Lake.  Because TET isolates the Orange Lake Owner from Orange Lake, Orange Lake has no choice other than to pursue debt collection and/or foreclosure, with the resulting expense to Orange Lake.

81.     SGB Law and TET, Reed, Hein, and Parenteau are aware that these practices are based on false and deceptive advertising and intentionally interfere with

Orange Lake's contracts, but they do not care. They agreed to this unlawful scheme, and they carried it out, as part of their conspiracy.

82.     SGB Law's actions in concert with, and in furtherance of, TET's scheme have caused significant damages to Orange Lake with substantial pecuniary gain for SGB Law.

E.      **Defendants' Actions Have Damaged Plaintiffs**

83.     To date, TET's false, deceptive, and misleading advertising, conceived, controlled, and implemented by Reed, Hein and Parenteau, has caused owners to retain TET and to stop making payments on their Promissory Notes and Mortgages they signed when they purchased their timeshare interests. This same false, deceptive, and misleading advertising has caused owners to stop making maintenance fee and related payments, and has harmed Orange Lake's reputation, although Plaintiffs are not seeking monetary damages for those harms.

84.     TET, at the direction of Reed, Hein and Parenteau, intentionally and unjustifiably interfere with Plaintiffs' contractual relationships by inducing Orange Lake Owners to stop paying Plaintiffs and instead pay TET's fee, by giving false assurances that there will be no harm to their credit scores, and by guaranteeing that they will be "exited" from their timeshare "Safely. Legitimately. Forever." Plaintiffs are damaged because TET's entire business model is premised on drawing customers away from Plaintiffs. But for TET's scheme, conceived, controlled, and implemented by Reed, Hein and Parenteau, Orange Lake would not suffer such damages.

85.     Sussman Law and SGB Law further TET's scheme as described above. Defendants engaged in this arrangement together for their collective pecuniary gain.

86.     TET, at the direction of Reed, Hein and Parenteau also engage in unfair and deceptive practices, including the unlawful scheme described above, pursuant to which TET makes numerous false representations to its customers.  These representations include falsely informing timeshare owners they no longer have legal or financial obligations to Orange Lake, resulting in the owners not paying their obligations, which harms Orange Lake and the timeshare owners.

87.     All conditions precedent to the filing of this action have been satisfied, waived, or have occurred.

88.     Plaintiffs have retained the law firm of Greenspoon Marder LLP to represent them in this action and are obligated to pay Greenspoon Marder LLP reasonable attorneys' fees and costs.

### COUNT I: TORTIOUS INTERFERENCE WITH EXISTING CONTRACTS
### (Against Defendants TET, Reed, Hein and Parenteau)

89.     Plaintiffs reallege and reincorporate the allegations contained in paragraphs 1 through 9 and 44 through 88 above as if more fully set forth herein.

90.     This is a cause of action for tortious interference with existing contracts and for damages in excess of $75,000.00, exclusive of interest, attorney's fees and costs, and is within this Court's jurisdiction.

91.     Plaintiffs hold valid and legally enforceable contracts with Orange Lake Owners for their timeshare units.

92.     TET, Reed, Hein and Parenteau (the "TET Defendants") have knowledge of those relationships.  The very fact that the Orange Lake Owners have contracts with Plaintiffs is the basis under which the TET Defendants sought to establish a relationship with the Orange Lake Owners.

93.     The TET Defendants sought to capitalize on Plaintiffs' contractual relationships with the Orange Lake Owners by soliciting the Orange Lake Owners through TET's false and misleading advertising, inducing them to pay large upfront fees to TET, and inducing them to stop making payments to Plaintiffs or to otherwise breach their contracts with Orange Lake, notwithstanding the Orange Lake Owners' legally enforceable contracts with Plaintiffs.  The TET Defendants do this to divert money contractually owed to Orange Lake to TET instead.

94.     The TET Defendants' false and misleading advertising used to induce Orange Lake Owners to breach their contractual relationships with Orange Lake include deceptive website, radio, and television advertisements, and celebrity endorsements.  The TET Defendants also induce Orange Lake Owners to stop making their payments to Orange Lake or to otherwise breach their contracts with Orange Lake in numerous other ways, including stating and suggesting that no valid grounds are needed to cancel a contract, stating and suggesting they can have any contract cancelled, making false promises of achieving a favorable timeshare exit safely, legally, or permanently, and even by falsely informing owners that they no longer owe Orange Lake any legal or financial obligations based on unlawful and invalid exit strategies.

95.     The TET Defendants' willful actions to induce parties with whom Plaintiffs have valid contractual agreements to breach their agreements constitute intentional interference with existing contracts.

96.     TET Defendants have no justification or privilege to interfere with Plaintiffs' existing contracts, and TET Defendants do not even investigate whether any such justification or privilege may exist prior to the interference.

97.     The TET Defendants' actions were not made in good faith, but rather were made with purely selfish and mercenary reasons so as to collect and retain the large pre-paid retainer fee without actually providing any meaningful services to the Orange Lake Owners and with the knowledge and purpose to injure Plaintiffs or with reckless disregard for the attendant consequences naturally, directly, and proximately resulting from the TET Defendants actions and without reasonable grounds for the TET Defendants to believe that their actions were justified and proper.

98.     As a direct and proximate result of the TET Defendants' intentional misconduct, Orange Lake Owners have terminated, or have sought to terminate, their contractual relationship with Plaintiffs before the expiration of the terms of those contracts.

99.     As a direct and proximate result of the foregoing, Plaintiffs suffered damages.

100.     An injunction is a viable form of relief in a suit for tortious interference.

a)    As parties to legitimate and enforceable agreements with Orange Lake Owners, Plaintiffs have a clear legal right or interest in such contracts with Orange Lake Owners.

b)    As set forth in part above, the TET Defendants have procured unwarranted and unjustified contract breaches, so Plaintiffs have a substantial likelihood of success on merits.

c)    The TET Defendants continue to solicit timeshare owners, such as Orange Lake Owners, through the described misleading and deceptively false marketing, which shows a strong likelihood that Plaintiffs will continue to suffer irreparable harm on an ongoing basis because any remedy at law for the TET Defendants' perpetuation of the deceptive, fraudulent, and unfair marketing practices is inadequate.

d)    An injunction serves the public interest because, *inter alia*, an injunction would serve to protect timeshare owners as consumers and the fair and legitimate operation of the timeshare industry.

101.   As a proximate result of the TET Defendants' unlawful conduct, Plaintiffs are being irreparably harmed and are entitled to have TET's conduct enjoined and restrained.  Plaintiffs also are entitled to damages for interference with contracts and business relationships.

WHEREFORE, Plaintiffs ORANGE LAKE COUNTRY CLUB, INC., and WILSON RESORT FINANCE, L.L.C., respectfully request that this Court:

A.    Enter judgment after trial for a permanent injunction in favor of Plaintiffs and against Defendant REED HEIN & ASSOCIATES, LLC d/b/a TIMESHARE EXIT

34

TEAM, BRANDON REED, TREVOR HEIN, and THOMAS PARENTEAU and their

officers, agents, servants, employees, and attorneys and on those persons in active concert

or participation with them who receive actual notice of the injunction enjoining them

from:

> 1) Engaging in false and misleading advertising;
>
> 2) Intentionally interfering with Plaintiffs' contracts; and
>
> 3) Engaging in deceptive or unfair trade practices.

B.    Enter judgment for damages (a natural consequence of the TET

Defendants' wrongs) and punitive damages;

D.    Enter judgment in favor of Plaintiffs and against the TET Defendants for

costs of suit incurred in this action; and

E.    Award Plaintiffs such other and further relief as the Court may deem

proper.

## COUNT II: DISMISSED

## <u>COUNT III: CIVIL CONSPIRACY</u>
### (Against Defendants TET and Sussman Law)

102.    Plaintiffs reallege and reincorporate the allegations contained in

paragraphs 1 through 9 and 44 through 88 above as if more fully set forth herein.

103.    This is a cause of action for civil conspiracy to commit tortious

interference with existing contracts and for damages in excess of $75,000.00, exclusive

of interest, attorney's fees and costs, and is within this Court's jurisdiction.

104. TET and Sussman Law are parties to a civil conspiracy as they agreed and conspired to commit an unlawful act by interfering with Plaintiffs' existing contracts, and to do so using unlawful means.

105. TET and Sussman Law each performed one or more overt actions in furtherance of their conspiracy, including without limitation:

a) TET uses false and misleading advertising to lure Orange Lake Owners to obtain TET's services;

b) TET and Sussman directly and indirectly instruct and encourage Orange Lake Owners to stop paying their obligations to Orange Lake or to otherwise breach their contracts with Orange Lake, without any investigation into the circumstances of the owner's situation and without knowledge whether there is any legal basis to do so;

c) This is done to convince the Orange Lake Owners to pay TET instead of Orange Lake (*see e.g.,* chart comparing costs, referenced above), and so that TET can pay Sussman;

d) At TET's direction and pursuant to their agreement, Sussman Law sends boilerplate demand letters to Orange Lake, purportedly resigning owners from Orange Lake, stating the owners will not pay their contractual obligations, and effectively cutting off communication between Orange Lake and the owners;

e)   At TET's direction and pursuant to their agreement, Sussman Law engages in the only three "exit" methods he uses—resignation, unilateral deed back, and deed to associate, all of which are unlawful and invalid;

f)   Knowing that these methods are unlawful and invalid, and not safe, legal, or permanent, TET and Sussman then falsely inform the owners they have no legal or financial obligations to Orange Lake.

g)   TET and Sussman consider these successful "exits," even if they later result in successful foreclosure or other legal action against the owner, and TET and Sussman keep their respective portions of the fee collected from the owner.

106.   As a direct and proximate result of TET and Sussman Law's civil conspiracy, the Orange Lake Owners have terminated, or have sought to terminate, their contractual relationship with Plaintiffs before the expiration of the terms of those contracts.

107.   TET and Sussman Law did not have any justification or privilege in procuring the breach of such business relationships.

108.   As a direct and proximate result of the foregoing, Plaintiffs suffered damages.

109.   An injunction is a viable form of relief for a cause of action for civil conspiracy to commit tortious interference with existing contracts.

a)      TET and Sussman Law's actions, as outlined above, constitute a civil conspiracy to commit tortious interference with existing contracts.

b)      TET and Sussman Law have procured unwarranted and unjustified contract breaches due to their civil conspiracy to commit tortious interference with existing contracts, so Plaintiffs have a substantial likelihood of success on merits.

c)      Sussman Law continues to provide services to TET's customers, through their civil conspiracy to commit tortious interference with existing contracts, which shows a strong likelihood that Plaintiffs will suffer irreparable harm on an ongoing basis because any remedy at law for TET and Sussman Law's perpetuation of their civil conspiracy to commit tortious interference with existing contracts is inadequate.

d)      An injunction serves the public interest because, *inter alia*, an injunction would serve to protect timeshare owners as consumers and the fair and legitimate operation of the timeshare industry.

110.    As a proximate result of TET and Sussman Law's unlawful conduct, Plaintiffs are being irreparably harmed and are entitled to have TET and Sussman Law's conduct enjoined and restrained.

WHEREFORE, Plaintiffs ORANGE LAKE COUNTRY CLUB, INC., and WILSON RESORT FINANCE, L.L.C., respectfully request that this Court:

A.      Enter judgment after trial for a permanent injunction in favor of Plaintiffs and against Defendants REED HEIN & ASSOCIATES, LLC d/b/a TIMESHARE EXIT TEAM, and MITCHELL REED SUSSMAN d/b/a MITCHELL REED SUSSMAN & ASSOCIATES, and their officers, agents, servants, employees, and attorneys and on

those persons in active concert or participation with them who receive actual notice of the injunction enjoining them from:

      1)  Engaging in false and misleading advertising;

      2)  Intentionally interfering with Plaintiffs' contracts; and

      3)  Engaging in deceptive, misleading, and unfair trade practices.

B.     Enter judgment for damages and lost profits (a natural consequence of TET and Sussman Law's wrongs) and punitive damages;

C.     Enter judgment in favor of Plaintiffs and against TET and Sussman Law for costs of suit incurred in this action; and

E.     Award Plaintiffs such other and further relief as the Court may deem proper.

## COUNT IV: CIVIL CONSPIRACY
### (Against Defendants TET and SGB Law)

111.   Plaintiffs reallege and reincorporate the allegations contained in paragraphs 1 through 9 and 44 through 88 above as if more fully set forth herein.

112.   This is a cause of action for civil conspiracy to commit tortious interference with existing contracts and for damages in excess of $75,000.00, exclusive of interest, attorney's fees and costs, and is within this Court's jurisdiction.

113.   TET and SGB Law are parties to a civil conspiracy as they conspired to commit an unlawful act by interfering with Plaintiffs' existing contracts, and to do so using unlawful means.

114.   TET and SGB Law each performed one or more overt actions in furtherance of their conspiracy, including without limitation:

a)      TET uses false and misleading advertising to lure Orange Lake
Owners to obtain TET's services;

b)      TET and SGB directly and indirectly instruct and encourage
Orange Lake Owners to stop paying their obligations to Orange
Lake or to otherwise breach their contracts with Orange Lake
without any investigation into the circumstances of the owner's
situation and without knowledge whether there is any legal basis to
do so;

c)      This is done to convince the Orange Lake Owners to pay TET
instead of Orange Lake (*see e.g.,* chart comparing costs, referenced
above), and so that TET can pay SGB;

d)      At TET's direction and pursuant to their agreement, SGB Law
sends boilerplate demand letters to Plaintiffs, stating non-legal
bases upon which Orange Lake Owners can purportedly cancel
their Purchase Agreements, and effectively cuts off communication
between Orange Lake and the owners, all in furtherance of TET's
interference between the Orange Lake Owners and Orange Lake..

115.    As a direct and proximate result of TET and SGB Law's civil conspiracy,
the Orange Lake Owners have terminated, or have sought to terminate, their contractual
relationship with Plaintiffs before the expiration of the terms of those contracts.

116.    TET and SGB Law did not have any justification or privilege in procuring
the breach of such business relationships.

117.    As a direct and proximate result of the foregoing, Plaintiffs suffered damages.

118.    An injunction is a viable form of relief for a cause of action for civil conspiracy to commit tortious interference with existing contracts.

a)      TET and SGB Law's actions, as outlined above, constitute a civil conspiracy to commit tortious interference with existing contracts.

b)      TET and SGB Law have procured unwarranted and unjustified contract breaches due to their civil conspiracy to commit tortious interference with existing contracts, so Plaintiffs have a substantial likelihood of success on merits.

c)      TET and SGB Law continue to solicit timeshare owners, such as Orange Lake Owners, through their civil conspiracy to commit tortious interference with existing contracts, which shows a strong likelihood that Plaintiffs will suffer irreparable harm on an ongoing basis because any remedy at law for TET and SGB Law's perpetuation of their civil conspiracy to commit tortious interference with existing contracts is inadequate.

d)      An injunction serves the public interest because, *inter alia*, an injunction would serve to protect timeshare owners as consumers and the fair and legitimate operation of the timeshare industry.

119.    As a proximate result of TET and SGB Law's unlawful conduct, Plaintiffs are being irreparably harmed and are entitled to have TET and SGB Law's conduct enjoined and restrained.

WHEREFORE, Plaintiffs ORANGE LAKE COUNTRY CLUB, INC., and WILSON RESORT FINANCE, L.L.C., respectfully request that this Court:

A.      Enter judgment after trial for a permanent injunction in favor of Plaintiffs and against Defendants REED HEIN & ASSOCIATES, LLC d/b/a TIMESHARE EXIT TEAM; and SCHROETER GOLDMARK & BENDER, P.S., and their officers, agents, servants, employees, and attorneys and on those persons in active concert or participation with them who receive actual notice of the injunction enjoining them from:

      1)  Engaging in false and misleading advertising;

      2)  Intentionally interfering with Plaintiffs' contracts; and

      3)  Engaging in deceptive, misleading, and unfair trade practices.

B.      Enter judgment for damages and lost profits (a natural consequence of TET and SGB Law's wrongs) and punitive damages;

C.      Enter judgment in favor of Plaintiffs and against TET and SGB Law for costs of suit incurred in this action; and

E.      Award Plaintiffs such other and further relief as the Court may deem proper.

**COUNT V: VIOLATION OF FLORIDA'S DECEPTIVE
AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. § 501.201, *et seq.*
(Against Defendants TET, Reed, Hein, and Parenteau)**

120.      Plaintiffs reallege and reincorporate the allegations contained in paragraphs 1 through 9 and 44 through 88 above as if more fully set forth herein.

121.      This is a cause of action for violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* ("FDUTPA"), against TET, Reed, Hein,

and Parenteau (the "TET Defendants"), including unconscionable acts and practices and unfair and deceptive practices in the conduct of trade or commerce.

122.    The TET Defendants are engaged in "trade or commerce" as defined by Fla. Stat. §501.203(8).

123.    Plaintiffs are "interested part[ies] or person[s]" as defined by Section 501.203(6), Florida Statutes.

124.    The TET Defendants have engaged in unconscionable, unfair, and deceptive acts or practices, including without limitation the following:

    a)    soliciting Orange Lake Owners through false and misleading advertising which deceives Orange Lake Owners into believing that they may cancel their timeshare interest without any legal basis or reason whatsoever, that TET has the ability to make or force timeshare companies to accept the cancellation, and that the cancellation is safe, legal, and permanent;

    b)    fraudulently inducing Orange Lake Owners into retaining TET based on TET's advertised "100% guarantees" of "exiting" timeshares when the TET Defendants cannot actually fulfill the guarantee without detriment to the Orange Lake Owner;

    c)    misrepresenting that they will "interface" between the Orange Lake Owners and law firms such as Sussman Law and SGB Law without providing the Orange Lake Owners details about the attorneys or actually facilitating contact between them, and when

the Orange Lake Owners often never communicate with Sussman Law and SGB Law;

d)      instructing Sussman Law and SGB Law to transmit demand letters to Orange Lake attempting to terminate the Orange Lake Owners' contracts without any investigation into the circumstances of the owner's situation and without knowledge whether there is any legal basis to do so;.

e)      Providing knowingly false status updates to customers;

f)      Using and allowing vendors and attorneys to use unlawful and invalid methods or strategies to cancel timeshare contracts;

g)      Falsely informing owners they had no legal or financial obligations to Orange Lake after unlawful and invalid methods or strategies were used to attempt to cancel timeshare contracts; and

h)      Failing to disclose risks of methods or strategies to be used to timeshare owners.

125.    Plaintiffs have a clear legal right or interest in being free from the TET Defendants' deceptive or unfair advertising, as the false statements and representations set forth above have demonstrated specific past and present grievances, and will result in future grievances, and will result in future grievances if the TET Defendants are not enjoined.

126.    The TET Defendants continue to engage in such false and deceptive marketing campaigns and fraudulent representations for the purpose of soliciting the

Orange Lake Owners and inducing them to pay large upfront retainer fees with the false representation that the Orange Lake Owners may unilaterally terminate their obligations with Plaintiffs without any valid legal basis, and therefore, there is a strong likelihood that Plaintiffs will suffer irreparable harm on an ongoing basis and any remedy at law for the TET Defendants' perpetuation of the deceptive, fraudulent, and unfair marketing practices, is inadequate.

127.    Pursuant to Fla. Stat. §§ 501.211(2) and 501.2105, Plaintiffs are entitled to damages, attorney's fees, and costs.

128.    Pursuant to Fla. Stat. § 501.211(1), declaratory and injunctive relief are viable forms of relief for violation of FDUTPA.

a)    The TET Defendants' actions, as outlined above, constitute deceptive, misleading, and unfair practices in violation of FDUTPA.

b)    The TET Defendants have procured unwarranted and unjustified contract breaches due to The TET Defendants' deceptive, misleading, and unfair practices in violation of FDUTPA, so Plaintiffs have a substantial likelihood of success on merits.

c)    The TET Defendants continue to solicit timeshare owners, such as Orange Lake Owners, and procure unwarranted and unjustified contract breaches through the TET Defendants' deceptive, misleading, and unfair practices in violation of FDUTPA, which shows a strong likelihood that Plaintiffs will suffer irreparable

harm on an ongoing basis because any remedy at law for the TET Defendants' perpetuation of their deceptive, misleading, and unfair practices in violation of FDUTPA is inadequate.

d) An injunction serves the public interest because, *inter alia*, an injunction would serve to protect timeshare owners as consumers and the fair and legitimate operation of the timeshare industry.

129. As a proximate result of the TET Defendants' unlawful conduct, Plaintiffs are being irreparably harmed and are entitled to have the TET Defendants' conduct enjoined and restrained.

WHEREFORE, Plaintiffs ORANGE LAKE COUNTRY CLUB, INC., and WILSON RESORT FINANCE, L.L.C., respectfully request that this Court:

A. Enter judgment after trial for a permanent injunction in favor of Plaintiffs and against Defendants REED HEIN & ASSOCIATES, LLC d/b/a TIMESHARE EXIT TEAM, BRANDON REED, TREVOR HEIN, and THOMAS PARENTEAU and their officers, agents, servants, employees, and attorneys and on those persons in active concert or participation with them who receive actual notice of the injunction enjoining them from:

1) Engaging in false and misleading advertising;

2) Intentionally interfere with Plaintiffs' contracts; and

3) Engaging in deceptive, misleading, and unfair trade practices.

B. Enter judgment for actual damages;

D.      Enter judgment in favor of Plaintiffs and against the TET Defendants for costs of suit incurred in this action; and

E.      Award Plaintiffs such other and further relief as the Court may deem proper.

## COUNT VI: DISMISSED

## COUNT VII: FALSE ADVERTISING
## UNDER THE LANHAM ACT, 15 U.S.C. § 1125(a)
### (Against Defendants TET, Reed, Hein, and Parenteau)

130.    Plaintiffs reallege and reincorporate the allegations contained in paragraphs 1 through 9and 44 through 88 above as if more fully set forth herein.

131.    This is a cause of action for false advertising under the Lanham Act, 15 U.S.C. § 1125(a), and is within this Court's jurisdiction.

132.    Plaintiffs are engaged in commerce within the control of Congress because they have a cognizable commercial interest in reputation or sales and fall within the zone of interest protected by 15 U.S.C. § 1125(a).

133.    As outlined above, TET, Reed, Hein, and Parenteau (the "TET Defendants") have made material false or misleading statements in interstate commerce in connection with commercial advertising or solicitation.

134.    The TET Defendants' statements, outlined in part above, are not only literally false, but also are misleading when considered in their full context.

135.    The TET Defendants' advertised "timeshare exit" services travel in interstate commerce.

136.    As described above, the TET Defendants misleadingly advertise on the Internet, radio, and television, and through celebrity endorsements that they guarantee to relieve timeshare owners of their timeshare obligations if TET is retained.

137.    As outlined above, the TET Defendants manage and control the operations of TET, and therefore direct the marketing and advertising decisions of TET.

138.    The TET Defendants are in direct competition with Plaintiffs for the payments Orange Lake Owners owe to Plaintiffs.  The TET Defendants specifically seek to have Orange Lake Owners make payments to TET instead of to Plaintiffs.

139.    The TET Defendants' statements that any person can be exited from or have a timeshare contract cancelled, regardless of reason, are false or misleading or made in bad faith.

140.    The TET Defendants' statements that they guarantee to relieve timeshare owners of their timeshare obligations if TET is retained are false or misleading or made in bad faith.

141.    The TET Defendants' statements that they have a proprietary process are false or misleading or made in bad faith.

142.    The TET Defendants' statements that they offer safe, legal, and permanent exits or cancellations of timeshare contracts are false or misleading or made in bad faith.

143.    The TET Defendants' statements that they can make or force timeshare companies to accept cancellations of timeshare contracts are false or misleading or made in bad faith.

144.    The TET Defendants' advertisements deceived, or had the capacity to deceive, consumers, thereby having a material effect on consumer purchasing decisions and resulting in damages to Plaintiffs.

145.    Plaintiffs suffered harm to their commercial interests and to their reputation based on the TET Defendants' false and deceptive statements.

146.    An injunction is a viable form of relief for violation of the Lanham Act.

a)      The TET Defendants' actions, as outlined above, constitute false advertising in violation of 15 U.S.C. § 1125(a).

b)      The TET Defendants have procured unwarranted and unjustified contract breaches due to their false advertising in violation of 15 U.S.C. § 1125(a), so Plaintiffs have a substantial likelihood of success on merits.

c)      The TET Defendants continue to solicit timeshare owners, such as Orange Lake Owners, through their false advertising, which shows a strong likelihood that Plaintiffs will suffer irreparable harm on an ongoing basis because any remedy at law for the TET Defendants' perpetuation of their false advertising is inadequate.

d)      An injunction serves the public interest because, *inter alia*, an injunction would serve to protect timeshare owners as consumers and the fair and legitimate operation of the timeshare industry.

147.    As a proximate result of the TET Defendants' unlawful conduct, Plaintiffs are being irreparably harmed and are entitled to have the TET Defendants' conduct enjoined and restrained.

WHEREFORE, Plaintiffs ORANGE LAKE COUNTRY CLUB, INC., and WILSON RESORT FINANCE, L.L.C., respectfully request that this Court:

A.      Enter judgment after trial for a permanent injunction in favor of Plaintiffs and against Defendants REED HEIN & ASSOCIATES, LLC d/b/a TIMESHARE EXIT TEAM, BRANDON REED, TREVOR HEIN, and THOMAS PARENTEAU and their officers, agents, servants, employees, and attorneys and on those persons in active concert or participation with them who receive actual notice of the injunction enjoining them from:

    1)  Engaging in false advertising;

    2)  Intentionally interfering with Plaintiffs' contracts; and

    3)  Engaging in deceptive, misleading, and unfair trade practices.

B.      Enter an Order that the TET Defendants be required to take down and destroy all false, misleading, and deceptive material found on TET's website and found in any marketing material or documentation that the TET Defendants produce or are using;

C.      Enter an Order that the TET Defendants be directed to file with this Court and serve on Plaintiffs within fifteen days after the service of an injunction, a report, in writing under oath, setting forth in detail the manner and form in which the TET Defendants have complied with the injunction;

D.      Enter an Order requiring the TET Defendants to provide notice of the injunction by posting the Order on TET's website;

E.      Enter judgment for disgorgement of Defendants' profits;

F.     Enter judgment in favor of Plaintiffs and against the TET Defendants for costs of suit, expenses, and attorneys' fees pursuant to 15 U.S.C. § 1117; and

G.     Award Plaintiffs such other and further relief as the Court may deem proper.

DATED this ___ day of _____, 2018.

Respectfully submitted,

By: _____
RICHARD W. EPSTEIN
(Trial Counsel)
Florida Bar No. 229091
JEFFREY A. BACKMAN
Florida Bar No. 662501
GREENSPOON MARDER LLP
201 East Pine St, Suite 500
Orlando, Florida 32801
Telephone:     (407) 425-6559
Facsimile:     (407) 209-3152
Richard.Epstein@gmlaw.com
Maria.Salgado@gmlaw.com
Jeffrey.Backman@gmlaw.com
Khia.Joseph@gmlaw.com
Cheryl.Cochran@gmlaw.com